# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

CHRIS WILLIS, et al.,

                Plaintiffs,

    vs.

CITY OF FRESNO, et al.,

                Defendants.

_____/

CASE NO. CV F 09-1766 LJO DLB

**ORDER ON DEFENDANTS' F.R.Civ.P. 12 MOTIONS**
(Doc. 10.)

## INTRODUCTION

Defendants City of Fresno ("City"), its police chief and two of its police officers seek to dismiss as legally barred and impermissibly vague plaintiffs' excessive force wrongful death and survivor claims and intentional tort claims arising from the shooting death of Stephen Willis ("Stephen"). Plaintiffs respond that defendants mischaracterize their properly pled allegations. This Court considered defendants' F.R.Civ.P. 12 motions to dismiss and strike on the record and VACATES the December 14, 2009 hearing, pursuant to Local Rule 230(g). For the reasons discussed below, this Court GRANTS in part and DENIES in part defendants' requested F.R.Civ.P. 12 relief.

1

## BACKGROUND[1]

2

### The Parties

3   Plaintiffs are Chris Willis and Mary Willis (collectively "Mr. and Mrs. Willis"), Stephen's

4   natural parents, and Jennafer Uribe ("Ms. Uribe"), Stephen's live-in partner at the time of his death.

5   Mr. and Mrs. Willis and Ms. Uribe (collectively "plaintiffs") pursue claims against the City, City

6   Police Chief Jerry Dyer ("Chief Dyer") and City police officers Greg Catton ("Officer Catton") and

7   Daniel Astacio ("Officer Astacio").[2]

8

### Stephen's Shooting

9   On March 28, 2009, Officers Catton and Astacio, unbeknownst to Stephen, pursued Stephen who

10  parked his vehicle in front of his Fresno apartment.  Ms. Uribe ran from the vehicle to the apartment's

11  front door to "use the facilities."  Stephen strolled to the vehicle's trunk "so that he could remove his

12  belongings, including a firearm that was enclosed in a case and that he had used at a firing range earlier

13  in the day."

14  Without warning or identifying themselves, Officers Catton and Astacio shot until Stephen fell

15  or dove to the ground and continued shooting "until they had put 14 bullets into him, including several

16  in his back, out of at least 35 bullets fired at him, and he was dead."

17

### Plaintiffs' Claims

18  As discussed in detail below, the complaint alleges wrongful death and survivor claims for Mr.

19  and Mrs. Willis and intentional tort claims for Ms. Uribe.  The complaint alleges that Stephen's shooting

20  was "without cause" and was "with unreasonable and excessive force and deliberate indifference of his

21  safety, health and life" in that:

22      1.   "Reasonable alternatives were available to defendants to learn the identity of Stephen

23           Willis, to learn his residence, to question and otherwise communicate with him, and to

24           confirm that he was not a danger to officers or any other member of the community"; and

25      2.   The shooting occurred "without having taken proper and procedural steps to identify him

26  _____

27  [1]   The factual recitation is derived generally from plaintiffs' complaint ("complaint"), the target of defendants'
    challenges.

28  [2]   The City, Chief Dyer and Officers Catton and Astacio will be referred to collectively as "defendants."

1    and themselves and otherwise ascertain he was lawfully and peacefully in the process of

2    transferring his own property from his car to his home."

3    The complaint further alleges that defendants "concealed and falsified material information and

4    otherwise attempted to cover up their misconduct."

5    The complaint alleges Mr. and Mrs. Willis' damages of loss of Stephen's care, comfort and love,

6    funeral and burial expenses, and Stephen's "personal injury and property damage before he died."  The

7    complaint seeks to recover for Ms. Uribe's emotional distress.  The complaint further seeks to recover

8    punitive damages and attorney fees for plaintiffs.

9                                    **DISCUSSION**

10                          **F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards**

11    Defendants seek to dismiss as legally deficient several of plaintiffs' claims under F.R.Civ.P.

12    12(b)(6).

13    A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set

14    forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception

15    of any evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not

16    whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to

17    support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco*

18    *Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  A F.R.Civ.P. 12(b)(6) dismissal is proper where

19    there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a

20    cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling*

21    *v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

22    In resolving a F.R.Civ.P. 12(b)(6) motion, the court must:  (1) construe the complaint in the light

23    most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine

24    whether plaintiff can prove any set of facts to support a claim that would merit relief.  *Cahill v. Liberty*

25    *Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is not required "to accept as

26    true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."

27    *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).  A court

28    need not permit an attempt to amend a complaint if "it determines that the pleading could not possibly

3

be cured by allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court recently explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.
>
> . . . Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. (Citation omitted.)

For a F.R.Civ.P. 12(b)(6) motion, a court generally cannot consider material outside the complaint. *Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162, n. 2 (C.D. Cal. 2003). Nonetheless, a court may consider exhibits submitted with the complaint. *Van Winkle*, 290 F.Supp.2d at 1162, n. 2. In addition, a "court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). A court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003). Such consideration prevents "plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting reference to documents upon which their claims are

/ / /

4

1   based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).[3]   A "court may disregard allegations

2   in the complaint if contradicted by facts established by exhibits attached to the complaint." *Sumner Peck*

3   *Ranch v. Bureau of Reclamation*, 823 F.Supp. 715, 720 (E.D. Cal. 1993) (citing *Durning v. First Boston*

4   *Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987)).   Moreover, "judicial notice may be taken of a fact to show

5   that a complaint does not state a cause of action." *Sears, Roebuck & Co. v. Metropolitan Engravers,*

6   *Ltd.*, 245 F.2d 67, 70 (9th Cir. 1956); *see Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 984 (9th

7   Cir. 1997).   A court properly may take judicial notice of matters of public record outside the pleadings'"

8   and consider them for purposes of the motion to dismiss. *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646,

9   649 (9th Cir. 1988) (citation omitted).

