**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHRIS WILLIS, et al., | CASE NO. CV F 09-1766 LJO DLB |
| Plaintiffs, | **ORDER ON DEFENDANT DYER'S F.R.Civ.P. 12 MOTION TO DISMISS** |
| vs. | (Doc. 17.) |
| CITY OF FRESNO, et al, | |
| Defendants. / | |

**INTRODUCTION**

Defendant Fresno Police Department Chief Jerry Dyer ("Chief Dyer") seeks to dismiss as legally barred and lacking sufficient facts plaintiffs' excessive force and tort claims arising from the police officer shooting death of Stephen Willis ("Stephen"). Plaintiffs contend that Chief Dyer's attempt to dismiss the claims is untimely given that he failed to do so in prior motion and that the claims are "cognizable" against Chief Dyer in his individual capacity. This Court considered Chief Dyer's F.R.Civ.P. 12(b)(6) motion to dismiss on the record and VACATES the February 17, 2010 hearing, pursuant to Local Rule 230(g). For the reasons discussed below, this Court GRANTS in part and DENIES in part Chief Dyer's motion to dismiss.

# BACKGROUND[1]

## The Parties

Plaintiffs are Chris Willis and Mary Willis (collectively "Mr. and Mrs. Willis"), Stephen's natural parents, and Jennafer Uribe ("Ms. Uribe"), Stephen's live-in partner at the time of his death.

In addition to Chief Dyer, Mr. and Mrs. Willis and Ms. Uribe (collectively "plaintiffs") pursue claims against defendants City of Fresno ("City") and City police officers Greg Catton ("Officer Catton") and Daniel Astacio ("Officer Astacio").[2]

## Stephen's Shooting

On March 28, 2009, Officers Catton and Astacio, unbeknownst to Stephen, pursued Stephen who parked his vehicle in front of his Fresno apartment. Ms. Uribe ran from the vehicle to the apartment's front door to "use the facilities." Stephen strolled to the vehicle's trunk "so that he could remove his belongings, including a firearm that was enclosed in a case and that he had used at a firing range earlier in the day."

Without warning or identifying themselves, Officers Catton and Astacio shot until Stephen fell or dove to the ground and continued shooting "until they had put 14 bullets into him, including several in his back, out of at least 35 bullets fired at him, and he was dead."

Chief Dyer immediately ratified the shooting and held press conferences and gave public statements to assert the shooting was proper.

## Plaintiffs' Claims

### *General Allegations*

The FAC alleges wrongful death and survivor claims for Mr. and Mrs. Willis and intentional tort claims for Ms. Uribe. The FAC alleges that Stephen's shooting was "without cause" and was "with unreasonable and excessive force and deliberate indifference of his safety, health and life" in that Stephen "was lawfully and peacefully in the process of transferring his own property from his car to his home." The FAC alleges that defendants "concealed and falsified material information and otherwise

---

[1] The factual recitation is derived generally from plaintiffs' First Amended Complaint for Damages ("FAC"), the target of Chief Dyer's challenges.

[2] The City, Chief Dyer and Officers Catton and Astacio will be referred to collectively as "defendants."

2

attempted to cover up their misconduct."

The complaint alleges Mr. and Mrs. Willis' damages of loss of Stephen's care, comfort and love, funeral and burial expenses, and Stephen's "personal injury and property damage before he died." The complaint seeks to recover for Ms. Uribe's emotional distress. The complaint further seeks to recover punitive damages and attorney fees for plaintiffs.

### *Claims Against Chief Dyer*

The FAC names Chief Dyer "in his individual and official capacities" as the City "policy-maker" regarding City customs, policies and practices for police officer training, supervision, hiring and discipline and Fresno Police Department management.

