Walter H. Walker, III  (CA SBN 63117)
Peter J. Koenig  (CA SBN 132437)
Beau R. Burbidge (CA SBN 267267)
WALKER, HAMILTON & KOENIG LLP
50 Francisco Street, Suite 460
San Francisco, CA 94133-2100
Phone: (415) 986-3339
Fax: (415) 986-1618

Richard P. Berman  (CA SBN 55462)
LAW OFFICES OF RICHARD P. BERMAN
2333 Merced Street
Fresno, CA 93721
Phone: (559) 233-2333
Fax: (559) 233-6947

Eric H. Schweitzer (CA SBN 179776)
SCHWEITZER & DAVIDIAN
620 DeWitt Ave., Suite 102
Clovis, CA 93612
Tel: (559) 322-1500
Fax: (559) 322-1551

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Chris Willis, Mary Willis, individually and successors in interest to Stephen Willis,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>City of Fresno, Officer Greg Catton, Officer Daniel Astacio, Chief Jerry Dyer, and DOES 1 through 50 inclusive,<br><br>　　　　Defendants. | Case No. 1:09-cv-01766-BAM<br><br>**PLAINTIFFS' RESPONSE AND OPPOSITION TO DEFENDANTS' MOTIONS IN LIMINE**<br><br>Hearing:　　November 19, 2013<br>Time:　　　 9:00 a.m.<br>Courtroom: 8<br>Judge:　　　Barbara A. McAuliffe<br>　　　　　　 U.S. Magistrate Judge |

---

1

PLAINTIFFS' RESPONSE AND OPPOSITION TO DEFS' MOTIONS IN LIMINE (Case No. 1:09-cv-01766-BAM)

Plaintiffs respond to Defendants' in limine motions as follows:

1. **MOTION TO PRECLUDE EVIDENCE NOT PRODUCED DURING DISCOVERY**

Plaintiffs do not oppose this motion so long as any order on the motion applies to all parties.

2. **MOTION TO PRECLUDE IMPROPER COMMENTS REGARDING DAMAGES**

Plaintiffs do not oppose this motion so long as any order on the motion applies to all parties.

3. **MOTION TO PRECLUDE EVIDENCE OF LIABILITY INSURANCE**

Plaintiffs have already told Defendants that they would not raise liability insurance.

4. **MOTION TO PRECLUDE EVIDENCE OF INDEMNIFICATION OF DEFENDANTS OFFICERS GREG CATTON AND DANIEL ASTACIO BY THE CITY OF FRESNO**

Plaintiffs do not oppose this motion.

5. **MOTION TO EXCLUDE NON-PARTY WITNESSES FROM COURTROOM**

Plaintiffs do not oppose this motion to the extent it seeks an order excluding testifying witnesses from the courtroom prior to their testimony. Witnesses who have finished testifying and have been released should be allowed in the courtroom to view this open proceeding.

6. **MOTION TO PRECLUDE EVIDENCE OF ANY OTHER LAWSUITS AGAINST DEFENDANTS OFFICER GREG CATTON, OFFICER DANIEL ASTACIO, THE CITY OF FRESNO AND/OR ANY OTHER FRESNO POLICE DEPARTMENT EMPLOYEE**

Plaintiffs do not oppose this motion.

7. **MOTION TO PRECLUDE QUESTIONS REGARDING PERSONNEL MATTERS, PRIOR COMPLAINTS CONCERNING JOB PERFORMANCE, OR PRIOR DISCIPLINARY ISSUES AS TO DEFENDANTS OFFICER GREG CATTON AND DANIEL ASTACIO AND/OR ANY LAW ENFORCEMENT OFFICER OR ANY OTHER FRESNO POLICE DEPARTMENT OFFICER WHO TESTIFIES IN THIS MATTER**

Plaintiffs oppose this motion on the grounds that it is impermissibly vague and vastly overbroad by encompassing at least three broad categories of testimony for preclusion. Plaintiffs believe that Defendants have not produced the full personnel files of Officers Catton or Astacio, and they have not produced any portion of a personnel file of any other Fresno police officer. Thus, Plaintiffs are ignorant of what is contained in those files. A broad order precluding questions regarding information that may or may not be included in those files could very possibly preclude

relevant evidence.

Nevertheless, Plaintiffs advised Defendants that they would not oppose this motion so long as it applies to all parties.  Defendants should not be allowed to preclude Plaintiffs from questioning or making reference to personnel matters of any Fresno law enforcement officer testifying in this matter but then question witnesses themselves regarding personnel matters for their own purposes at trial.

