UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIS WILLIS, MARY WILLIS, INDIVIDUALLY AND SUCCESSORS IN INTEREST TO STEPHEN WILLIS,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF FRESNO, OFFICER GREG CATTON, and OFFICER DANIEL ASTACIO,<br><br>Defendants. | CASE NO. 1:09-CV-01766-BAM<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW UNDER RULE 50(a)** (Doc. 224); **AND DENYING OFFICER CATTON QUALIFIED IMMUNITY** |

## I.   INTRODUCTION

On March 28, 2009, Stephen Willis was fatally shot by Defendants Greg Catton and Daniel Astacio, who were Officers with the Fresno Police Department. Stephen Willis's parents, Chris and Mary Willis ("Plaintiffs"), allege that Stephen Willis's Fourth Amendment rights were violated as a result of the shooting. Plaintiffs further allege that Officer Catton and Officer Astacio were negligent in causing the death of Stephen Willis.

Trial commenced on December 4, 2013. At the conclusion of plaintiff's case-in-chief, Defendants made a Motion for Judgment as a Matter of Law pursuant to Fed. R. Civ. P. 50(a)(1). The Court took the motion under submission and allowed the trial to continue. (Doc. 224.) Plaintiffs filed their opposition on December 11, 2013. (Doc. 226.) The Court did not rule on the Rule 50(a) motion prior to the matter being submitted to the jury.

After a ten-day jury trial, the jury returned a verdict in favor of defendant Officer Daniel

1

Astacio and against Plaintiffs. The jury also returned a verdict in favor of plaintiffs and against Officer Catton. The jury found that Officer Catton used excessive force in violation of Stephen Willis's Fourth Amendment rights, and further, found that Officer Catton was negligent in causing the death of Stephen Willis. The jury also found Stephen Willis comparatively negligent in contributing to his death, and was eighty percent responsible for his injuries.

After the jury returned their verdict, the Court requested additional briefing on whether qualified immunity is appropriate for Officer Catton. (Doc. 235.)[1] Defendants filed their supplemental brief in support of qualified immunity on January 9, 2014. (Doc. 244.) Plaintiffs filed their opposition on January 16, 2014. (Doc. 248.)

Currently pending before the Court is the Rule 50(a) motion which was taken under submission during trial. Also pending is the legal issue of whether Officer Catton is entitled to qualified immunity. Having carefully considered the parties' briefs and the entire record in this case, Defendants' Rule 50(a) Motion for Judgment as a Matter of Law is DENIED. For the reasons that follow, the Court finds that Officer Catton is not entitled to qualified immunity. The Court discusses the Rule 50(a) motion and qualified immunity as follows.

## II.   DISCUSSION

### A. Rule 50(a) Motion

#### 1.   Legal Standard for a Rule 50(a) motion

Rule 50(a) permits a party to move for judgment as a matter of law after the opposing party has been fully heard and prior to the submission of the case to the jury. Fed. R. Civ. P. 50(a)(1). Rule 50(a) allows the trial court to remove cases or issues from the jury's consideration "when the facts are sufficiently clear that the law requires a particular result." *Weisgram v. Marley Co.*, 528 U.S. 440, 448 (2000) (quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2521, p. 240 (2d ed.1995)).

---

[1] ECF document 244 is entitled "Defendants' Supplemental Briefing Regarding Qualified Immunity For Officer Greg Catton and Renewed Motion For Judgment As A Matter of Law Pursuant to Rule 50(b)." Defendants subsequently filed another Motion under Rule 50(b), as well as a Motion for Relief From the Final Judgment of the Court pursuant to Rule 60(b)(6) on January 14, 2014. (Doc. 245.) Plaintiffs filed objections to this latter filing, arguing it was procedurally improper. (Doc. 246.) At this time, the Court does not address the issues raised Rule 50(b) or Rule 60(b)(6). The Court disposes of the Rule 50(a) motion taken under submission and addresses the issue of qualified immunity.