10        With these standards in mind, this Court turns to defendants' challenges to the complaint.

11                                  **Negligence Claim Against The City**

12        The complaint's (first) wrongful death-negligence claim alleges that defendants acts and

13   omissions constitute "gross negligence" and "carelessness" to result in Mr. and Mrs. Willis'

14   "compensable loss."   The complaint alleges that the City is "vicariously responsible and liable for the

15   conduct of the employees that occurred within the course and scope of their employment and duties, and

16   pursuant to California Government Code § 815.2, et seq."

17        Defendants contend the City is not subject to a negligence claim in the absence of a "statute

18   providing such liability" and that plaintiffs improperly seek to impose direct liability against the City.

19        The California Government Claims Act, Cal. Gov. Code, §§ 810, et seq., does not provide that

20   a public entity is liable for its own conduct or omission to the same extent as a private person or entity.

21   *Zelig v. County of Los Angeles*, 27 Cal.4th 1112, 1128, 119 Cal.Rptr.2d 709, 722 (2002).   California

22   Government Code section 815(a) provides that a "public entity is not liable for an injury, whether such

23   injury arises out of an act or omission of the public entity or a public employee or any other person,"

24   "[e]xcept as otherwise provided by statute."   Certain statutes provide expressly for public entity liability

25   in circumstances that are somewhat parallel to the potential liability of private individuals and entities,

26

27   _____
     [3]        "We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim
     depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not
     dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document

28   in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citing *Parrino*, 146 F.3d at 706).

but the Government Claims Act's intent "is not to expand the rights of plaintiffs in suits against governmental entities, but to confine potential governmental liability to rigidly delineated circumstances." *Brown v. Poway Unified School Dist.*, 4 Cal.4th 820, 829, 15 Cal.Rptr.2d 679 (1993); *see Michael J. v. Los Angeles County Dept. of Adoptions*, 201 Cal. App.3d 859, 866, 247 Cal.Rptr. 504 (1988) ("Under the Act, governmental tort liability must be based on statute; all common law or judicially declared forms of tort liability, except as may be required by state or federal Constitution, were abolished.")

A court first determines whether a statute "imposes direct liability" on a defendant public entity. *Munoz v. City of Union City*, 120 Cal.App.4th 1077, 1111, 16 Cal.Rptr.3d 521, 547 (2004). "[D]irect tort liability of public entities must be based on a specific statute declaring them to be liable, or at least creating some specific duty of care, and not on the general tort provisions of [California] Civil Code section 1714." *Eastburn v. Regional Fire Protection Authority*, 31 Cal.4th 1175, 1183, 80 P.3d 656 (2003). "[B]ecause under the Tort Claims Act all governmental tort liability is based on statute, the general rule that statutory causes of action must be pleaded with particularity is applicable." *Lopez v. So. Cal. Rapid Transit Dist.*, 40 Cal.3d 780, 795, 221 Cal.Rptr. 840 (1985). Thus, "to state a cause of action against a public entity, every fact material to the existence of its statutory liability must be pleaded with particularity." *Peter W. v. San Francisco Unified Sch. Dist.,* 60 Cal.App.3d 814, 819, 131 Cal.Rptr. 854 (1960).

In addition, although "public entities always act through individuals, that does not convert a claim for direct negligence into one based on vicarious liability." *Munoz*, 120 Cal.App.4th at 1113, 16 Cal.Rptr.3d 521.

Plaintiffs respond that "defendants' argument is not on point." Plaintiffs argue that "where there is a negligence claim against a police officer, a governmental entity can be held vicariously liable for the officer's tortious conduct." Plaintiffs point to California Government Code section 815.2(a), which provides:

> A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.

Defendants appear to confuse the City's direct and vicarious liability.  The wrongful death-negligence claim against the City is premised on vicarious, not direct, liability.  "However, the Supreme Court clearly did not adopt the view that because all entities, public and private, must act through individuals, that suffices to establish direct liability. Indeed, the legal distinction between direct and vicarious liability was the whole point and purpose of the *Eastburn* decision." *Munoz*, 120 Cal.App.4th at 1113, 16 Cal.Rptr.3d 521.

More succinctly, the California Supreme Court has explained:

> The Legislature has recognized that the imposition of vicarious liability on a public employer is an appropriate method to ensure that victims of police misconduct are compensated. It has done so by declining to grant immunity to public entities when their police officers engage in violent conduct. Since the enactment of the California Tort Claims Act in 1963 (§ 810 et seq.), a governmental entity can be held vicariously liable when a police officer acting in the course and scope of employment uses excessive force or engages in assaultive conduct.  (*City of Los Angeles v. Superior Court* (1973) 33 Cal.App.3d 778, 782, 109 Cal.Rptr. 365; *Larson v. City of Oakland* (1971) 17 Cal.App.3d 91, 98, 94 Cal.Rptr. 466; *Scruggs v. Haynes* (1967) 252 Cal.App.2d 256, 268, 60 Cal.Rptr. 355; *Griffith v. City of Monrovia* (1982) 134 Cal.App.3d Supp. 6, 184 Cal.Rptr. 709; *see also Jones v. City of Los Angeles* (1963) 215 Cal.App.2d 155, 30 Cal.Rptr. 124.) The decisions cited have recognized, at least implicitly, that vicarious liability is an appropriate method to ensure that victims of police misconduct are compensated.