The FAC names Chief Dyer in three claims under 42 U.S.C. § 1983 ("section 1983"). The FAC's (second) Fourth Amendment violation claim is on Stephen's behalf by Mr. and Mrs. Willis as Stephen's successors in interest. The claim alleges that defendants deprived Stephen of "rights secured by the Fourth Amendment of the United States Constitution to be free from unreasonable searches and seizures." As to Chief Dyer, the Fourth Amendment claim alleges that:

1. The abuses at issue where "the product of a culture of tolerance" rooted in "deliberate indifference" of Chief Dyer who "routinely acquiesced in the misconduct and otherwise failed to take necessary measures to prevent and curtail such conduct";

2. The "incident" was caused by Chief Dyer's deliberate indifference "with regard to the need for more or different training and/or supervision and/or discipline" of police officers, including Officers Catton and Astacio;

3. The "incident" was the result of Chief Dyer's "custom, policy, pattern and/or practice . . . whereby citizens, such as decedent, who lived in impoverished, low-income and predominantly minority neighborhoods, were disproportionately subjected to greater incidences of excessive force, police brutality . . . and officer-involved shootings";

4. Chief Dyer "failed to take any or appropriate remedial action to prevent such continuing misconduct" in that Chief Dyer "had a custom, policy, pattern and/or practice of making what were at times false, circumstantial or unfounded statements to the press that at the time of the shooting the victim posed a threat to the shooting officer(s)"; and

5. Chief Dyer "encouraged, authorized, ratified, condoned and/or . . . failed to remedy continuing acts of misconduct and civil rights violations, including, but not limited to, those which have resulted in the damages as alleged herein."

The FAC's (third) claim alleges that Chief Dyer "acting under color of the law of the State of California and with deliberate indifference to the rights of plaintiffs" deprived plaintiffs of their "rights, privileges and immunities secured by . . . the Fourteenth Amendment's right not to be deprived of life or liberty without due process of law."

The FAC's (sixth) section 1983 inadequate and reckless training claim alleges that plaintiffs' damages were caused by Chief Dyer's customs, policies, patterns or practices "of deliberate indifference in the training, retraining, supervision and/or discipline" of City police officers, including Officers Catton and Astacio.[3]

The FAC also alleges a (fourth) common law assault claim for Ms. Uribe against Chief Dyer that Officers Catton and Astacio fired shots in Ms. Uribe's direction which "passed near and by her" and "killed her live-in partner in her presence" to threaten "physical injury to herself."

## DISCUSSION

### F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards

Chief Dyer challenges the claims against him in that he is a redundant defendant in his official capacity as to the section 1983 claims, and the FAC lacks viable section 1983 and assault claims against him.

A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a

---

[3] The (second) Fourth Amendment excessive force, (third) Fourteenth Amendment due process and (sixth) inadequate and reckless training claims will be referred to collectively as the "section 1983 claims."

4

cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

In resolving a F.R.Civ.P. 12(b)(6) motion, a court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996). Nonetheless, a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009), the U.S. Supreme Court recently explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but ask it asks for more than a sheer possibility that a defendant has acted unlawfully. (Citations omitted.)

After discussing *Iqbal*, the Ninth Circuit Court of Appeals summarized: "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that

content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, __ U.S. __, 129 S.Ct. at 1949).

The U.S. Supreme Court applies a "two-prong approach" to address a motion to dismiss:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, __ U.S. __, 129 S.Ct. at 1949-1950.

With these standards in mind, this Court turns to Chief Dyer's challenges to the claims against him.

**Official Capacity**

Chief Dyer contends that he should be dismissed from the section 1983 claims in his official capacity in that the City is subject to the claims.

Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018 (1978). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099 (1985) (citing *Brandon v. Holt*, 469 U.S. 464, 471-472, 105 S.Ct. 873 (1985)). Such an action is not against the public employee personally, "for the real party in interest is the entity." *Graham*, 473 U.S. at 166, 105 S.Ct. 3099.

Local government officials sued in their official capacities are "persons" under section 1983 in cases where a local government would be suable in its own name. *Monell*, 436 U.S. at 690, n. 55, 98 S.Ct. 2018. "For this reason, when both an officer and the local government entity are named in a

lawsuit and the officer is named in official capacity only, the officer is a redundant defendant and may be dismissed." *Luke v. Abbott*, 954 F.Supp. 202, 203 (C.D. Cal. 1997) (citing *Vance v. County of Santa Clara*, 928 F.Supp. 993, 996 (N.D. Cal. 1996)). "Section 1983 claims against government officials in their official capacities are really suits against the governmental employer because the employer must pay any damages awarded." *Butler v. Elle*, 281 F.3d 1014, 1023 (9th Cir. 2002).