Plaintiffs additionally informed Defendants that they seek to use just <u>one</u> document designated confidential, Officer Catton's Municipal Police Basic Certificate, bearing Bates Number DX00046, and agree to question <u>only</u> Officer Catton about his educational and employment background leading up to the shooting.[1]  This document does not include "information of a personal nature, training records, . . . information concerning any disciplinary actions or complaints levied against Defendant Officer[] Greg Catton . . . ." (*See* Motion 6:23-26.)  It also does not fall within the protected categories of the Penal Code sections cited in Defendants' motion.  Rather, it merely reflects the date of Officer Catton's professional police certification.

Defendants do not agree to Plaintiffs' proposal to resolve this MIL.

**8.     MOTION TO PRECLUDE PLAINTIFFS FROM MAKING ANY REFERENCE TO ANY ALLEGED INADEQUATE TRAINING, SUPERVISION OR HIRING AT THE CITY OF FRESNO AND/OR FRESNO POLICE DEPARTMENT**

Plaintiffs do not oppose this motion.

**9.     MOTION TO PRECLUDE PLAINTIFFS' RETAINED EXPERT STEPHEN D'ARCY FROM GIVING AN OPINION REGARDING: FACTUAL DETERMINATIONS, CREDIBILITY OF WITNESSES, LEGAL CONCLUSIONS AND FROM GIVING OPINIONS WHICH LACK FOUNDATION**

Plaintiffs oppose this motion on the grounds that it is vague, overbroad, and unsupported. Defendants point to several statements made by Plaintiffs' expert Stephen D'Arcy at his deposition,

---

[1] This was a document produced by Defendants pursuant to a protective order.  (*See* Dkt No. 70.) Plaintiffs will make this certificate available for in camera review should the Court request it.

3
PLAINTIFFS' RESPONSE AND OPPOSITION TO DEFS' MOTIONS IN LIMINE (Case No. 1:09-cv-01766-BAM)

1 claiming they are legal conclusions, speculation, or credibility determinations. This is not the case. Mr. D'Arcy is a police practices expert retained to opine on the actions of the officers on the night of the shooting. The opinions provided at his deposition and in his report are properly based on facts presented to him, and he can and does cite to a factual basis for each opinion. These opinions may involve the ultimate issue to be determined, but they are not legal conclusions. Defendants' concede that such opinions are permitted under Federal Rule of Evidence 704. (*See* Motion, 10:3-4.) Nor do these opinions involve making credibility determinations. Instead, Mr. D'Arcy bases his opinions on what he understands the facts to be, which Defendants also acknowledge is permissible. (*See* Motion, 10:3-4.) The opinions of Mr. D'Arcy, and the excerpts cited in Defendants' motion, are entirely proper.

Further, putting the admissibility of D'Arcy's statements aside, Defendants' motion is incredibly vague and unnecessary. This process would be more cumbersome and time-consuming than if Defendants were to simply object to testimony they deem improper as it is made at trial, which is how any supposedly improper opinions by Mr. D'Arcy should be handled.

Defendants' contention that Mr. D'Arcy's opinions are speculative and involve credibility determinations and legal conclusions is unfounded. Defendants have provided no substantiation for this contention, only short sound bites of Mr. D'Arcy's testimony taken out of context. This is not a sufficient basis for the overbroad and vague prophylactic order that Defendants seek. Defendants' motion should be denied and any testimony by Mr. D'Arcy they deem inappropriate may be objected to at trial.

**10.   MOTION TO PRECLUDE PLAINTIFFS' RETAINED EXPERT ALAN BARBOUR FROM OFFERING OPINIONS OR TESTIMONY REGARDING THE CREDIBILITY OF WITNESS AND/OR EVIDENCE**

Defendants' motion should be denied for the same reasons discussed in Plaintiffs' opposition to Defendants' motion in limine 9. Defendants cite vaguely to Dr. Barbour making credibility determinations at his deposition. In the excerpts of deposition testimony referenced by Defendants, Dr. Barbour does not make credibility determinations. He responds to Defendants' hypothetical scenarios by stating what evidence he would rely on in forming his opinions. Dr. Barbour may base his opinions on facts he deems relevant so long as they are of a type reasonably

relied on by experts in his field.  (Fed. R. Evid. 703.)  As long as this requirement is met, the facts that Dr. Barbour relies upon in forming his opinions should impact the weight given to them, not their admissibility.  Defendants' motion should be denied and any testimony by Dr. Barbour they deem inappropriate may be objected to at trial.