In deciding a motion brought pursuant to Rule 50(a), a court reviews all of the evidence and draws all reasonable inferences in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prods.*, Inc., 530 U.S. 133, 150 (2000); *City Solutions v. Clear Channel Communs., Inc.*, 365 F.3d 835, 839 (9th Cir. 2004). A court is not permitted to make credibility determinations or weigh the evidence. *Reeves,* 530 U.S. at 150; *Krechman v. County of Riverside*, 723 F.3d 1104, 1109-1110 (9th Cir. 2013). A district court can grant a Rule 50(a) motion for judgment as a matter of law only if there is no legally sufficient basis for a reasonable jury to find for that party on that issue." *Krechman,* 723 F.3d at 1109-1110 (9th Cir. 2013); *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002) (The salient inquiry is whether the evidence "permits only one reasonable conclusion. . . ."); *see also*, *Hall v. Consol. Freightways Corp.*, 337 F.3d 669, 672 (6th Cir. 2003) ("A dismissal pursuant to Rule 50(a) is improper where the nonmovant presented sufficient evidence to raise a material issue of fact for the jury.")

**2.   Denial of the Rule 50(a) Motion**

During the trial, the Court took the Rule 50(a) motion under submission. After the jury returned its verdict, defendants renewed the Rule 50(a) motion as to Officer Catton.

In light of the jury's verdict, the Court cannot conclude that "a reasonable jury would not have a legally sufficient evidentiary bases to find for" plaintiffs and against Officer Catton. See Fed.R.Civ.P. 50(a)(1). The Court denies the motion pursuant to Rule 50(a). The Court will consider the merits of the arguments of defendants' Rule 50(b) motion after the judgment is entered.

**B.   Legal Standard for Qualified Immunity in Excessive Force Cases**

The Court now turns to the issue of whether Officer Catton is entitled to qualified immunity.

"[T]he Supreme Court set forth a two-part test for qualified immunity in excessive force cases. First, we examine whether a Fourth Amendment violation occurred; second, we look to see whether the officers violated clearly established law." *Cameron v. Craig,* 713 F.3d 1012 (9th Cir. 2013) (quoting, *Santos v. Gates*, 287 F.3d 846, 855 n. 12 (9th Cir. 2002)) (accord *Saucier v.*

1 *Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).

2 "[T]he first step in the analysis is an inquiry into the objective reasonableness of the officer's belief in the necessity of his actions . . . there is no Fourth Amendment violation if the officer can satisfy this standard." *Wilkins v. City of Oakland,* 350 F.3d 949, 954 (9th Cir. 2003) The second step of the analysis inquires whether the officer was reasonable in his belief that his conduct did not violate the Constitution. "This step, in contrast to the first, is an inquiry into the reasonableness of the officer's belief in the legality of his actions." *Id.* at 955. "Even if his actions did violate the Fourth Amendment, a reasonable but mistaken belief that his conduct was lawful would result in the grant of qualified immunity." *Id.* The Court has discretion to address either prong of the qualified immunity analysis first. *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009).

    C.    **The Fourth Amendment Violation**

        1.    **Legal Standard**

The Court examines allegations of excessive force under the Fourth Amendment's prohibition on unreasonable seizures. *Bryan v. MacPherson,* 630 F.3d 805, 823 (9th Cir. 2010). The Court inquires "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Id*. (quoting *Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). The Court "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* (internal quotation marks omitted); s*ee also Deorle v. Rutherford*, 272 F.3d 1272, 1280 (9th Cir. 2001). "Stated another way, [the Court] must 'balance the amount of force applied against the need for that force.'" *Bryan*, 630 F.3d at 823–24 (quoting *Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003)). "This balance must be 'judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Boyd v. Benton Cnty.,* 374 F.3d 773, 779 (9th Cir. 2004) (quoting *Graham,* 490 U.S. at 396, 109 S.Ct. 1865).

        2.    **Relevant Facts Underlying the Fourth Amendment Violation**

The parties dispute which facts are relevant to the jury's Fourth Amendment verdict.