*Mary M. v. City of Los Angeles*, 54 Cal.3d 202, 216-217, 814 P.2d 1341 (1991).

Defendants' arguments fail to the extent that the wrongful death-negligence claim seeks to impose vicarious liability on the City to render the claim viable against the City.

## Negligence Claim Against Chief Dyer

As to Chief Dyer, the (first) wrongful death-negligence claim alleges that Chief Dyer "immediately ratified" Stephen's shooting and "held press conferences and gave public statements asserting the propriety of shooting Stephen Willis."

Defendants fault the wrongful death-negligence claim against Chief Dyer in the absence of allegations "regarding what legal duty he owed Decedent, or how he personally breached a standard of reasonable care."  Defendants contend that Chief Dyer is not a public entity subject to vicarious liability "in the same manner as the City."

The elements of negligence are (a) a legal duty to use due care; (b) a breach of such legal duty; and (c) the breach as the proximate or legal cause of the resulting injury. *Ladd v. County of San Mateo*,

12 Cal.4th 913, 917, 50 Cal.Rptr.2d 309 (1996).  "Liability for negligent conduct may only be imposed where there is a duty of care owed by the defendant to the plaintiff or to a class of which the plaintiff is a member."  *J'Aire Corp. v. Gregory,* 24 Cal.3d 799, 803, 157 Cal.Rptr. 407 (1979).  A duty to the plaintiff is an essential element, which "may be imposed by law, be assumed by the defendant, or exist by virtue of a special relationship."  *Potter v. Firestone Tire & Rubber Co.,* 6 Cal.4th 965, 985, 25 Cal.Rptr.2d 550 (1993).

Acknowledging that the claim against Chief Dyer "could have been better articulated," plaintiffs contend that the complaint alleges to effect that "Chief Dyer has fostered an atmosphere of permissiveness and officer aggression that caused this shooting to occur" to invoke Chief Dyer's "vicarious liability."

Plaintiffs offer no legal support to impose vicarious liability against Chief Dyer.  In fact, under California Government Code section 820.8, generally "a public employee is not liable for an injury by the act or omission of another person."  Plaintiffs fail to substantiate a vicarious liability claim against Chief Dyer to warrant dismissal of the (first) wrongful death-negligence claim against him.

## Inadequate Tactics Preceding Use Of Force

In their opening papers, defendants attribute the (first) wrongful death-negligence claim to allege an invalid negligence theory as to "the manner that they responded to the scene."  In their reply papers, defendants "accept" plaintiffs' representation that plaintiffs do no make "a federal excessive force claim, or a state law negligent wrongful death claim, based on an alleged negligent tactical response to the scene."

California Penal Code section 835a empowers a peace officer to use force:

> Any peace officer who has reasonable cause to believe that the person to be arrested has committed a public offense may use reasonable force to effect the arrest, to prevent escape or to overcome resistance.

Defendants point to California Penal Code section 196 which governs justifiable homicide by public officers and provides in pertinent part: "Homicide is justifiable when committed by public officers . . . [w]hen necessarily committed in overcoming actual resistence to the execution of some legal process, or in discharge of any other legal duty" or "when necessarily committed in arresting persons charged with a felony, and who are fleeing from justice or resisting such arrest."

1      "There can be no civil liability under California law as the result of justifiable homicide."

2 *Martinez v. County of Los Angeles*, 47 Cal.App.4th 334, 349, 54 Cal.Rptr.2d 772 (1996).  In *Martinez*,

3 47 Cal.App.4th at 349-350, 54 Cal.Rptr.2d 772, the California Court of Appeal further explained:

4
>    The test for determining whether a homicide was justifiable under Penal Code
> section 196 is whether the circumstances "reasonably create[d] a fear of death or serious
> bodily harm to the officer or to another." (*Kortum v. Alkire* (1977) 69 Cal.App.3d 325,
> 333, 138 Cal.Rptr. 26; *accord Reynolds, supra*, 858 F.Supp. at pp. 1074-1075; *People
> v. Rivera* (1992) 8 Cal.App.4th 1000, 1007, 10 Cal.Rptr.2d 785 [using Fourth
> Amendment "reasonableness" analysis to determine existence of probable cause for
> arrest, held that use of attack dog by police officer was justified because the officer
> "reasonably feared for his safety, and that of others in the area"].) The same is true of
> Government Code section 820.2, which provides immunity from liability to public
> employees for their discretionary acts. (*Reynolds, supra*, 858 F.Supp. at pp. 1074-1075.)[4]

>    Since we have already determined that Deputies Gibson and Gleason acted
> reasonably in shooting Martinez, his death was justified under Penal Code section 196
> and appellants' state law wrongful death claim is therefore barred as to them. Because the
> deputies cannot be liable, there is no basis for respondeat superior liability against the
> county defendants. (Gov.Code, § 815.2 [public entity not liable for acts of employee if
> the employee is immune from liability]; *Thomas v. City of Richmond* (1995) 9 Cal.4th
> 1154, 1157-1158, 40 Cal.Rptr.2d 442, 892 P.2d 1185; *Perez v. City of Huntington Park*
> (1992) 7 Cal.App.4th 817, 819-820, 9 Cal.Rptr.2d 258; *Collins v. City and County of San
> Francisco* (1975) 50 Cal.App.3d 671, 673-674, 123 Cal.Rptr. 525.)