"[I]t is no longer necessary or proper to name as a defendant a particular local government officer acting in official capacity." *Luke*, 954 F.Supp. at 204. As the district court in *Luke*, 954 F.Supp. at 204, explained:

> A plaintiff cannot elect which of the defendant formats to use. If both are named, it is proper upon request for the Court to dismiss the official-capacity officer, leaving the local government entity as the correct defendant. If only the official-capacity officer is named, it would be proper for the Court upon request to dismiss the officer and substitute instead the local government entity as the correct defendant.

There are no grounds to maintain the section 1983 claims against Chief Dyer in his official capacity given that the City is a defendant. Plaintiffs do not challenge Chief Dyer's dismissal in his official capacity. The complaint's section 1983 claims are dismissed against Chief Dyer in his official capacity.

**Direct Participation**

Chief Dyer challenges the section 1983 claims' lack of allegations of his direct participation in constitutional deprivations to impose liability on him.

"Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632-633 (9th Cir. 1988).

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 811 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 2694, n. 3 (1979)). Section 1983 and other federal civil rights statutes address liability "in favor of persons who are deprived of 'rights, privileges, or immunities secured' to them by the Constitution." *Carey v. Piphus*, 435 U.S. 247, 253, 98 S.Ct. 1042 (1978) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S.Ct. 984, 996

(1976)). "The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689 (1979). Stated differently, the first step in a section 1983 claim is to identify the specific constitutional right allegedly infringed. *Albright*, 510 U.S. at 271, 114 S.Ct. at 811. "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Baker*, 443 U.S. at 146, 99 S.Ct. 2689.

"Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996), *cert. denied*, 520 U.S. 1230, 117 S.Ct. 1822 (1997); *see Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under section 1983 arises only upon a showing of personal participation by the defendant.") "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused the constitutional deprivation." *Leer*, 844 F.2d at 633. Section 1983 requires that there be an actual connection or link between the defendant's actions and the deprivation allegedly suffered. *See Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018 (1978); *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598 (1976).

A plaintiff cannot hold an officer liable "because of his membership in a group without a showing of individual participation in the unlawful conduct." *Jones v. Williams*, 297 F.3d 930, 935 (9th Cir. 2002) (citing *Chuman v. Wright*, 76 F.3d 292, 294 (9th Cir. 1996)). A plaintiff must "establish the 'integral participation' of the officers in the alleged constitutional violation." *Jones*, 297 F.3d at 935. "'[I]ntegral participation' does not require that each officer's actions themselves rise to the level of a constitutional violation." *Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004). Integral participation requires "some fundamental involvement in the conduct that allegedly caused the violation." *Blankenhorn v. City of Orange*, 485 F.3d 463, 481, n. 12 (9th Cir. 2007). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

"A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). A section 1983 plaintiff "must state the allegations generally so as to provide notice to the defendants and alert the court as to what conduct violated clearly established law." *Preschooler II v. Clark County School Bd. of Trustees*, 479 F.2d 1175, 1182 (9th Cir. 2007).

Chief Dyer challenges that his press statements after Stephen's shooting constitute an actionable "ratification" in absence of "a constitutionally-protect interest" in connection with the press statements. Chief Dyer questions how an alleged "cover up" deprived plaintiffs of a constitutional right in that a coverup "has nothing to do with whether use of force was objectively reasonable under the Fourth Amendment." Chief Dyer points to the absence of alleged facts of his "participation in the underlying event."

The FAC accuses Chief Dyer of "deliberate indifference" with his acquiescence in misconduct and failure to prevent or remedy misconduct and to address officer training, supervision and/or discipline. The FAC faults Chief Dyer's "circumstantial or unfounded statements to the press."

Based on their opposition, plaintiffs do not base section 1983 liability on Chief Dyer's press statements. According to plaintiffs, Chief Dyer's press statements legitimized "his officers' right to shoot the victims involved." The press statements are not a source of constitutional wrong to support section 1983 liability but rather demonstrate Chief Dyer's deliberate indifference. Chief Dyer's potential section 1983 liability rests in his supervisory capacity, not direct involvement in Stephen's shooting.

### **Supervisor Liability**

Chief Dyer contends that he is not subject to section 1983 liability as a supervisor in the absence of allegations of his actions that he knew, or should have known, "would cause the defendant officers to inflict injury on Decedent." Chief Dyer faults the FAC's failure to allege a sufficient causal connection between Chief Dyer's conduct and the constitutional deprivation given the FAC's "general, sweeping allegations of previous complaints and officer misconduct." Chief Dyer characterizes the allegation of fostering a "culture of tolerance" as "too vague and undefined" to impose section 1983 supervisor liability on Chief Dyer.