**11.  MOTION TO PRECLUDE PLAINTIFFS' RETAINED EXPERT ALAN BARBOUR FROM OFFERING OPINIONS OR TESTIMONY REGARDING FERMENTATION OF STEPHEN WILLIS' BLOOD AND/OR ESTIMATES OF STEPHEN'S BLOOD ALCOHOL CONTENT AT HIS TIME OF DEATH**

Defendants' motion reads more like a cross-examination of Dr. Barbour than a motion in limine.  Dr. Barbour, in his report and at his deposition, provided his credentials as well as the factual and scientific bases of his opinion. Defendants naturally quibble with the opinion, but their counsel's contrary interpretation of the scientific literature in the area is not a valid ground to preclude Dr. Barbour's testimony.  Instead, Defendants are free to cross-examine Dr. Barbour at trial to attempt to discredit his opinion.  The points raised in Defendants' motion go to the weight of Dr. Barbour's testimony; they do not support its exclusion.  If Defendants do not believe Dr. Barbour's opinion is valid, let them cross-examine Dr. Barbour and allow the jury to make the determination.  The decision of how much weight Dr. Barbour's testimony should be given is one that only the jury can make. Defendants' motion should be denied.

**12.  MOTION TO PRECLUDE NON-DISCLOSED EXPERT WITNESSES FROM OFFERING EXPERT OPINIONS OR TESTIMONY**

Plaintiffs do not oppose this motion so long as any order on the motion applies to all parties.

**13.  MOTION TO PRECLUDE THE TRANSCRIPTS OF AUDIO RECORDED INTERVIEWS DURING THE OFFICER INVOLVED SHOOTING INVESTIGATION**

The Fresno Police Department conducted an investigation of the shooting of Stephen Willis in the hours immediately following the shooting as part of their standard protocol. As part of that investigation, Fresno Police Officer Ray Villalvazo was designated to conduct interviews, including those of the shooters.  One of the shooters interviewed was defendant Greg Catton.

At the outset of the interview, Villalvazo activated an audio recording device in Catton's presence and announced he was doing so.  He further announced on audiotape that he intended to record the interview.  He asked for and received Catton's agreement to do so.  Catton was

1  accompanied in the interview by an attorney and he had the opportunity to consult with his attorney
2  before the interview. Villalvazo read to Catton the Fresno Police Department criminal investigation
3  statement. Catton then waived his *Miranda* rights and agreed to speak.

4        On November 16, 2010, Catton gave his deposition to Plaintiffs' counsel in this case. Once
5  again, Catton was represented by counsel. The deposition process was explained to him, he was
6  reminded he was under oath, and he was informed that he would have a chance to review the
7  deposition transcript and change anything he thought was incorrect. (Walker Decl., Exh. A (Catton
8  Depo, 6:12-7:8).)

9        At that deposition, Catton confirmed that he had reviewed the statement he had given to
10 Villalvazo in the hours following the shooting. (Walker Decl., Exh. A (Catton Depo, 78:12-16).)
11 Catton was then read portions of the transcript of the statement he had given to Villalvazo in the
12 recorded interview and he acknowledged the correctness of what he had told Villalvazo. (Walker
13 Decl., Exh. A (Catton Depo, 81:9-82:8, 83:3-8, 84:9-19).) Later in his deposition Catton was read
14 more of the transcript, including his statement that by the time Stephen "went and started to pull . . .
15 we had already fired and then started to move." (Walker Decl., Exh. A (Catton Depo, 107:20-
16 108:18).) Speaking under oath, Catton stated that this was true and correct. (*Id.*) He again
17 confirmed this statement, stating "And then I said we'd already started firing." (Walker Decl., Exh.
18 A (Catton Depo, 109:1-8).)

19       Defendants now seek to preclude from evidence this probative, authenticated interview
20 transcript and transcripts of other interviews conducted by Villalvazo around the same time as part
21 of the Fresno Police Departments standard Officer Involved Shooting investigation protocol.
22 Plaintiffs oppose this motion on the ground that there is no permissible legal basis for precluding
23 these transcripts at trial. Defendants contend that these transcripts are inadmissible hearsay, are
24 unreliable, and are somehow unfairly prejudicial to Defendants. None of these contentions are
25 valid.

26       First, these transcripts are not inadmissible hearsay. They are not hearsay at all. They are
27 statements by an opposing party. (Fed. R. Evid. 801(d)(2).) Further, as discussed above, the
28 transcripts can and have been authenticated through testimony by those who were involved in the

interviews and by the audio recordings of the interviews themselves. (Fed. R. Evid. 1002.)