1  Defendants argue the Fourth Amendment violation found by the jury was limited to the final
2  shot(s) fired by Officer Catton as Stephen Willis lay on the ground. In support of this position,
3  Defendants suggest the jury's verdict necessarily equates to the following findings: (1) Officer
4  Catton's and Officer Astacio's use of force was reasonable prior to the last shot(s) fired by
5  Officer Catton; and (2) Fourth Amendment liability against Officer Catton was predicated on
6  the final shot(s) only.[2]  Proceeding under this interpretation of the jury's verdict, Defendants
7  argue there was no Fourth Amendment violation because the uncontroverted evidence
8  demonstrated that Stephen Willis was reaching for his gun when Officer Catton fired the final
9  shot(s).

10  Plaintiffs respond that the jury's Fourth Amendment verdict was not necessarily limited
11  to Officer Catton's final shot(s). Plaintiffs argue that it would be improper to speculate on the
12  factual basis for the jury's verdict, as the verdict could have been predicated on the totality of
13  Officer Catton's conduct or a combination of actions alleged to have violated Stephen Willis's
14  Fourth Amendment rights. In the alternative, Plaintiffs argue that even if the jury's verdict was
15  limited to Officer Catton's final shot(s), the evidence presented at trial supports a finding that
16  Officer Catton's final shot(s) violated Stephen Willis's Fourth Amendment rights.

17  The Court finds that defendants correctly infer that Fourth Amendment liability was
18  predicated on Officer Catton's final shot(s). A Court is permitted to "dr[aw] inferences from the
19  verdicts to determine the issues that the presumptively rational jurors must have determined,
20  and then used those implicit findings of fact as the basis for judgment as to certain issues."
21  *Westinghouse Elec. Corp., v. General Circuit Breaker & Elec. Supply. Inc.,* 106 F. 3d 894, 901
22  (9th Cir. 1997).  Where "it is possible to examine the pattern of jury verdicts and logically
23  determine what facts a rational juror must have found in order to reach those verdicts," *Id.* at
24  902, the Court "must assume the jury found certain facts . . . ." *Id.* at 901.

25  Based upon the verdict and the evidence, this Court concludes the jury necessarily made
26  three findings of fact: (1) Stephen Willis posed a dangerous threat justifying use of deadly force

---

[2] Defendants also argue the jury's verdict demonstrates the jury necessarily made other factual findings, including that Stephen Willis "pulled his gun out of his holster," "pointed his gun at the officers," and "fired the gun towards one or both officers."  However, the Court need not address these arguments, as the jury's specific factual findings prior to Officer Catton's final shot(s) are irrelevant to the qualified immunity analysis.

when Officer Catton and Officer Astacio initially encountered and fired upon Stephen Willis; (2) Stephen Willis continued to pose a dangerous threat justifying use of deadly force when he retreated behind the van until Officer Catton left his firing position to join Officer Astacio; and (3) Stephen Willis did not pose a dangerous threat justifying use of deadly force at the time Officer Catton fired the final shot(s). These findings of fact were necessarily determined by the jury and essential to their judgment, *Westinghouse Elec. Corp.,* 106 F. 3d at 902-03, and the Court "can infer that the jury made this finding by viewing the jury's verdict in light of the jury instructions." *A.D. v. California Highway Patrol,* 712 F.3d 446 (9th Cir. 2013); *see also Jennings v. Jones*, 499 F.3d 2, 7 (1st Cir.2007) (holding that where defendants press qualified immunity after a general jury verdict, the court is required to view facts relevant to qualified immunity determination "in the light most favorable to the verdict").

The Court concludes the jury made these findings based on the evidence. Prior to Officer Catton's final shot(s), the actions and conduct of Officer Astacio and Officer Catton were virtually indistinguishable for Fourth Amendment purposes.[3] Plaintiffs offered circumstantial evidence that both officers failed to identify themselves. However, identification by either officer would be sufficient to alert Stephen Willis to their presence, whereas a complete failure to identify themselves would apply to both officers equally. Whether a warning was provided or not, both officers fired upon Stephen Willis moments after Stephen Willis turned around with a holstered revolver in his left hand. Indeed, the evidence presented was that Officer Astacio fired first. Both officers "sprayed multiple shots" at Stephen Willis such that both officers were required to reload at least once. Both officers assumed firing positions where neither knew where the other officer was, and both officers were firing shots that generally were in the other officer's direction.