15      Nonetheless, police officers bear a duty "to use reasonable care in deciding to use and in fact

16 using deadly force."  *Munoz*, 120 Cal.App.4th at 1101, 16 Cal.Rptr.3d 521.  An "officer's lack of due

17 care can give rise to negligence liability for the intentional shooting death of a suspect."  *Munoz v. Olin*,

18 24 Cal.3d 629, 634, 156 Cal.Rptr. 727 (1979).  Determination whether an officer breached such duty is

19 "analyzed under the reasonableness standard of the Fourth Amendment to the United States

20 Constitution."  *Munoz*, 120 Cal.App.4th at 1102 and n. 6, 16 Cal.Rptr.3d 521 ("the plaintiff must prove

21 the unreasonableness of the officer's conduct").  A shooting victim plaintiff may pursue inconsistent

22 intentional tort and negligence claims against a police officer.  *See Munoz*, 24 Cal.3d at 635, 156

23 Cal.Rptr. 727.

24      Defendants argue that Officers Catton and Astacio "did not owe Decedent a legal duty simply

---

[4]    California Government Code section 820.2 states: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."  A public employee's liability is "subject to any defenses that would be available to the public employee if he were a private person."  Cal. Gov. Code, § 820(b).

1   because they followed his vehicle into the parking lot to effectuate a stop, and took action at the scene."

2   Defendants contend that Mr. and Mrs. Willis cannot base a negligence claim on allegations that Officers

3   Catton and Astacio "negligently created a situation where they faced a threat of death or serious bodily

4   injury" and that the complaint lacks facts for a "negligent creation theory." Defendants direct focus to

5   whether Stephen "presented an immediate threat of death or serious bodily injury to the defendant

6   officers."

7            Defendants cite to *Munoz*, 120 Cal.App.4th at 1097, 16 Cal.Rptr.3d 521, where the California

8   Court of Appeal observed that "the need to protect the overall safety of the community by encouraging

9   law enforcement officers to exercise their best judgment in deciding how to deal with public safety

10  emergencies vastly outweighs the societal value of imposing tort liability for the judgments they make

11  in emergency situations. . . . [L]aw enforcement officers are shielded from ordinary negligence claims

12  based on their response to public safety emergencies when those efforts prove to be ineffective in

13  preventing self-inflicted harm or harm caused by third parties."   A fellow judge of this Court has

14  explained: "*Munoz* establishes defendants are entitled to summary judgment to the extent that the

15  Seventh Claim for Relief is based on tactical decisions preceding the use of deadly force. Further,

16  defendants' liability for the use of deadly force is determined by Fourth Amendment standards and

17  'negligent acts do not incur constitutional liability.'" *Rosales v. City of Bakersfield*, 2007 WL 1847628,

18  at *32 (citing *Billington v. Smith,* 292 F.3d 1177, 1190 (9th Cir. 2002)).

19           Ninth Circuit Court of Appeals' precedents do not "permit a plaintiff to establish a Fourth

20  Amendment violation based merely on bad tactics that result in a deadly confrontation that could have

21  been avoided." *Billington*, 292 F.3d at 1190.  The "fact that an officer negligently gets himself into a

22  dangerous situation will not make it unreasonable for him to use force to defend himself." *Billington*,

23  292 F.3d at 1190.  "Thus, even if an officer *provokes* a violent response, that negligent act will not

24  transform an otherwise reasonable subsequent use of force into a Fourth Amendment violation."

25  *Billington*, 292 F.3d at 1190.

26           Plaintiffs argue that defendants' position as to inadequate tactics prior to shooting Stephen is

27  irrelevant given that the wrongful death-negligence claim turns on whether the shooting was "objectively

28  reasonable."  Plaintiffs point to the claim's allegations that Stephen was shot at his residence without

Officers Catton and Astacio's attempt to identify Stephen to ascertain that he merely removed belongings from his vehicle's trunk.  Plaintiffs fault defendants' attempt to transform the claim to allege that that Officers Catton and Astacio negligently created a situation to result in shooting Stephen.

The complaint's allegations are straightforward and easily summarized:  Officers Catton and Astacio, unbeknownst to Stephen, pursued Stephen who parked his vehicle in front of his Fresno apartment. Stephen strolled to the vehicle's trunk "so that he could remove his belongings, including a firearm that was enclosed in a case and that he had used at a firing range earlier in the day."  Without warning or identifying themselves, Officers Catton and Astacio shot Stephen to death.

The wrongful death-negligence claim simply alleges unreasonable use of force to cause Stephen's death.  The claim alleges no facts as to tactical decisions preceding use of force.  The claim elicits a pure Fourth Amendment analysis with nothing more.  Defendants fail to substantiate dismissal of the claim based on an evaluation of bad tactics.

**Vague Use Of Force Allegations**

Defendants claim that "the negligence allegations in the complaint are also impermissibly vague."  Defendants attack claim's allegations that Stephen strolled to his vehicle's trunk "so that he could remove his belongings," including a firearm, and that Officers Catton and Astascio began shooting "without warning or identifying themselves."  Defendants claim that the presence of the firearm in the trunk of Stephen's vehicle is "irrelevant."

Defendants fail to identify precisely what they claim is impermissibly vague.  This Court is unclear whether plaintiffs criticize the wrongful death-negligence claim as unclear or whether they spread the criticism to other claims.  Defendants offer an unhelpful comment that they attempt "to find out under what specific facts Plaintiffs are basing their Fourth and Fourteenth Amendment use of force claims."  Defendants appear unsatisfied with the complaint's simple gist – Officers Catton and Astacio used deadly force unreasonably and without provocation.  Defendants are able to flush out plaintiffs' claims in discovery, and this Court admonishes plaintiffs to provide straightforward complete discovery responses.

**Negligence-Based Constitutional And Intentional Tort Claims**

Defendants attack the complaint's constitutional and intentional tort claims as based on

11

negligence.