Generally, supervisory personnel are not liable under section 1983 for actions of their employees

9

under a respondeat superior theory, and thus, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged and proved. *See Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001); *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978), *cert. denied*, 442 U.S. 941, 99 S.Ct. 2883 (1979). To establish a prima facie case of supervisor liability, a plaintiff must show facts to indicate that the supervisor defendant either: (1) personally participated in the alleged deprivation of constitutional rights; (2) knew of the violations and failed to act to prevent them; or (3) promulgated or implemented a policy "so deficient that the policy itself 'is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); *Taylor*, 880 F.2d at 1045. A police chief is liable in his individual capacity if he "set[ ] in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which he kn[e]w or reasonably should [have] know[n], would cause others to inflict the constitutional injury." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (ratification, poor investigation, or failure to terminate series of events may make supervisor liable).[4]

"Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (1982).

To support Chief Dyer's supervisory liability, plaintiffs point to FAC allegations that Chief Dyer:

1. Knew of disproportionate "excessive force, police brutality, unreasonable searches and seizures, false charges, false arrests and officer-involved shootings" in "impoverished, low-income and predominantly minority neighborhoods" but failed to take "appropriate remedial action to prevent such continuing conduct";

2. "[E]ncouraged, authorized, ratified, condoned and/or . . . failed to remedy continuing acts of misconduct and civil-rights violations";

3. Was "on actual notice of problems with accountability of Fresno Police Officers" given

---

[4] The Ninth Circuit Court of Appeals offered alternative elements to impose section 1983 liability on a supervisor: "'(1) his or her personal involvement in the constitutional deprivation, *or* (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001) (quoting *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991)).

10

        prior officer shootings which were inadequately investigated and internal affairs' failure to investigate complaints;

4.     Has been deliberately indifferent as to "the need for more or different training and/or supervision and/or discipline" of police officers; and

5.     Fostered a "culture of tolerance" within the City Police Department by acquiescing in misconduct and otherwise failing to take preventative measures to curtail misconduct.

Plaintiffs conclude that the FAC establishes "sufficient casual connection between Defendant Dyer's wrongful conduct and Officer Catton's and Astacio's constitutional deprivations, such that Defendant Dyer can be held individually liable."

        This Court agrees with plaintiffs that the FAC alleges sufficient factual matter to state a facially plausible claim that Chief Dyer is subject to supervisor liability under the section 1983 claims.[5]  As to Chief Dyer, the FAC alleges more than threadbare recitals of elements to impose supervisor liability given the FAC's allegations of Chief Dyer's knowledge of police officer incidents prior to Stephen's shooting, including one involving Officer Astacio. The FAC's details exceed conclusory statements, and Chief Dyer's points to the contrary are unavailing. The FAC alleges continuing constitutional violations which Chief Dyer failed to prevent. The section 1983 claims against Chief Dyer survive his motion to dismiss.[6]

**Assault**

        Chief Dyer challenges his liability for the intentional assault tort given his absence from the shooting scene. Chief Dyer further points to absence of vicarious liability under California Government Code section 820.8, which provides that generally, "a public employee is not liable for an injury by the act or omission of another person."

        Plaintiffs fail to challenge dismissal of the assault claim against Chief Dyer. Such dismissal is warranted in the absence of his direct or vicarious liability for alleged assault of Ms. Uribe.

---

[5]     At this point, this Court does not pass judgment whether plaintiffs, through discovery, will possess factual support to defeat a proper summary judgment motion in Chief Dyer's favor.

[6]     This Court disagrees with plaintiffs that Chief Dyer engages in "successive or piecemeal motions" given that defendants' prior motion to dismiss attacked the overall merits of the section 1983 claims.

# CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1. DISMISSES the second, third and sixth section 1983 claims against Chief Dyer in his official capacity;
2. DENIES dismissal of the second, third and sixth section 1983 claims against Chief Dyer in his individual capacity;
3. DISMISSES with prejudice the (fourth) assault claim against Chief Dyer; and
4. ORDERS all defendants, no later than February 17, 2010, to file an answer to plaintiffs' remaining claims.

IT IS SO ORDERED.

**Dated:   February 3, 2010**               /s/ Lawrence J. O'Neill
                                            UNITED STATES DISTRICT JUDGE