Even if these transcripts were hearsay, they would be excepted from the hearsay rule pursuant to Federal Rule of Evidence 807. (*See United States v. Tafollo-Cardenas*, 897 F.2d 976, 980 (9th Cir. 1990).) The transcripts have a guarantee of trustworthiness in that their accuracy may be verified through testimony of those present at the interviews and by the audio recordings of those interviews. (Fed. R. Evid. 807(a)(1); *see also United States v. Sanchez-Lima*, 161 F.3d 545, 547 (9th Cir. 1998) (allowing admission of recorded statements); *United States v. Leal-Del Carmen*, 697 F.3d 964, 974 (9th Cir. 2012) (same).)

The transcripts will be offered as evidence of material facts regarding the shooting, including whether the officers properly identified themselves to Stephen and when they began shooting. (Fed. R. Evid. 807(a)(2).) The transcripts are more probative on what occurred in the shooting than any other evidence as the interviews were conducted mere hours after the shooting when the incident was fresh in the officers' minds. All other accounts of the shooting by the officers, in the form of interrogatory responses, depositions, declarations and statements to experts, were made years after the fact when this lawsuit was pending. The near-contemporaneous interview statements are highly probative to the determination of what occurred at the time of the shooting. (Fed. R. Evid. 807(a)(3).) And admitting these transcripts will serve the purpose of the rules of evidence as well as the interests of justice by allowing relevant, probative, trustworthy statements to be considered by the jury. (Fed. R. Evid. 807(a)(4).)

At the very least, these transcripts would be admissible for the purpose of impeachment. (Fed. R. Evid. 613.) Because many of the statements made in these interviews conflict with the officers' later accounts of the shooting, made when litigation was pending, they may be properly used to impeach the officers' testimony at trial. For these reasons, Defendants' motion should be denied.

### 14. MOTION TO PRECLUDE THE AUDIO RECORDED INTERVIEWS OF OFFICERS GREG CATTON AND DANIEL ASTACIO TAKEN DURING THE OFFICER INVOLVED SHOOTING INVESTIGATION

Defendants admit in their motion that "Officers Catton and Astacio's statements during their interviews constitute admissions of a party opponent . . . ." (Motion, 22:13-14.) Yet they claim that

1  audio recorded "out-of-court statements are inadmissible hearsay if offered to prove the truth of the
2  events narrated."   (Motion, 22:15-16.)   Defendants rely for this erroneous contention on a
3  misconstrued reading of *U.S. v. McCollum*, 732 F.2d 1419 (9th Cir. 1984).  That case does not stand
4  for the proposition Defendants' assert.  There, the defendant attempted to admit into evidence a
5  videotaped statement he had made to police on the ground that his expert relied on it in forming his
6  opinions.  (*Id.* at 1422-1423.)  Because the defendant was attempting to admit an out of court
7  statement he had made, the court properly concluded that it would be inadmissible hearsay if used
8  to prove the truth of the matter asserted in the statement.  (*Id.*)  Because the videotaped statement
9  was not a statement of an opposing party, Rule 801(d)(2) did not apply and was not discussed by
10 the court.

11       Here, the audiotaped statements Plaintiffs seek to utilize were made by opposing parties and
12 therefore they are not hearsay.  The requirements of Federal Rule of Evidence 801(d)(2) are very
13 simple and very clear and Officers Catton's and Astacio's recorded interviews fall within the
14 purview of this rule.  They are therefore admissible.

15       Defendants' arguments that these statements are unfairly prejudicial and cumulative have no
16 merit.  As discussed previously, these statements were made by the officers mere hours after the
17 shooting.  They have been authenticated by the officers at their depositions.  They are very likely to
18 be the most accurate indication of what occurred that night.  They differ in material ways from the
19 accounts the officers provided in their discovery responses and depositions, years after the accident
20 and when this litigation was pending.  They are therefore highly probative, not cumulative and not
21 unfairly prejudicial to Defendants.  Defendants' motion should be denied.

22 **15.  MOTION TO PRECLUDE PLAINTIFFS, THEIR COUNSEL AND WITNESSES FROM OFFERING TESTIMONY OR ARGUMENT THAT STEPHEN DID NOT REACH FOR AND GRAB THE .38 CALIBER HANDGUN PRIOR TO OFFICERS CATTON AND ASTACIO DISCHARGING THEIR FIREARMS**

25       This motion is simply a rehash of Defendants' Motion for Reconsideration (*see* Dkt. No.
26 173) and Petition for Rehearing.  (*See* U.S.C.A. Dkt. No. 52-1.)  It should be denied for the same
27 reasons that both those motions were previously denied.  In addition, Defendants cannot seek to
28 eliminate Plaintiffs' claims by way of motion in limine, or ask that the Court summarily determine

an issue that is clearly one of fact to be determined by the jury.