If the jury had determined Officer Catton's conduct prior to the final shot(s) violated Stephen Willis's Fourth Amendment rights, there is no logical basis for the jury's countenance

---

[3] The one exception is evidence concerning Officer Catton's failure to follow Officer Astacio's order to "follow him" once the initial shots were fired. Plaintiffs have not offered any legal relevance, and the Court can discern none, of this circumstance's relevance to the Fourth Amendment analysis. Whether Officer Catton followed Officer Astacio to a given firing position has no bearing on whether Officer Catton used excessive force in seizing Stephen Willis.

of Officer Astacio's conduct. The only time the conduct of Officer Catton and Officer Astacio was qualitatively different was when Officer Catton moved to Officer Astacio's firing position, Officer Astacio holstered his weapon to call for back up, and Officer Catton subsequently fired one or two more shots at Stephen Willis.

Lastly, the jury's finding on Stephen Willis's contributory negligence demonstrates that Officer Catton's liability for the negligence and Fourth Amendment claims was limited to the last shot(s). Stephen Willis was shot fourteen times, and the jury concluded that his contributory negligence was responsible for eighty percent of his injuries. As explained above, the jury found that Stephen Willis presented an immediate threat of danger at the initial encounter with Defendants as well as during the primary volley of gunfire. In other words, the jury necessarily determined that, although Officer Catton and Officer Astacio shot Stephen Willis twelve to thirteen times prior to the final shot(s), these injuries were not attributable to the unlawful conduct of Officer Catton and Officer Astacio. Instead, these injuries were attributable to the negligence of Stephen Willis in creating an imminent risk of danger for Officers Catton and Astacio. The jury's finding in this regard strongly suggests that the only injuries attributable to Officer Catton's unlawful conduct was the final one or two shots.

### 3. The Evidence Produced at Trial Supports the Jury's Fourth Amendment Finding

Defendants argue the evidence produced at trial – Officer Catton's "uncontroverted" testimony – demonstrates deadly force was necessary at the time Officer Catton fired the final shot(s) because Stephen Willis was reaching for his gun. If the jury accepted Officer Catton's testimony on this point, there is no dispute that Officer Catton's final shot(s) would have been reasonable. Indeed, all the evidence presented at trial, including testimony presented by Plaintiff's own expert, dictated that if Stephen Willis had been reaching for his gun, Officer Catton was justified in using deadly force. However, because the jury found Officer Catton's final shot(s) constituted excessive force, the jury necessarily found that Stephen Willis was not reaching for his gun when Officer Catton fired the last shot(s).

Defendants argue there is no evidence contradicting Officer Catton's testimony; thus,

there was no basis for the jury to conclude that Officer Catton used excessive force when he fired the last shot(s).

Defendants ignore significant testimonial evidence to the contrary. The other officer involved in the shooting, Officer Astacio, testified that he believed the threat had "diminished" and that "the immediate threat [was] not there because he's [sic] on the ground." Officer Cerda testified that he saw Stephen Willis's body prior to the final shots, and Stephen Willis was on the ground and twitching, which implies Stephen Willis was not reaching for the gun. A reasonable juror may have received these statements to support a conclusion that Stephen Willis was not moving when Officer Catton fired the final shot(s).

Significant other circumstantial evidence was presented that would permit the jury to disbelieve Officer Catton's testimony that Stephen Willis was reaching for his gun prior to the last shot(s). By the time Office Catton fired the final shot(s), Stephen Willis had already been shot twelve-to-thirteen times. These shots were dispersed throughout his body, including all four limbs, his neck and torso. Stephen Willis's condition would permit a reasonable juror to conclude that Stephen Willis lacked both the physical capacity and situational awareness to have been reaching for his gun. A reasonable juror could have found this circumstance contradicted Officer Catton's testimony.