The complaint's (second) Fourth Amendment violation claim is on Stephen's behalf by Mr. and Mrs. Willis as Stephen's successors in interest.  The claim alleges that defendants deprived Stephen of "rights secured by the Fourth Amendment of the United States Constitution to be free from unreasonable searches and seizures."

The complaint's third claim alleges that defendants deprived Mr. and Mrs. Willis of their "rights, privileges and immunities secured by . . . the Fourteenth Amendment's right not to be deprived of life or liberty without due process of law."

The complaint's (fourth) assault claim alleges the Officers Catton and Astacio fired shots in Ms. Uribe's direction which "passed near and by her" and "killed her live-in partner" to threaten "physical injury to herself."

The complaint's (fifth) intentional infliction of emotional distress claim alleges that Ms. Uribe has suffered extreme emotional distress from Officers Catton and Astacio's conduct, including "firing repeatedly and indiscriminately into an occupied apartment complex."

Defendants attribute the complaint to allege that Officers Catton and Astacio "were negligent because they knew or should have known that Decedent was transferring his property (including the firearm) from the trunk to his residence."  As such, defendants contend that the complaint suggests "that there may actually have been a threat posed to the defendant officers."  Defendants contend that if the threat was of immediate death or serious bodily injury, "plaintiffs are required to plead why this threat did not warrant the use of deadly force."  Defendants repeat their claim that "Fourth Amendment liability may not be based on a finding that the officer negligently created a situation in which it was reasonable to use deadly force" to warrant dismissal of the complaint's second through fifth claims.

Defendants' attacks on the Fourth and Fourteenth Amendment and intentional tort claims are unclear and unsupported.  Defendants do not appear to attack the claims' elements.  Defendants appear to attempt to transform the claims into sounding in negligence to bar them.  Defendants' challenges to the claims are unfounded and do not support the claims' dismissal.

**California Constitution Claims**

Defendants fault Mr. and Mrs. Willis' potential California Constitution claims as unavailable.

12

1    The third claim's heading references violation of California Constitution Article 1, sections 7 and

2    15.  Article 1, section 7(a) provides that a "person may not be deprived of life, liberty, or property

3    without due process of law . . ." In *Katzberg v. Regents of the University of California*, 29 Cal.4th 300,

4    303, 127 Cal.Rptr.2d 482 (2000), the California Supreme Court concluded that a claim for damages is

5    unavailable under that section of the California Constitution.  There is no "constitutional tort cause of

6    action for damages to remedy an asserted violation of the due process 'liberty' interest under article I,

7    section 7(a)." *Katzberg*, 29 Cal.4th at 326, 127 Cal.Rptr.2d 482.

8    Article 1, section 15 addresses a criminal defendant's trial rights – speedy trial, assistance of

9    counsel, confrontation of witnesses and double jeopardy.  Defendants note that the due process clause

10   in Article 1, section 15 "is in the context of the Fifth Amendment of the Federal constitution, not the

11   Fourteenth Amendment" to warrant dismissal of a claim premised on Article 1, section 15.

12   Plaintiffs acknowledge that references to the California Constitution were inadvertent and "would

13   have been deleted" if asked.  As such, plaintiffs are not entitled to pursue claims premised California

14   Constitution Article 1, sections 7 and 15.

15                                    **<u>California's Bane Act</u>**

16   The third claim's heading also references California's Bane Act, California Civil Code section

17   52.1 ("section 52.1").  Defendants contend that Mr. and Mrs. Willis are unable to pursue a "derivative"

18   claim.

19   Section 52.1 permits a civil action against a person who interferes or attempts to interfere by

20   threats, intimidation or coercion with "exercise or enjoyment" of rights secured by the U.S. and

21   California Constitutions and laws.  The Bane Act and related statutes "are California's response to [the]

22   alarming increase in hate crimes." *In re Joshua H.,* 13 Cal.App.4th 1734, 1748, fn. 9, 17 Cal.Rptr.2d

23   291 (1993).  Section 52.1 in intended to "stem a tide of hate crimes." *Jones v. Kmart Corp.*, 17 Cal.4th

24   329, 338, 70 Cal.Rptr.2d 844 (1998).

25   "Section 52.1 does not provide any substantive protections; instead, it enables individuals to sue

26   for damages as a result of constitutional violations."  *Reynolds v. County of San Diego*, 84 F.3d 1162,

27   1170 (9th Cir. 1996), *overruled on other grounds, Acri v. Varian Assocs., Inc.*, 114 F.3d 999 (9th Cir.

28   1997).  "The Bane Act is simply not a wrongful death provision. It clearly provides for a personal cause

                                        13

of action for the victim of a hate crime." *Bay Area Rapid Transit Dist. v. Superior Court,*

38 Cal.App.4th 141, 145, 44 Cal.Rptr.2d 887 (1995).   The Bane Act "is limited to plaintiffs who

themselves have been the subject of violence or threats." *Bay Area Rapid Transit*, 38 Cal.App.4th at

145, 44 Cal.Rptr.2d 887.

Plaintiffs concede that reference to section 52.1 was inadvertent.   Plaintiffs appear to

acknowledge the absence of a section 52.1 claim.   As such, plaintiffs are not entitled to pursue a section

52.1 claim.

### *Monell* **Liability**

Defendants challenge an attempt to impose *Monell* liability on the City under the (third) Fourth

Amendment and (fourth) Fourteenth Amendment claims in that the complaint fails "to adequately plead

a federal civil rights claim."