The basis for this motion has already been briefed extensively. Defendants claim that Plaintiffs' counsel made an alleged "binding admission" during oral argument before the Ninth Circuit panel that Stephen reached for and grabbed his handgun in response to Officer Catton's flashlight. The Court, however, has already made clear in its Order denying Defendants' Motion for Reconsideration that the isolated statement, "he's already got the gun out," is "[a]t a minimum . . . ambiguous." (Dkt. No. 175 at 7:2.) The Court has explained that it "does not view the isolated statement by counsel as the 'clear cut' admission as argued by defendants in their motion . . . Plaintiffs' argument is that, consistent with the evidence, the statement means Stephen had his gun 'out of the trunk' of the car; counsel did not argue [that] . . . Stephen had unholstered his gun, wholly or partially, when he turned from the trunk . . .'" (Dkt. No. 175 at 6:16-26.) The Court therefore denied Defendants' Motion, finding Plaintiffs' counsel's statement to be nothing more than an unclear argument made during rebuttal and in response to defense counsel's arguments.

Furthermore, Defendants cannot by this motion in limine seek to preclude Plaintiffs from asserting certain causes of action at trial. (*See Petty v. Metro. Gov't of Nashville*, 687 F.3d 710, 720-721 (6th Cir. 2012) ("The use of motions in limine to summarily dismiss a portion of a claim has been condemned, and the trial courts are cautioned not to allow motions in limine to be used as unwritten and unnoticed motions for summary judgment or motions to dismiss").) Indeed, whether Stephen reached for and grabbed his handgun prior to the Officers' initial use of force is a disputed fact to be determined by the jury. For all of these reasons, Defendants' motion should be denied.

**16. MOTION TO PRECLUDE ALL PHOTOGRAPHS OF STEPHEN WILLIS AND THE .38 CALIBER HANDGUN AT THE STONEY BROOK APARTMENTS AFTER THE SUBJECT INCIDENT**

Defendants seek to preclude Plaintiffs from showing any photos of Stephen's body and gun taken after the killing because, according to Defendants, they do not accurately depict the body and handgun at the exact moment of "Officer Catton['s] final decision to discharge his firearm." (*See* Motion, 25:12-13.)

First, there are many other relevant reasons to present these photographs to assist witness testimony and the triers of fact. Certainly Stephen Willis is not available to testify about his

9

position and that of his gun.  The defendants killed him, either lawfully or unlawfully, and they controlled the entire crime scene.  They cordoned off the area and maintained control of the scene until morning.  They gathered and marked evidence and they decided what needed to be photographed and when.  They were in exclusive control of scene preservation and photographic evidence.  And they ultimately removed all of the evidence prior to relinquishing exclusive control of the area.  Plaintiffs should not be penalized for Defendants' movement of items within the crime scene, and any movement of evidence by Defendants can be explained by officer witnesses just as they did at deposition.  As stated below, however, Defendants are greatly overstating the amount of movement of Stephen's body, and officers testified that the position of the revolver was preserved and the gun was only picked up once but it was replaced in its exact location.

     Plaintiffs do not intend to use photographs of Stephen's body and the .38 caliber handgun for any improper purposes at trial.  In fact, of the countless photos taken of Stephen and the gun, Plaintiffs have selected only five to use potentially at trial to illustrate either the location of Officers Catton and Astacio during the shooting, or the gun's location.  Like any other crime scene photos that will be used at trial, Fresno police officers will be called upon to explain and describe the significance of what is depicted in the photos.  They also will be able to explain any alleged movement of Stephen's body prior to taking their photos.  Below are some examples of deposition testimony by officers on this subject.

     Officer Jacobo testified that any movement of Stephen's body at the conclusion of the officer shooting was "slight." (Walker Decl., Exh. B (Jacobo Depo, 74:16-25).)  The body was not dragged, picked up or otherwise moved anywhere.  The body was simply rolled over.  Officer Hernandez was then specifically instructed to stand within close proximity to Stephen's body and the firearm to ensure that they were not moved from their original locations.  (Walker Decl., Exh. C (Hernandez Depo, 18:5-15, 18:21-19:2).)   He testified to observing a pathologist "physically move[] [Stephen] around using their hands [and] . . . rolling his body over." (Walker Decl., Exh. C (Hernandez Depo, 19:10-24).)  Officer Hernandez was present when photographs were taken of Stephen's body and the gun. (Walker Decl., Exh. C (Hernandez Depo, 19:3-5).)