Officer Jacobo testified that, after the final shot(s), he heard Officer Catton "shout" "I can see the gun. I can see the gun." A reasonable juror could have received this testimony to indicate that Officer Catton did not, in fact, see Stephen Willis reaching for the gun before the final shot(s). Officer Jacobo also testified that, after the final shot(s), he heard Officer Catton exclaim in a "raised," "excited" voice, that he put a bullet hole in Stephen's back. Officer Reyes testified that Officer Catton was "smirking" after the shooting. A reasonable juror could have received this testimony to indicate that Officer Catton's use of force in those final moments was not the result of any threat presented by Stephen Willis.

Defendants attempt to discount this evidence by recasting it in a different light or offering other evidence that tended to support Officer Catton's testimony. These efforts miss the point. The Court is not the fact-finder, nor is the Court in a position to dictate whose

1   evidence is more persuasive. The jury heard conflicting evidence on the disputed factual
2   circumstances surrounding Officer Catton's final shot(s), and the jury found that Stephen Willis
3   did not present an immediate threat of danger at that moment in time. Accordingly, this Court
4   finds that, based upon the jury's verdict, that Officer Catton's actions were not objectively
5   reasonable when Officer Catton shot Stephen Willis in the back as he lay on the ground.

6           **D.**       **The Fourth Amendment Right Was Clearly Established**

7   For the second step in the qualified immunity analysis—whether the constitutional right
8   was clearly established at the time of the conduct—we ask whether its contours were
9   "'sufficiently clear' that every 'reasonable official would have understood that what he is doing
10  violates that right.'" *Ashcroft v. al-Kidd*, ––– U.S. ––––, 131 S.Ct. 2074, 2083, 179 L.Ed.2d
11  1149 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d
12  523 (1987)). While "[w]e do not require a case directly on point . . . existing precedent must
13  have placed the statutory or constitutional question beyond debate." *Id.*

14  The Fourth Amendment right at issue here – the right to be free from the use of deadly
15  force absent an immediate threat of harm to officers or others – is clearly established. *See,*
16  *Wilkinson v. Torres*, 610 F.3d 546, 550 (9th Cir. 2010) ("Case law has clearly established that
17  an officer may not use deadly force to apprehend a suspect where the suspect poses no
18  immediate threat to the officer or others") (citing, *Tennessee v. Garner,* 471 U.S. 1, 11, 105
19  S.Ct. 1694, 85 L.Ed.2d 1 (1985)).

20  Defendants' analysis of this prong focuses on a factual account that is not supported by
21  the jury's verdict. Defendants argue that even if a Fourth Amendment Violation took place, a
22  reasonable officer would have believed that if Stephen Willis was reaching for his gun, deadly
23  force was appropriate. Defendants' framing of this issue is misguided. The jury's verdict does
24  not permit a finding that Stephen Willis was reaching for his revolver. Indeed, the jury's verdict
25  *necessarily* means the jury did not believe Stephen Willis was reaching for his revolver when
26  Officer Catton fired the final shot(s).

27  Properly framed within the factual findings implicit in the jury's verdict, the question to
28  be answered for the second prong of the qualified immunity analysis is this: would a reasonable

police officer have known it was a constitutional violation to use deadly force on an individual who poses no immediate threat to the officer or others?  It is axiomatic that the answer to this question is "yes."  *See, Wilkinson*, 610 F.3d at 550.

Accordingly, Officer Catton is not entitled to qualified immunity.[4]

### III. CONCLUSION

Based on the foregoing, the Court ORDERS as follows:

1. The Rule 50(a) motion (Doc. 224) is DENIED;
2. Defendant Officer Catton is not entitled to qualified immunity; and
3. Judgment consistent with the jury verdict may be entered in this matter.

IT IS SO ORDERED.

Dated:   **January 31, 2014**          /s/ Barbara A. McAuliffe
                                      UNITED STATES MAGISTRATE JUDGE

---

[4] Defendants offer a final argument that Officer Catton is entitled to qualified immunity so long as he was not "plainly incompetent."  Defendants have spun this undefined standard from the whole cloth.  The language cited by Defendants is from a single opinion that was attempting to explain the practical effect of the qualified immunity doctrine, not to create a new legal standard altogether.  The Court will not address this argument any further.