A local government unit may not be held liable for the acts of its employees under a respondeat

superior theory.   *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018

(1978); *Davis v. Mason County*, 927 F.2d 1473, 1480 (9th Cir.), *cert. denied*, 502 U.S. 899, 112 S.Ct.

275 (1991); *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th Cir. 1989).   "Federal case law

has long barred respondeat superior liability against state actors in suits brought under 42 U.S.C. §

1983." *Fed. of African American Contractors v. City of Oakland*, 96 F.3d 1204, 1214 (9th Cir. 1996).

Claimants suing state actors under 42 U.S.C. § 1983 "must establish that their alleged injury was the

result of a 'policy or custom' of that state actor." *African American Contractors*, 96 F.3d at 1215.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor." *Monell*, 436 U.S.

at 691, 98 S.Ct. at 2018.   The local government unit "itself must cause the constitutional deprivation."

*Gilette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992), *cert. denied*, 510 U.S. 932, 114 S.Ct. 345

(1993).   Because liability of a local governmental unit must rest on its actions, not the actions of its

employees, a plaintiff must go beyond the respondeat superior theory and demonstrate that the alleged

constitutional violation was the product of a policy or custom of the local governmental unit.   *City of*

*Canton, Ohio v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197 (1989); *Pembaur v. City of Cincinnati*, 475

U.S. 469, 478-480, 106 S.Ct. 1292 (1986).   To maintain a civil rights claim against a local government,

a plaintiff must establish the requisite culpability (a "policy or custom" attributable to municipal

policymakers) and the requisite causation (the policy or custom as the "moving force" behind the constitutional deprivation). *Monell*, 436 U.S. at 691-694, 98 S.Ct. 2018; *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002).

An actionable policy or custom is demonstrated by:

1.  An "express policy that, when enforced, causes a constitutional deprivation," *Baxter v. Vigo County School Corp.*, 26 F.3d 728, 735 (7th Cir. 1994);

2.  A "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled to constitute a 'custom or usage' with the force of law," *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915 (1988) (plurality opinion); or

3.  Constitutional injury caused by a person with "final policymaking authority," *Praprotnik*, 485 U.S. at 123, 108 S.Ct. 915.

"The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police. Dept.*, 130 F.3d 162, 167 (5th Cir. 1997). "[E]xistence of a policy, without more, is insufficient to trigger local government liability." *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992). However, "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur*, 475 U.S. 469, 480, 106 S.Ct. 1292 (1986).

"More importantly, where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly." *Pembaur*, 475 U.S. at 481, 106 S.Ct. 1292. Local government liability is based on "whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue." *McMillan v. Monroe County, Ala.*, 520 U.S. 781, 785, 117 S.Ct. 1734 (1997).

To impose *Monell* liability, a plaintiff "must identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy. Plaintiff must, of course, prove that his injury was caused by city policy." *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984).

Plaintiffs argue that their *Monell* claim is viable in that the complaint alleges that:

15

1.     Officers Catton and Astacio, without warning or identifying themselves, shot and killed Stephen under supervision of senior officers and ratification by Chief Dyer to deprive Mr. and Mrs. Willis of constitutional rights;

2.     The City consented to, ratified or authorized the shooting; and

3.     Officers Catton and Astacio acted under "policies, practices, customs and usages of the City."

Plaintiffs give their complaint too much credit. At best, the complaint alleges respondeat superior, which is unsatisfactory to impose *Monell* liability. The complaint fails to identify a specific policy or custom and to allege how a constitutional violation was a product of a policy or custom. The complaint lacks insufficient facts to allege requisite causation of the constitutional deprivation. The complaint fails to connect to the City a policy or custom which causes alleged constitutional violation. Nonetheless, plaintiffs are granted leave to attempt to plead a *Monell* claim, if plaintiffs so choose.

## 42 U.S.C. § 1985 Conspiracy

The complaint's seventh claim alleges that Chief Dyer publicized a "groundless claim" that Stephen "had pulled out his weapon and fired at police officers before they fired at him and after they had identified themselves and ordered him to put down his firearm, [and] that his blood alcohol was at a certain and dangerous level." The claim further alleges that Officers Catton and Astacio and Chief Dyer conspired to obstruct justice and "to deprive plaintiffs their due course of justice, including their due process right to access the courts and have equal protection of the laws, in violation of 42 U.S.C. § 1985" and covered up "the misconduct of individual police officers."

Defendants characterize the claim to allege "a conspiracy to prevent access to state courts" and fault the claim's absence of "class-based animus" allegations and facts to indicate how Mr. and Mrs. Willis "were denied access to any court." Defendants argue that Chief Dyer's "statement to the press, based on information, does not implicate a constitutional interest." Defendants attribute the claim to be premised on subsection 2 of 42 U.S.C. § 1985 ("section 1985"). Section 1985(2) provides in pertinent part:

> . . . if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the **equal protection of the laws**, or to injure him or his property

for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the **equal protection of the laws**;  (Bold added.)

Section 1985 addresses conspiracies to interfere with certain civil rights.  The "equal protection" language of the second clause (state courts) of section 1985(2) requires "an allegation of class-based animus for the statement of a claim under that clause."  *Portman v. County of Santa Clara*, 995 F.2d 898, 909 (9th Cir. 1993) (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1029 (9th Cir.1985)).  "Congress intended the act [section 1985(2)] to apply only in cases where there was racial or class-based animus."  *Kimble v. D. J. McDuffy, Inc.,* 648 F.2d 340, 347 (5th Cir.), *cert. denied*, 454 U.S. 1110, 102 S.Ct. 687 (1981); *see Lopez v. Arrowhead Ranches*, 523 F.2d 924, 928 (9th Cir. 1975) (limitation to "cases in which a deprivation of equal rights is actionable to those where the injury is class motivated").