     The photographs also depict accurately the location of the gun.  Officer Cerda, who arrived

10
PLAINTIFFS' RESPONSE AND OPPOSITION TO DEFS' MOTIONS IN LIMINE (Case No. 1:09-cv-01766-BAM)

1  on scene before the shooting had ended, described Stephen's head as pointing in a southeast
2  direction and feet facing north (Walker Decl., Exh. D (Cerda Depo, 45:24-46:2).)  Officer Cerda
3  also testified to placing his foot over the gun in event he needed to kick it away should Stephen
4  have "presented another threat." (Walker Decl., Exh. D (Cerda Depo, 43:11-22).)  When shown a
5  photograph of Stephen's body (Exh. 4 to his deposition), Officer Cerda identified the parking stop
6  where the gun was located when he put his foot over it, and he testified that when he put his foot
7  over the gun, Stephen's head was near the pool of blood depicted near the left rear of the van in the
8  photo. (Walker Decl., Exh. D (Cerda Depo, 47:5-48:1).)  Officer Cerda clarified that it was only
9  after he had had his foot on the gun did he help roll Stephen's body over.  (Walker Decl., Exh. D
10 (Cerda Depo, 48:7-9).)

In addition, Officer Hernandez testified to watching Detective Villalvazo---and no one else---pick up the gun and put it back in the same location, pointing in the same direction. (Walker Decl., Exh. C (Hernandez Depo, 26:8-22).)  Officer Hernandez testified that the location of the handgun depicted in a photograph attached as Exhibit 5 to his deposition was in the same position as it had been when he first arrived on scene. (Walker Decl., Exh. C (Hernandez Depo, 39:21-40:6).)

Plaintiffs request that they be allowed to use the five selected police photographs taken at the crime scene of Stephen and the gun in relation to the vehicles where Officers Catton and Astacio were firing upon him.[2]

**17. DEFENDANTS' MOTION TO PRECLUDE ALL AUTOPSY PHOTOGRAPHS OF STEPHEN WILLIS**

Plaintiffs do not intend to use any autopsy photographs of Stephen for any improper purposes.  However, Plaintiffs should not be precluded from using such photographs in their examination of witnesses who rely on or reference the photographs in their opinions or testimony.

For example, Defendants' expert Vincent Di Maio has reviewed these photographs and has drawn conclusions from them, such as "The forearm had to be away from the body at the time the

---

[2] Plaintiffs will make the five photographs available for in camera review should the Court request it.

bullet perforated the arm. It could have been extended ahead of him pointing a gun." (Walker Decl., Exh. E (Di Maio Report, p. 4).) Di Maio stated in his deposition that his source of information for his opinions on Stephen's bullet wounds is "the autopsy report and the photographs." (Walker Decl., Exh. F (Di Maio Depo, 60:14-17, 64:12-18).) Plaintiffs must cross-examine Di Maio on the basis of his conclusions, and therefore Plaintiffs must be able to reference and show his source material. For this purpose, these photographs are highly probative and not unfairly prejudicial to Defendants.

If witnesses, including Defendants' experts, have utilized the photographs in forming their opinions and testimony, Plaintiffs should be allowed to utilize the photographs in examining those witnesses. To hold otherwise would be unfairly prejudicial to Plaintiffs. Defendants' motion should therefore be denied.

**18. MOTION TO PRECLUDE EVIDENCE, TESTIMONY OR ARGUMENT ALLEGING OFFICERS CATTON AND ASTACIO MURDERED STEPHEN**

Plaintiffs oppose this motion on the ground that it is unwarranted. Defendants are not being criminally tried here and any reference by Plaintiffs to their son being "murdered" is merely a reflection of their view of the shooting, not an impermissible legal conclusion. Nor is it an impermissible lay opinion. To the extent that it is an opinion at all, it is one rationally based on Plaintiff's perception: Stephen was intentionally shot to death at the hands of two others. How else are his parents supposed to interpret these facts? To the extent there is any mention of Stephen's "murder" at trial by Plaintiffs, it will be used to help understand their testimony. Further, no unfair prejudice to Defendants would result from such mention. The jury will already be fully aware that the officers are on trial for the unlawful intentional killing of Stephen. Under Penal Code section 187(a) that is the definition of murder. Defendants' motion should be denied.

**19. MOTION TO PRECLUDE EVIDENCE, TESTIMONY OR ARGUMENT THAT THE LAST SHOT FIRED BY OFFICER CATTON KILLED STEPHEN**

Defendants, by this motion, ask this Court to supplant the jury as the trier of fact. Defendants cite to testimony by Officer Catton, by the medical examiner employed by Defendants, and by Defendants' retained expert witness. Defendants then ask this Court to accept that testimony as true and correct and make a determination of fact that Officer' Catton's final shot did

12
PLAINTIFFS' RESPONSE AND OPPOSITION TO DEFS' MOTIONS IN LIMINE (Case No. 1:09-cv-01766-BAM)

1  not cause Stephen's death.  This of course is entirely inappropriate.  Plaintiffs are permitted to and
2  will present testimony at trial contrary to this contention.  Additionally, Defendants' witnesses may
3  change their position upon cross examination or the jury may decide that those witnesses are not
4  credible on this subject.  It is the jury's province to hear this testimony and make a determination on
5  the issue.