Defendants are correct that the claim lacks allegations of class-based animus.  Plaintiffs offer no meaningful challenge on this point and are not entitled to pursue a section 1985(2) claim.

Apparently recognizing the absence of a section 1985(2) claim, plaintiffs offer that defendants "fail to show or even argue why plaintiffs are not entitled to the relief" under section 1985(3).[5]

"To state a cause of action under § 1985(3), a complaint must allege (1) a conspiracy, (2) to deprive any person or a class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United

---

[5]     Section 1985(3) provides:

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

States." *Gillespie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980). "To bring a cause of action successfully under § 1985(3), a plaintiff must demonstrate a deprivation of a right motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1056 (9th Cir. 2002).

Congress did not intend to create a general federal tort law by the passage of section 1985(3). *Western Telecasters, Inc. v. California Federation of Labor, AFL-CIO*, 415 F.Supp. 30, 33 (S.D. Cal. 1976.) "[T]o effectuate the intent of Congress, the conspirators must be motivated by a class-based, invidiously discriminatory animus." *Western Telecasters*, 415 F.Supp. at 33 (section 1985(3) should not be interpreted to encompass all discrimination between classes of persons, and a claim of discrimination against employees of a non-union entity does not allege an invidiously, discriminatory animus and is not actionable under section 1985(3)).

Plaintiffs offer nothing meaningful to support a section 1985(3) claim. The complaint does not even hint of racial or other class-based discrimination. This Court construes plaintiffs' reference to section 1985(3) as a life preserver ring for a drowning claim.

Defendants further challenge the absence of facts to support a conspiracy, in particular, "a meeting of the minds between the co-conspirators."

A section 1985 claim "must allege facts to support the allegation that defendants conspired together. A mere allegation of conspiracy without factual specificity is insufficient." *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 626 (9th Cir. 1988). "To state a claim for conspiracy to violate constitutional rights, 'the plaintiff must state specific facts to support the existence of the claimed conspiracy.'" *Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 929 (9th Cir. 2004) (quoting *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989)).

A section 1985(3) claim "must set forth facts showing some intentional and purposeful deprivation of constitutional rights." *See Powell v. Workmen's Compensation Bd. of State of N. Y.*, 327 F.2d 131, 137 (2nd Cir. 1964). A section 1985(3) plaintiff is "bound to do more than merely state vague and conclusionary allegations respecting the existence of a conspiracy. It was incumbent upon him to allege with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy." *Powell*, 327 F.2d at 137; *see Grigsby*

*v. Kane*, 250 F.Supp.2d 453, 458 (M.D. Pa. 2003).  "[O]nly allegations which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and actions taken in furtherance of the conspiracy, will be deemed sufficient." *Grigsby*, 250 F.Supp.2d at 458.  A conspiracy occurs only when the parties have reached "a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement." *American Tobacco Co. v. United States*, 328 U.S. 781, 809-10, 66 S.Ct. 1125, 1138, 90 L.Ed. 1575 (1946).

The gist of the alleged conspiracy is that Chief Dyer and Officers Catton and Astacio agreed to disseminate false information about the shooting.  Defendants correctly note the absence of facts to support a conspiracy.  In their opposition, plaintiffs neither proffer nor suggest facts to support a section 1985 conspiracy.

Defendants further challenge the claim's lack of allegations to support a claim of denial of court access in that Mr. and Mrs. Willis "were not entitled to an investigation" into defendants' alleged wrongdoing.

 The "benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause, neither in its procedural nor in its 'substantive' manifestations. This result reflects our continuing reluctance to treat the Fourteenth Amendment as 'a font of tort law.'" *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 768, 125 S.Ct. 2796 (2005).

As a whole the (seventh) conspiracy claim is severely deficient.  It fails to the extent it attempts to allege a conspiracy under 42 U.S.C. § 1983.  A section 1983 civil rights conspiracy is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages. *Earle v. Benoit*, 850 F.2d 836, 844 (1st Cir. 1988).  "Section 1983 is based upon the fourteenth amendment and thus concerns deprivations of rights that are accomplished under the color of state law." *Gillespie*, 629 F.2d at 641.

Plaintiffs fail to demonstrate that alleged dissemination of false information as to the shooting arises to an unlawful act, a lawful act committed by unlawful means, or a constitutional deprivation. Defendants correctly note the speculation of a claim tied to a government claim.  The conspiracy claim

reaches too far and produces nothing remotely close to an actionable conspiracy to warrant the claim's dismissal with prejudice. Plaintiffs appear to acknowledge as much with their absence of a request to attempt to amend.

### Striking Fourth Amendment Pain And Suffering Damages

Defendants seek to strike from the (second) Fourth Amendment claim Mr. and Mrs. Willis' "pecuniary loss resulting from the loss of care, comfort, society, attention, services, affection, familial relationship, companionship and love" from Stephen. Defendants argue that plaintiffs confuse wrongful death and survivor action damages.

F.R.Civ.P. 12(f) empowers a court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Motions to strike may be granted if "it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *LeDuc v. Kentucky Central Life Ins. Co.*, 814 F.Supp. 820, 830 (N.D. Cal. 1992); *Colaprico v. Sun Microsystems, Inc.*, 758 F.Supp. 1335, 1339 (N.D. Cal. 1991). "[T]he function of a [F.R.Civ.P.] 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983); *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 114 S.Ct. 1023 (1994).