6   Defendants state that it is "undisputed that it is impossible to know which shot and/or who
7  fired the shot from which Stephen died."  Plaintiffs do not agree and intend to dispute this
8  contention.  However, even if it were undisputed, a motion in limine is not a motion for summary
9  judgment and it is improper if treated as such.  (*See Petty v. Metro. Gov't of Nashville*, 687 F.3d
10 710, 720-721 (6th Cir. 2012) ("The use of motions in limine to summarily dismiss a portion of a
11 claim has been condemned, and the trial courts are cautioned not to allow motions in limine to be
12 used as unwritten and unnoticed motions for summary judgment or motions to dismiss").)  For all
13 of these reasons, Defendants' motion should be denied.

**20.  MOTION TO PRECLUDE EVIDENCE, TESTIMONY OR ARGUMENT REGARDING STEPHEN'S PAIN AND SUFFERING AND EMOTIONAL DISTRESS; STEPHEN'S HEDONIC DAMAGES AND PLAINTIFFS' PAIN AND SUFFERING AND EMOTIONAL DISTRESS**

Plaintiffs oppose this motion as being overbroad and contrary to the holdings of the majority of District Courts in California.  While pain and suffering and hedonic damages are unavailable in a survival action under California law, that is not necessarily the case in federal civil rights actions in California.  Most districts in California have rejected the limitations placed on recovery by California Code of Civil Procedure section 377.34.  (*See, e.g., Garcia v. Whitehead*, 961 F.Supp. 230, 233 (C.D. Cal. 1997) ("California's survivorship statute is inconsistent with the purposes of section 1983 because it excludes damages for pain and suffering of the decedent"); *Cotton v. City of Eureka*, 860 F.Supp. 2d 999, 1014 (N.D. Cal. 2012) ("The Court finds that application of California's prohibition on the recovery of damages for pain and suffering in survival actions is inconsistent with § 1983); *Hirschfield v. San Diego Unified Port Dist.*, 2009 U.S. Dist. LEXIS 94232 (S.D. Cal. Oct. 8, 2009) ("the Court agrees with the courts that hold that it would undermine the policies of § 1983 to apply state laws that preclude the recovery of loss-of-life or pain and

suffering damages when the death of the victim resulted from the alleged unconstitutional violations"); *T.D.W. v. Riverside County*, 2009 U.S. Dist. LEXIS 69189 (C.D. Cal. July 27, 2009).)

While the Eastern District has tended to take the opposite position, relying on the case of *Venerable v. City of Sacramento*, 185 F.Supp.2d 1128, 1132 (E.D.Cal.2002), it is not compelled to do so by any controlling authority as neither the Ninth Circuit nor the Supreme Court have ruled on the topic. (*Garcia v. Whitehead*, 961 F.Supp. at 232 ("There is no controlling authority regarding whether the remedies available under California's survivorship statute are too limited to be consistent with the purposes of section 1983").)

Further, more than one decision from the Eastern District has voiced dissent from this position. For example, Judge Karlton, in a decision in *Duenez v. City of Manteca* wrote, "The court finds the reasoning provided by the Southern, Central, and Northern Districts of California, as well as other circuit courts, more persuasive than that of *Venerable* and its progeny in the Eastern District. While the opinion in *Venerable* has some persuasive authority, it appears to this court that *Venerable* denigrates the purposes of Section 1983." (2011 U.S. Dist. LEXIS 124524, at *29 (E.D. Cal. Oct. 26, 2011); *see also Morales v. City of Delano*, 852 F.Supp.2d 1253, 1279 (E.D. Cal. 2012) (acknowledging dissent within the district on the subject).)

While Plaintiffs acknowledge there is a district general practice of denying pain and suffering and hedonic damages in Section 1983 actions, Plaintiffs ask this Court to exercise its judgment in permitting the recovery of such damages. Limiting the recoverable damages pursuant to California Code of Civil Procedure Section 377.34 undermines the policies of Section 1983:

> To deny recovery for pain and suffering would strike at the very heart of a § 1983 action. . . . Had the victim survived, he could have recovered, among other things, loss of earnings and pain and suffering. The inescapable conclusion is that there may be substantial deterrent effect to conduct that results in the injury of an individual but virtually no deterrent to conduct that kills its victim.