An "immaterial" matter has no essential or important relationship to the claim for relief or defenses pleaded. *Fantasy, Inc.*, 984 F.2d at 1527; *Gilbert v. Eli Lilly & Co., Inc.*, 56 F.R.D. 116, 120, n. 5 (D. P.R. 1972); *Fleischer v. A.A.P., Inc.*, 180 F.Supp. 717 (D. Pa. 1958). An "impertinent" allegation is neither responsive nor relevant to the issues involved in the action and which could not be put in issue or given in evidence between the parties. *Gilbert*, 56 F.R.D. at 120, n. 6; *Burke v. Mesta Mach. Co.*, 5 F.R.D. 134 (D. Pa. 1946). An "impertinent" matter consists of statements that do not pertain and are unnecessary to the issues in question. *Fantasy, Inc.*, 984 F.2d at 1527.

Matters may be stricken to reduce trial complication or if challenged allegations are so unrelated to plaintiff's claims to be unworthy of consideration as a defense and their presence in the pleading will prejudice the party seeking to strike matters. *Fantasy, Inc.*, 984 F.2d at 1527. "[A] motion to strike may be used to strike any part of the prayer for relief when the damages sought are not recoverable as a matter

1   of law." *Bureerong v. Uvawas*, 922 F.Supp. 1450, 1479, n. 34 (C.D. Cal. 1996).  With these standards

2   in mind, this Court turns to defendants' attack on Mr. and Mr. Willis' ability to recover pain and

3   suffering damages for Stephen under the Fourth Amendment claim.

4        California Code of Civil Procedure section 377.34 addresses damages recoverable by a

5   decedent's successor:

6            In an action or proceeding by a decedent's personal representative or successor
         in interest on the decedent's cause of action, the damages recoverable are limited to the
7        loss or damage that the decedent sustained or incurred before death, including any
         penalties or punitive damages or exemplary damages that the decedent would have been
8        entitled to recover had the decedent lived, and **do not include** damages for **pain,
         suffering**, or disfigurement.

9

10       "Code of Civil Procedure section 377.34 permits the representative of decedent's estate to sue

11  on this cause of action. Even though the statute does not permit the estate to recover specific damages

12  for decedent's pain and suffering, California law permits the estate representative to seek punitive

13  damages for the violation of decedent's rights." *Garcia v. Superior Court*, 42 Cal.App.4th 177, 185-186,

14  49 Cal.Rptr.2d 580 (1996).  In *Garcia*, 42 Cal.App.4th at 186-187, 49 Cal.Rptr.2d 580, the California

15  Court of Appeal further explained:

16           Concerning the compensatory purpose of the federal Civil Rights Act, Code of
         Civil Procedure section 377.34 represents the Legislature's reasonable judgment that,
17       once deceased, the decedent cannot in any practical way be compensated for his injuries
         or pain and suffering, or be made whole. (*Bell v. City of Milwaukee, supra*, 746 F.2d at
18       pp. 1235-1236.) This does not mean, however, that the statutory scheme for survivors,
         taken as a whole, provides no compensatory damages. California law provides, in
19       addition to recovery by the representative of the estate on the decedent's cause of action,
         a wrongful death action by decedent's heirs. (Code Civ. Proc., §§ 377.60, 377.61.)
20       Under these provisions, designated surviving relatives or the decedent's heirs at law can
         recover pecuniary losses caused by the death, including pecuniary support the decedent
21       would have provided them, and noneconomic damages for being deprived of the
         decedent's society and comfort. (*Krouse v. Graham* (1977) 19 Cal.3d 59, 67-68 [137
22       Cal.Rptr. 863, 562 P.2d 1022].) These are significant compensatory damages flowing
         from the actor's killing of the victim, and which the actor must take into account . . .

23

24       Defendants are correct that the Fourth Amendment claim is a survivor's claim on behalf of

25  Stephen, not Mr. and Mrs. Willis.  As such, the Fourth Amendment claim may not seek to recover for

26  Mr. and Mrs. Willis' "pecuniary loss resulting from loss of care, comfort, society, attention, services,

27  affection, familial relationship, companionship and love from decedent."  Such a damages claim is

28  subject to striking.

**CONCLUSION AND ORDER**

For the reasons discussed above, this Court:

1.   DENIES dismissal of the (first) wrongful death-negligence claim against the City to the extent that the claim alleges the City's vicarious liability;

2.   DISMISSES with prejudice the (first) wrongful death-negligence claim against Chief Dyer;

3.   DENIES dismissal of the (first) wrongful death-negligence claim against Officers Catton and Astacio;

4.   DENIES dismissal of the (second) Fourth Amendment, (third) Fourteenth Amendment, (fourth) assault and (fifth) intentional infliction of emotional distress claims against Chief Dyer and Officers Catton and Astacio;

5.   DISMISSES with prejudice all claims premised on violation of California Constitution Article 1, sections 7 and 15 and California Civil Code section 52.1;

6.   DISMISSES with leave to amend *Monell* claims against the City under the (second) Fourth Amendment and (third) Fourteenth Amendment claims;

7.   DISMISSES with prejudice the (seventh) conspiracy claim;

8.   STRIKES the complaint's paragraph 34 which seeks pecuniary loss for Mr. and Mrs. Willis; and

9.   ORDERS plaintiffs, no later than December 30, 2009, to file and serve either their: (a) first amended complaint to cure deficiencies in *Monell* claims; or (b) statement that they forego *Monell* claims.  A first amended complaint shall exclude claims which this order dismisses with prejudice.

IT IS SO ORDERED.

**Dated:    December 9, 2009    **                    **/s/ Lawrence J. O'Neill**
                                                                    UNITED STATES DISTRICT JUDGE