(*Guyton v. Phillips*, 532 F.Supp. 1154, 1166 (N.D. Cal. 1981).) A district practice is not controlling law and should not be adhered to when doing so would jeopardize Plaintiffs' rights and work to undermine the very purpose of Section 1983. Plaintiffs therefore request that Defendants' motion in limine be denied and Plaintiffs be allowed to seek damages for their son's pain and suffering and loss of enjoyment of life.

**21. MOTION TO PRECLUDE EVIDENCE, TESTIMONY OR ARGUMENT REGARDING PLAINTIFFS' POST-INCIDENT INTERACTIONS WITH THE FRESNO POLICE DEPARTMENT, CITY OF FRESNO AND/OR ANY EMPLOYEE OR DEPARTMENT OF EITHER RELATING TO ANY ALLEGED MISTREATMENT OF PLAINTIFFS**

Plaintiffs do not oppose this motion.

**22. MOTION TO PRECLUDE ALL MEDIA COVERAGE INCLUDING BUT NOT LIMITED TO VIDEO, AUDIO AND TYPOGRAPHICAL ACCOUNTS OF THE SUBJECT INCIDENT**

Defendants motion is incredibly overbroad and impermissibly vague.  Defendants seek to have this Court preclude any and all media coverage regarding the incident while providing only a few general examples of what that media coverage includes.  It is conceivable that some media coverage, for example witness or party interviews or statements, could be probative and admissible for purposes of impeachment or as an opposing party's statement.  (*See* Fed. R. Evid. 613, 801.)  In that circumstance, media coverage would be relevant, authenticated and admissible.  While some media coverage may be inadmissible at trial, a blanket order precluding all such coverage would be impermissibly broad.  The admissibility of such media coverage should be determined on a case-by-case basis.

**23. MOTION TO PRECLUDE EVIDENCE PERTAINING TO FUTURE ECONOMIC LOSSES**

Plaintiffs do not oppose this motion.

**24. MOTION FOR AN ORDER BIFURCATING LIABILITY AND PUNITIVE DAMAGES**

This motion is moot pursuant to the Court's Final Pretrial Order.

**25. MOTION TO PRECLUDE PLAINTIFFS' COUNSEL FROM MAKING IMPROPER FACT BASED QUESTIONS**

Plaintiffs oppose this motion on the ground that it is incredibly vague.  There has been no suggestion that Plaintiffs' counsel will ask "improper" questions at trial, making this motion speculative and purely prophylactic.  Why impose an order on the parties when there is no indication it will be needed?

More importantly, it is unclear what kind of order Defendants seek by this motion.  An order precluding "improper" fact based questioning would not save any time at trial.  The term

1 "improper" is amorphous and whether a question is "improper" will be based on the circumstances
2 surrounding the question on a case by case basis. A party deeming a question "improper" at trial
3 will object to the question, and the Court will determine if the question is actually "improper."

4 Defendants do make a specific request that some hypotheticals posed to the Officers Catton
5 and Astacio be prohibited, but they cite no applicable law supporting this proposition. They instead
6 cite to case law standing for the accepted proposition that the reasonableness of the officers' actions
7 must be judged on an objective basis. This general statement of law does not support prohibiting
8 Plaintiffs' counsel from asking the officers hypothetical questions. Hypothetical questions the
9 defense deems irrelevant or improper should be objected to and assessed by this Court when they
10 are posed. This motion is unsupported, unnecessary and should be denied.

**26. MOTION TO PRECLUDE PLAINTIFFS AND THEIR COUNSEL FROM PRESENTING TESTIMONY AND/OR EVIDENCE REGARDING CHIEF DYER'S DISCOVERY RESPONSES**

Plaintiffs oppose this motion as it is overly broad and without legal support. Chief Dyer was a party to this action and his responses to discovery may prove relevant to issues to be tried. Their relevance is not solely limited to the claims that were made against him. Chief Dyer will also be a witness and his discovery responses may be used for impeachment and other purposes during his testimony. Defendants' blanket request that all of Chief Dyer's discovery responses be precluded is simply unwarranted.

**27. MOTION TO PRECLUDE PLAINTIFFS, THEIR COUNSEL AND THROUGH THEM ANY WITNESSES FROM PRESENTING TESTIMONY AND/OR EVIDENCE REGARDING THE EXPERT REPORT AND SUPPLEMENTAL EXPERT REPORT OF PLAINTIFFS' FORMERLY RETAINED EXPERT JACO SWANEPOEL**

Plaintiffs do not oppose this motion so long as any Order on the motion applies to all parties.

DATED: November 5, 2013            WALKER, HAMILTON & KOENIG LLP

By: _/s/ Walter H. Walker, III_
     Walter H. Walker, III
     Attorneys for Plaintiffs