UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIS WILLIS, MARY WILLIS, INDIVIDUALLY AND SUCCESSORS IN INTEREST TO STEPHEN WILLIS,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>CITY OF FRESNO, OFFICER GREG CATTON, and OFFICER DANIEL ASTACIO,<br><br>                    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. 1:09-CV-01766-BAM<br><br>**ORDER ON PLAINTIFFS' MOTION FOR ATTORNEY FEES AND EXPENSES;**<br><br>**ORDER ON DEFENDANTS' BILL OF COSTS, AND PLAINTIFFS' MOTION FOR REVIEW OF DEFENDANTS' BILL OF COSTS** |

## I.      INTRODUCTION

Currently before the Court is Plaintiffs' Motion for Attorneys' Fees and Expenses. (Doc. 299.)  Also before the Court is Defendants' Bill of Costs, for which Plaintiffs have sought judicial review.  (Doc. 256, 257.)  The matters were briefed extensively.[1] (Doc. 256, 257, 258, 267, 299, 302-311, 313, 314.) The Court deemed the matters suitable for decision without oral argument pursuant to Local Rule 230(g) and took the matters under submission. (Doc. 271, 312.)

Having carefully considered the parties' submissions, as well as the entire record in this case, the Court (1) GRANTS IN PART Plaintiffs' Motion for Attorney's Fees and Costs and awards Plaintiffs **$717,642.74** in attorney's fees and **$106,852.20**  in additional costs, and (2) ORDERS Defendants to bear their own costs.

---

[1] Defendants have sought relief from their opposition deadline to file an amended declaration that addresses categories of Plaintiffs' attorneys' fees.  (Doc. 308.)  That request is GRANTED.

## II.      RELEVANT BACKGROUND

On March 28, 2009, Stephen Willis was fatally shot by Defendants Greg Catton and Daniel Astacio, who are Officers with the Fresno Police Department. Stephen Willis's parents, Chris and Mary Willis ("Plaintiffs"), allege that Stephen Willis's Fourth Amendment rights were violated as a result of the shooting. Plaintiffs further allege that Officer Catton and Officer Astacio were negligent in causing the death of Stephen Willis.

Following over four years of extensive litigation and a ten-day jury trial, the jury returned a verdict finding that Officer Catton used excessive force in violation of Stephen's Fourth Amendment rights, and Officer Catton was negligent in causing Stephen's death. The jury found Officer Astacio was not liable on Plaintiffs' Fourth Amendment and negligence claims.  On Plaintiffs' Fourth Amendment claim, the jury awarded $1 in nominal damages. On Plaintiffs' wrongful death claim, the jury awarded funeral and burial expenses in the amount of $10,224.00, and further awarded Plaintiffs $1,500,000.00 in compensatory damages.  The jury also made a finding of comparative negligence, and determined that Stephen Willis was eighty percent responsible for his injuries.  On January 31, 2014, the Court entered judgment in favor of the Plaintiffs, and awarded Plaintiffs $1 on Plaintiffs' Fourth Amendment claim, and $302,044.80 (20% of $1,510.224.00) on Plaintiffs' wrongful death claim. (Doc. 251.)

As relevant to Plaintiffs' Motion, the jury instructions for the Fourth Amendment claims and the wrongful death claim were identical. *Compare*, Jury Instruction No. 19, 20, and 21 *with* Jury Instruction No. 24 and 25, Doc. 237. Thus, the jury decided these claims under identical legal standards.[2]

---

[2]      During the pretrial process, the parties and the Court dedicated considerable time determining the proper way to present Plaintiffs' claims to the jury.  Ultimately, the parties agreed that two of Plaintiffs' claims (Plaintiffs' wrongful death claim and Fourth Amendment claim) should be presented to the jury under identical legal standards. *Compare*, Jury Instruction No. 19, 20, and 21 *with* Jury Instruction No. 24 and 25, Doc. 237.

The only difference between these claims concerned the damages that could be awarded. During the pretrial process, it was disputed whether Plaintiffs could recover damages for Stephen's pain and suffering under the Fourth Amendment claim.  Following the uniform decisions of courts in the Eastern District of California, the Court precluded any evidence of Stephen's pain and suffering. (Order on Def.s' Mot. In Limine, Doc. 197, 13: 1-7.) The parties and the Court agreed that the only damages Plaintiffs could recover on their Fourth Amendment claim were nominal, and if applicable, punitive damages. Recently, however, the Ninth Circuit decided *Chaudhry v. City of Los Angeles,* 751 F.3d 1096 (9th Cir. 2014), which held pain and suffering damages were recoverable. *Id.* at 1105. Nonetheless, *Chaudhry* is inapplicable to Plaintiff's Motion. Plaintiff does not

Following trial, Defendants submitted a Bill of Costs seeking $76,904.41 in costs.[3] (Doc. 256.) Following resolution of the parties' post-trial motions, Plaintiffs filed a Motion for Attorneys' Fees, seeking $2,590,173.75 in fees (loadstar fees of $1,726,782.50 with a 1.5 multiplier), and costs in the amount of $197,490.57. (Doc. 299, Attach. 1.)

The parties present numerous arguments in opposition to their counterpart's request for fees and costs.[4]  The majority of these arguments concern specific fees and costs, which the Court addresses to the extent it is necessary below.  Defendants' primary argument, however, is that because Plaintiffs received only nominal damages on their Fourth Amendment claim, they are not entitled to an award of attorneys' fees under 42 U.S.C. § 1988.[5]

## III.    DISCUSSION

## A.    Whether Plaintiff is Entitled to An Award of Attorneys' Fees

In an action brought pursuant to 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs...." 42 U.S.C. § 1988(b). A Section 1983 plaintiff who receives a nominal damage award is a prevailing party for purposes of Section 1988. *See Farrar v. Hobby,* 506 U.S. 103, 112, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). That does not mean, however, that such a plaintiff is necessarily entitled to an award of fees. *See Farrar,* 506 U.S. at 114, 113 S.Ct. 566 (explaining that although the "technical nature of a nominal damages award ... does not affect the prevailing party inquiry, it does bear on the propriety of fees awarded under § 1988").

---

request the Court to alter its previous decision on the recoverability of pain and suffering damages or the jury's verdict based on *Chaudhry*.

[3] In their Reply Brief, Defendants acknowledge some of their requested costs were not permissible, and reduced their request to $43,339.08. Doc. 267, 9: 24-27.

[4] The Court has thoroughly considered each argument raised by the parties.  Although every argument is not addressed in this Order, each argument was considered.  This Order discusses only those arguments necessary for the Court to reach its decision.

[5] Defendants also argue that Plaintiffs' Counsel is seeking "an improper double recovery" because Plaintiffs' Counsel will presumably receive a contingency percentage of the jury's award on Plaintiffs' wrongful death claim. This argument is meritless. *See, Van Gerwen v. Guarantee Mut. Life Co.,* 214 F.3d 1041, 1048 (9th Cir. 2000) ("A district court may not rely on a contingency agreement to increase or decrease what it determines to be a reasonable attorney's fee."); *Quesada v. Thomason,* 850 F.2d 537, 543 (9th Cir. 1988) ("We therefore reject the claim that a contingent-fee agreement can justify lowering an otherwise reasonable lodestar fee.").

Defendants argue that under *Farrar* and Ninth Circuit authority interpreting *Farrar*[6], an award of nominal damages under Section 1983 is insufficient to justify an award of attorneys' fees.  Plaintiffs respond that this case is distinguishable from *Farrar* because Plaintiffs achieved significant success on their wrongful death claim.  Plaintiffs also argue that even if Plaintiffs' Motion for Attorneys' Fees were analyzed under *Farrar*, an award of fees would be appropriate.

In *Farrar*, the plaintiffs filed a lawsuit for $17 million dollars against six defendants. After ten years of litigation, they obtained a nominal damage judgment of one dollar against one defendant. The district court nonetheless awarded the plaintiffs $280,000 in attorney's fees. The Supreme Court explained, " 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.' " *Farrar*, 506 U.S. at 114, 113 S.Ct. 566 (quoting *Hensley,* 461 U.S. at 436, 103 S.Ct. 1933). "In a civil rights suit for damages ... the awarding of nominal damages [ ] highlights the plaintiff's failure to prove actual, compensable injury." *Id.* at 115, 113 S.Ct. 566. In light of the nominal damages award, the Supreme Court explained that the *Farrar* litigation "accomplished little beyond giving petitioners 'the moral satisfaction of knowing that a federal court concluded that [their] rights had been violated' in some unspecified way." *Id.* at 114, 113 S.Ct. 566 (quoting *Hewitt v. Helms,* 482 U.S. 755, 762, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987)). *Farrar* concluded that "[w]hen a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all." *Id.* at 115, 107 S.Ct. 2672. (internal citation omitted.) "*Farrar* therefore teaches that an award of nominal damages is not enough" to justify an award of attorney's fees. *Wilcox v. City of Reno,* 42 F.3d 550, 555 (9th Cir. 1994); *See also, Cummings v. Connell*, 402 F.3d 936, 947 (9th Cir. 2005) ("The guiding consideration for the district court is the difference between the damages sought and the amount recovered.")

In a concurring opinion, Justice O'Connor recognized two factors, in addition to the difference between the damages sought and the amount recovered, that would support an award of attorneys' fees when only nominal damages are awarded.  These factors include "the

---

[6] *See, e.g., Benton v. Oregon Student Assistance Com'n,* 421 F.3d 901 (9th Cir. 2005); *Wilcox v. City of Reno,* 42 F.3d 550 (9th Cir. 1994); *Mahach-Watkins v. Depee,* 593 F.3d 1054 (9th Cir. 2010).

significance of the legal issue on which the plaintiff claims to have prevailed" and whether the success "accomplished some public goal...." *Farrar*, 506 U.S. at 121, 113 S.Ct. 566 (O'Connor, J., concurring).   The Ninth Circuit has adopted Justice O'Connor's factors for resolving the degree of success inquiry under Section 1988. *See Cummings,* 402 F.3d at 947. The parties' briefing debates whether the O'Connor factors articulated in *Farrar* justify an award of attorneys' fees in this case.

A straight analysis of these factors, however, is not probative. *Farrar* is distinguishable because, here, Plaintiffs received a substantial award on the litigation as a whole, whereas the plaintiffs in *Farrar* received only a nominal award of $1 in total.   *Farrar,* 506 U.S. at 107, 113 S.Ct. 566. Indeed, every case cited by Defendants applying the O'Connor factors concern circumstances where the total award was comprised of nominal damages. *See, e.g., Benton v. Oregon Student Assistance Com'n,* 421 F.3d 901 (9th Cir. 2005); *Wilcox v. City of Reno,* 42 F.3d 550 (9th Cir. 1994); *Mahach-Watkins v. Depee,* 593 F.3d 1054 (9th Cir. 2010). The substantial award on Plaintiffs' pendent state claim, which was based on the same standard as the Section 1983 claim, distinguishes Plaintiffs from the plaintiffs in *Farrar,* as well as the plaintiffs in every cited Ninth Circuit case applying *Farrar.*

This Court has not located a single case applying a classic *Farrar* analysis to a case where nominal damages on a qualifying federal claim are coupled with substantial damages on a pendent state claim.   The Ninth Circuit has not addressed the relevance of *Farrar* in situations such as the case at bar, and there is very little guidance from courts elsewhere. *See, Jama v. Esmor Correctional Services, Inc.,* 577 F.3d 169, 177 (3rd Cir. 2009) (noting that this issue, "supris[ingly,] … has been sparsely litigated elsewhere.") Nonetheless, because of the important distinctions between this case and *Farrar*, the following discussion considers whether Plaintiffs' success on their state law claim may independently inform the degree of their success under Section 1988.

### 1.    Plaintiffs' Successful Wrongful Death Claim Informs the Degree of Plaintiffs' Success Under Section 1988

Discussed *supra,* Plaintiffs succeeded on two claims: Plaintiffs were awarded significant

1    monetary damages on their wrongful death claim; and Plaintiffs were awarded a nominal dollar

2    on their Section 1983 claim.  Both of these claims stem from identical facts, and were decided

3    under identical legal standards.   However, Plaintiffs' ability to obtain attorneys' fees under

4    Section 1988 concerns Plaintiffs' success under Section 1983. The Court must determine

5    whether a substantial victory on a pendent state claim, when coupled with a nominal victory on

6    a Section 1983 claim, operating under identical facts and law, informs the degree of success

7    under Section 1988.

8         The Court begins with the language of Section 1988. Section 1988(b) states that "[i]n

9    *any action or proceeding* to enforce a provision of section . . . 1983 . . . the court, in its

10   discretion, may allow the prevailing party . . . a reasonable attorney's fee . . . ."   (emphasis

11   added.) At least one court considering this issue has found that because the statute does not refer

12   to "claims," but instead provides that fees may be awarded "[in] any action or proceeding to

13   enforce [a violation of Section 1983,]" that it is within a district court's discretion to consider

14   the success of the action or proceeding as a whole, including success on pendent state law

15   claims.  *See, Jama v. Esmor Correctional Services, Inc.,* 577 F.3d 169 (3rd Cir. 2009) ("We

16   agree that the language of § 1988(b) seems to be sufficiently broad to endorse the inclusion of

17   state claims in the consideration of overall success.") Without controlling precedent adopting

18   this interpretation, however, the Court turns to authority that more parallels the facts of this

19   case.

20        The Courts of Appeals for the Second and Third Circuit have decided cases closer to the

21   one before this Court. In *Bridges v. Eastman Kodak Co.,* 102 F.3d 56 (2nd Cir. 1996), cert.

22   denied sub nom., *Yourdon, Inc. v. Bridges,* 520 U.S. 1274, 117 S.Ct. 2453, 138 L.Ed.2d 211

23   (1997), the plaintiffs alleged they were sexually harassed by their employer in violation of Title

24   VII and an analogous New York antidiscrimination statute. *Id.* at 57. The district court held a

25   jury trial on the state claims and a concurrent bench trial on the Title VII claims. *Id.* The jury

26   found that the defendants violated the state law and awarded plaintiffs substantial amounts for

27   back pay and compensatory damages. *Id.* The court made parallel findings under Title VII, but

28   awarded no monetary relief on the federal claims, specifically in order to avoid double

recovery.[7] *Id*. at 58. The district court awarded fees to the plaintiffs without making any reduction for lack of success on the federal claim. *Id*. In so doing, *Bridges* distinguished *Farrar* because *Farrar* did not involve "a plaintiff who had achieved substantial success—and a large monetary award—on pendent state-law claims." *Id*. at 59.[8]

The *Bridges* panel cited approvingly to an earlier case in the Second Circuit, *Milwe v. Cavuoto*, 653 F.2d 80 (2nd Cir. 1981). In *Milwe,* the plaintiff was injured in an altercation with police officers. *Id*. at 81. The plaintiff brought a suit against several officers and supervisors for compensatory and punitive damages under 42 U.S.C. § 1983, and on pendent state law theories. After a trial, the jury found for the plaintiff against one defendant on a constitutional excessive force claim and a pendent state assault claim. The jury awarded $1 and $1,320 on these claims, respectively. The jury also found for the plaintiff against one other defendant on a constitutional claim relating to her arrest, and a claim for false arrest under state law. The jury awarded $1 in total for both of these claims. *Id*.

Similar to the Defendants here, the *Milwe* defendants argued that attorney's fees were inappropriate since, *inter alia*, the only significant damages were awarded on the pendent state assault claim. *Id*. at 84. *Milwe* rejected this argument and found an award of fees appropriate.  In

---

[7] This circumstance draws a meaningful parallel to this case, and distinguishes both *Bridges* and this case from *Farrar*. In *Farrar*, the plaintiff's nominal damage award "highlight[ed the] plaintiff's failure to prove actual, compensable injury." *Farrar*, 506 U.S. at 14. That was not the case in *Bridges*, and that is not the case here. Plaintiffs did not fail to prove actual, compensable injury. The jury awarded Plaintiffs 1.5 Million dollars on their wrongful death claim – a claim which operated under an identical legal standard to the Section 1983 claim. Moreover, Plaintiffs received the maximum relief available to them on the Section 1983 claim (notwithstanding a separate analysis on punitive damages).

[8] Additional parallels between *Bridges* and this case help Plaintiffs.  In *Bridges,* the state and federal claims were brought under employment discrimination statutes possessing related standards.  Similarly, here, the elements for Plaintiffs' Section 1983 and wrongful death claims were identical.  The only difference between Plaintiffs' claims concerned the damages that could be awarded.  While *Bridges* specifically declined to award damages on the federal claim in order to avoid double recovery, the same logic applies here. The *only* damages Plaintiffs could have obtained on the Section 1983 claim is the nominal dollar Plaintiffs received.  Thus, just as *Bridges* viewed the Title VII claim as a complete success, there is no reason, from a damages prospective, to view Plaintiffs' Section 1983 verdict as anything less than a complete success. Defendants dispute this conclusion, arguing that Plaintiffs could have sought compensatory damages on their 1983 claim in the form of lost earnings and damage to Stephen's vehicle.  Concerning lost earnings, Stephen was a student earning no income. Additionally, whether there was some minimal damage to Stephen's vehicle does not inform the degree of Plaintiffs' success on the Section 1983 claim.  This case was about the death of a young man, and whether the City of Fresno and Defendant Officers should be held liable. As Plaintiffs put it, "[s]eeking to recover three-figures of property damage in a case focusing on Stephen's death would have appeared petty." Doc. 310, 4: 19-21.

so doing, *Milwe* noted that the Supreme Court has found that "attorney's fees are available in cases 'in which the plaintiff prevails on a wholly statutory, non-civil rights claim pendent to a substantial constitutional claim.' " *Id.* (quoting *Maher v. Gagne,* 448 U.S. 122, 132, 100 S.Ct. 2570, 2576, 65 L.Ed.2d 653 (1980).) *Milwe* thus extended Supreme Court jurisprudence regarding pendent federal claims to pendent state claims.

The Court for Appeals for the Third Circuit has specifically considered *Farrar's* effect on cases in which only nominal damages were awarded on the Section 1983 claim, but substantial damages were awarded on a pendent state law claim. *See Jama v. Esmor Correctional Services, Inc.,* 577 F.3d 169 (3rd. Cir. 2009). In *Jama,* the plaintiffs alleged claims under Religious Freedom Restoration Act ("RFRA"), which allowed for the recovery of attorney's fees, as well as several state law claims, which did not. *Id.* at 172. The *Jama* plaintiffs were awarded nominal damages on their RFRA claims, and significant compensatory damages on their pendent state law claims.

The defendants in *Jama* argued that under *Farrar* no fee should be awarded because only nominal damages were awarded on the RFRA claim. *Id.* at 174. *Jama* first noted that "[t]he substantial award on her pendent state claim distinguishes her from the plaintiffs in *Farrar* . . ." *Id.* at 177. *Jama* then determined whether "Jama's success on her state law claim may independently inform the degree of her success under § 1988." *Id.*

*Jama* relied upon the Supreme Court's decision in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). In *Hensley,* the Supreme Court described how a district court should determine whether unsuccessful claims are sufficiently related to claims on which a plaintiff prevailed in order to include work on the unsuccessful claims in a fee award. *Id.* at 434, 437, 103 S.Ct. 1933. In short, *Hensley* found that if successful and unsuccessful claims share a common core of facts or were based on related legal theories, work done on unsuccessful claims may be included in a fee award.[9] *Jama* found this standard presented a logical basis for determining whether a successful state claim should inform the degree of

---

[9] While *Hensley* provides the standard for determining whether claims are related under Section 1988, the case did not specifically involve pendent state claims.

success inquiry on a qualifying federal claim. *Jama,* 577 F.3d at 179-80 ("the *Hensley* standard should guide a district court's consideration of pendent state claims in litigation where a plaintiff has prevailed on a fee-eligible federal claim.")   In other words, *Jama* found that in order to determine whether a plaintiff has "succeeded" on a fee-eligible federal claim that yielded only nominal damages, a court should consider the plaintiff's success on pendent state claims that involve a common core of facts or are based on related legal theories.

In the absence of any guidance from the Ninth Circuit, this Court is persuaded by the reasoning of the Second and Third Circuits, particularly that of the Third Circuit in *Jama*.  The purpose of the O'Connor factors is to identify a way in which a plaintiff succeeded in the litigation, because nominal damages are viewed as a hollow victory that cannot, alone, support an award of fees under Section 1988. But when a plaintiff wins substantial relief on a pendent state law claim, the victory is far from hollow. There is no logical basis to apply a standard concerned with token victories to a case yielding significant monetary relief.

Indeed, notwithstanding the factors articulated in the O'Connor concurrence and adopted by the Ninth Circuit, the thrust of *Farrar's* holding is that "[i]f a district court chooses to award fees after a judgment for only nominal damages, it must point to some way in which the litigation *succeeded,* in addition to obtaining a judgment for nominal damage." *Wilcox v. City of Reno,* 42 F.3d 550, 555 (9th Cir. 1994) (emphasis added.) While the O'Connor factors are generally used to determine whether the litigation succeeded in some other way, this is because *Farrar* and its progeny concern cases where *only* nominal damages are awarded. Here, in addition to an award of nominal damages on the Section 1983 claim, Plaintiffs "succeeded" by obtaining a judgment in the net amount of $302,044.80 on the wrongful death claim.

To be clear, Section 1988 contemplates an award of fees for successfully prosecuting an action or proceeding for constitutional violations. It would be improper to allow a successful state law claim having little in common with the constitutional claim to justify an award of fees under Section 1988, and this Court does not find that a successful state law claim necessarily informs the degree of success inquiry under Section 1988.  Success on unrelated state law claims is not the type of success contemplated by *Farrar*.  *See, Farrar,* 506 U.S. at 114

1    (requiring that the "civil rights litigation materially alter the legal relationship between the

2    parties.")

3          Applying *Hensley* in situations such as the one before the Court, as the Third Circuit did

4    in *Jama*, balances these concerns.  If the successful state law claim shares a common core of

5    facts or related legal theories with the fee-eligible federal claim, it is reasonable to conclude that

6    the civil rights litigation succeeded in furthering the constitutional interests at issue. Under

7    *Hensley*, therefore, if Plaintiffs' Section 1983 claim and wrongful death claim share a common

8    core of facts or are based on related legal theories, significant monetary success on Plaintiffs'

9    wrongful death claim, coupled with nominal damages on Plaintiffs' 1983 claim, permits

10   Plaintiffs to seek attorneys' fees Section 1988.

11         Here, Plaintiffs' Section 1983 claim and wrongful death claim involve a common core

12   of facts and are based on related legal theories.  Indeed, the legal standard presented to the jury

13   for these two claims are identical.[10]   The facts relevant to Plaintiffs' Section 1983 claim are

14   identical to the facts relevant to Plaintiffs' wrongful death claim. In short, the facts and law

15   relevant to both claims are indistinguishable. Plaintiffs are entitled to recover their attorneys'

16   fees under Section 1988.

17         **2.    Under *Farrar*, Plaintiff is Entitled to Section 1988 Fees**

18         Even if this Court were to disregard the important distinctions between *Farrar* and this

19   case, evaluating the O'Connor factors adopted by the Ninth Circuit supports an award of

20   attorneys' fees. *See Cummings,* 402 F.3d 947 (9th Cir. 2005) (Recognizing and applying the

21   O'Connor factors from *Farrar*: (1) difference between the damages sought and the amount

22   recovered; (2) the significance of the legal issue on which plaintiff prevailed; and (3) whether

23   the plaintiff's success accomplished some public goal.)

24         First, it is true that in most nominal damage cases, the first factor -- "[t]he difference

25   between the amount recovered and the damages sought," – will disfavor an award of fees.  Here,

26   however, Plaintiffs' recovery was not limited to nominal damages. Plaintiffs netted $302,044.80

27   on the pendent state claim.

28

---

[10] *Compare*, Jury Instruction No. 19, 20, and 21 *with* Jury Instruction No. 24 and 25, Doc. 237.

1    Defendants argue that because Plaintiffs asked the jury to award them $15,000,000 at

2    trial, but only received $302,044.80, the first factor disfavors an award of fees.  While there is a

3    significant disparity between these two figures, parties routinely ask for the moon, with the

4    understanding that a lesser verdict will be satisfactory.  Every court to consider this factor under

5    *Farrar* was presented with circumstances where a party asked for a great deal, but only received

6    nominal damages.  That is not the case here.  The disparity between Plaintiffs' request to the

7    jury, and the six-figure sum Plaintiffs ultimately obtained, is not the type of disparity

8    contemplated by *Farrar*.  The first O'Connor factor favors an award of attorneys' fees.

9    The second factor -- "the significance of the legal issue on which the plaintiff claims to

10   have prevailed" – also favors an award of attorneys' fees.  Defendants argue this factor

11   disfavors an award of fees because excessive force resulting in death is not a novel legal

12   concept, and the jury's verdict has no procedural significance.  This argument is misguided.

13   The Ninth Circuit does not evaluate this factor in terms of whether the verdict alters the legal

14   landscape.  Rather, the Ninth Circuit considers the importance of the constitutional violation

15   itself.  *See Mahach-Watkins v. Dupree,* 593 F.3d 1054, 1062 (9th Cir. 2010) ("We have

16   difficulty imagining a more important issue than the legality of state-sanctioned force resulting

17   in death. It is obviously of supreme importance to anyone who might be subject to such force.

18   But it is also of great importance to a law enforcement officer who is placed in a situation where

19   deadly force may be appropriate. We therefore conclude that the second factor supports the

20   award of attorney's fees."); *See also, Guy v. City of San Diego,* 608 F.3d 582, 590 (9th Cir.

21   2010) ("we conclude that a fee award serves a purpose beneficial to society by encouraging the

22   City of San Diego to ensure that all of its police officers are well trained to avoid the use of

23   excessive force, even when they confront a person whose conduct has generated the need for

24   police assistance"). The significance of the legal issue supports an award of fees.

25   Lastly, the third factor -- whether the plaintiff "accomplished some public goal" – also

26   supports an award of fees.  Defendants argue this factor is not met because this case has done

27   nothing to change the Fresno Police Department's practices or procedures.  However, the Ninth

28   Circuit has consistently held that in excessive force cases, these verdicts benefit society as a

11

whole because they "constitute a warning to law-enforcement officers not to treat civilians unconstitutionally." *Morales v. City of San Rafael*, 96 F.3d 359, 365 (9th Cir. 1996); *See also, Mendez v. County of San Bernardino*, 540 F.3d 1109, 1128 (9th Cir. 2008) ("because successful suits act as a deterrent to law enforcement and serve the public purpose of helping to protect the plaintiff and persons like him from being subjected to similar unlawful treatment in the future."); *Guy,* 608 F.3d at 590 (9th Cir. 2010) ("we conclude that a fee award serves a purpose beneficial to society by encouraging the City of San Diego to ensure that all of its police officers are well trained to avoid the use of excessive force, even when they confront a person whose conduct has generated the need for police assistance"); *Mahach-Watkins,* 593 F.3d at 1062 ("It is possible that the CHP will continue, as it has said it will, to follow its current "policies and practices" concerning the use of force despite the jury's conclusion that Officer Depee acted unconstitutionally. However, this does not mean that Mahach–Watkins's § 1983 suit, and the jury's verdict that Depee used excessive force, accomplished no public goal. . . . it served the public purpose of helping to protect Morales and persons like him from being subjected to similar unlawful treatment in the future.")

Accordingly, even under a straight *Farrar* analysis, Plaintiffs are entitled to an award of attorneys' fees under Section 1988.

**B.     Reasonable Attorneys' Fees**

**1.     Legal Standard**

"The Supreme Court has stated that the lodestar is the 'guiding light' of its fee-shifting jurisprudence, a standard that is the fundamental starting point in determining a reasonable attorney's fee." *Van Skike v. Director, Office of Workers' Compensation Programs*, 557 F.3d 1041, 1048 (9th Cir. 2009) (quoting *City of Burlington v. Dague,* 505 U.S. 557, 562, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992)); *See also, Hensley,* 461 U.S. at 433. Accordingly, a district court is required "to calculate an award of attorneys' fees by first calculating the 'lodestar' before departing from it." *Camacho v. Bridgeport Financial, Inc*., 523 F.3d 973, 982 (9th Cir. 2008) (quoting *Caudle v. Bristow Optical Co. Inc*., 224 F.3d 1014, 1028 (9th Cir. 2000)). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably

1   expended on the litigation by a reasonable hourly rate." *Camacho*, 523 F.3d at 978 (quoting

2   *Ferl and v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n. 4 (9th Cir. 2001)). Applying these

3   standards, "a district court should exclude from the lodestar amount hours that are not

4   reasonably expended because they are 'excessive, redundant, or otherwise unnecessary.' " *Van*

5   *Gerwen v. Guarantee Mutual Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (quoting *Hensley*,

6   461 U.S. at 434).

7          The lodestar figure is presumptively reasonable. *See Dague*, 505 U.S. at 562 ("We have

8   established a 'strong presumption' that the lodestar represents the 'reasonable' fee[.]");

9   *Gonzalez*, 729 F.3d at 1202 ("The product of this computation—the "lodestar figure"—is a

10  "presumptively reasonable" fee under 42 U.S.C. § 1988."). However, "in rare cases, a district

11  court may make upward or downward adjustments to the presumptively reasonable lodestar on

12  the basis of those factors set out in *Kerr v. Screen Extras Guild, Inc*., 526 F.2d 67, 69–70 (9th

13  Cir. 1975), that have not been subsumed in the lodestar calculation." *Camacho*, 523 F.3d at 982.

14  Those factors to be considered in making any adjustment to the presumptively reasonable

15  lodestar include:

16         (1) the time and labor required, (2) the novelty and difficulty of the questions
           involved, (3) the skill requisite to perform the legal service properly, (4) the
17         preclusion of other employment by the attorney due to acceptance of the case, (5)
           the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations
18         imposed by the client or the circumstances, (8) the amount involved and the
           results obtained, (9) the experience, reputation, and ability of the attorneys, (10)
19         the 'undesirability' of the case, (11) the nature and length of the professional
           relationship with the client, and (12) awards in similar cases.
20

21  *Kerr,* 526 F.2d at 70; *See also, Ballen*, 466 F.3d at 746 ("After making that computation, courts

22  then assess whether it is necessary to adjust the presumptively reasonable lodestar figure on the

23  basis of twelve factors.").

24         Finally, in applying these legal standards the Court is cognizant of the following

25  overarching guidance provided by the Ninth Circuit:

26         Lawyers must eat, so they generally won't take cases without a reasonable
           prospect of getting paid. Congress thus recognized that private enforcement of
27         civil rights legislation relies on the availability of fee awards: "If private citizens
           are to be able to assert their civil rights, and if those who violate the Nation['s]
28         fundamental laws are not to proceed with impunity, then citizens must have the

opportunity to recover what it costs them to vindicate these rights in court." S.Rep. No. 94–1011, at 2 (1976), as reprinted in 1976 U.S.C.C.A.N. 5908, 5910. [fn. omitted] At the same time, fee awards are not negotiated at arm's length, so there is a risk of overcompensation. A district court thus awards only the fee that it deems reasonable. *See Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The client is free to make up any difference, but few do. As a practical matter, what the district court awards is what the lawyer gets.

In making the award, the district court must strike a balance between granting sufficient fees to attract qualified counsel to civil rights cases, *City of Riverside v. Rivera*, 477 U.S. 561, 579–80, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986), and avoiding a windfall to counsel, *see Blum v. Stenson*, 465 U.S. 886, 897, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (quoting S.Rep. No. 94–1011, at 6 (1976)). The way to do so is to compensate counsel at the prevailing rate in the community for similar work; no more, no less.

*Moreno*, 534 F.3d at 1111.

With this guidance in mind, the Court turns to Plaintiffs' Motion for Attorneys' Fees and costs.

## 2.     Reasonable Hourly Rate

Fee applicants have the burden of producing evidence that their requested fees are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Camacho,* 523 F.3d at 980 (internal quotation marks omitted). "[T]he relevant community is the forum in which the district court sits." *Davis v. Mason County,* 927 F.2d 1473, 1488 (9th Cir. 1991). "Affidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the community ... are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp*., 896 F.2d 403, 407 (9th Cir. 1990). Once a fee applicant presents such evidence, the opposing party "has a burden of rebuttal that requires submission of evidence ... challenging the accuracy and reasonableness of the ... facts asserted by the prevailing party in its submitted affidavits." *Camacho,* 523 F.3d at 980 (internal quotation marks omitted).

Plaintiffs acknowledge that the prevailing rates in the Fresno community would normally establish the applicable rate for Plaintiffs' Counsel, whose practice is located in San Francisco.  However, Plaintiffs argue that because local counsel was unwilling, unable, and otherwise unavailable to properly handle this case, Plaintiffs' Counsel is entitled to the

prevailing rates in the San Francisco community.  In support of this assertion, Plaintiffs submit the declarations of several Fresno attorneys who, in summary, argue that very few attorneys in Fresno would have agreed to take Plaintiffs' case.  *See,* Doc. 299, Attach. 11-19. Accordingly, Plaintiffs argue they should receive fees ranging from $300-$700 per hour.

Defendants respond there is insufficient support for this Court to conclude local attorneys would be unwilling or unable to take this case. As such, Defendants submit that Plaintiffs are entitled to the prevailing rates in the Fresno community, which Defendants argue range from $150-$305 per hour.

Plaintiffs are not entitled to San Francisco rates.  First, Plaintiffs have offered minimal evidence that San Francisco rates are necessary to the enforcement of civil rights cases in Fresno.  *See, Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997). "Without evidence that [Fresno] rates preclude the attraction of competent counsel, [Plaintiffs'] argument remains too theoretical to warrant departure from the local forum rule given in *Davis*." *Id.* Plaintiffs' evidence consists of declarations from local attorneys who declare they would not consider taking on a case such as this one in *most* instances. *See,* Doc. 299, Attach. 11-19. However, it is not enough that local counsel is unwilling or unable to take a given case.  Rather, departure from the local forum rule announced in *Davis* requires a fee applicant to demonstrate that without the requested rates, competent counsel would be unwilling to take a particular case. Plaintiffs have not made this showing.

Second, this Court sees more than its fair share of excessive force cases prosecuted by local counsel. Indeed, a cursory review of the Fresno Division's docket over the last three years reveals an abundance of local counsel willing and able to prosecute excessive force cases. *See, e.g., Raygoza et al. v. City of Fresno, et al.,* 13-cv-00322-LJO-SMS (E.D. Cal., Fresno Div.) (complaint filed March 5, 2013); *Berman v. County of Fresno, et al.,* 13-cv-00597-LJO-SAB (E.D. Cal., Fresno Div.) (case removed on April 23, 2013); *Fernandez v. McKnight,* 12-cv-00557-BAM (E.D. Cal., Fresno Div) (complaint filed on April 10, 2012); *Morris v. City of Fresno, et al.,* 08-cv-01422-AWI-SMS (E.D. Cal., Fresno Div.) (local counsel substituted on behalf of pro se plaintiff on November 7, 2011); *Estate of Martin Srabian v. Mims, et al.,* 08-cv-

00336-LJO-SMS (E.D. Cal., Fresno Div.) (local counsel led a six-day jury trial, concluding January 23, 2013). Accordingly, Plaintiffs' fees shall be determined by the prevailing rates in the Fresno community.

The Court's review of the hourly rates generally accepted in the Fresno community for competent, experienced attorneys reveals a range of $250–$380 per hour. The rates at the highest end of this scale (in excess of $300) are generally reserved for those practitioners regarded as competent, reputable, and possessing in excess of 20 years of experience. *See, e.g., Luna v. Hoa Trung Vo*, No. 1:08–cv–01962–AWI–SMS, 2011 WL 2078004 at *5 (E.D. Cal. May 25, 2011) (attorney with more than 40 years of experience and specializing in disability related litigation awarded $375 per hour; an associate with twenty years of litigation experience was given a $315 rate; and an associate with ten years of experience was given a $295 rate.); *Jadwin v. County of Kern*, 767 F.Supp.2d 1069, 1129–1134 (E.D. Cal. 2011) (An attorney with 13 years of experience, but insubstantial trial experience, requested $400 hour and received $275 an hour; An attorney with 16 years of experience requested $450 an hour and received $350 an hour; A research attorney with 20 years of experience requested $385 an hour and received $295 an hour; An attorney with almost 40 years of experience requested $660 per hour and received $380 per hour.); *Miller v. Schmitz,* No. 1: 12-cv-00137-LJO-SAB, 2014 WL 642729 at *3 (E.D. Cal., Feb. 18, 2014) ($350 per hour for civil rights attorney with 20 years of experience, and noting that the "prevailing hourly rate in this district is in the $400/hour range for experience attorneys.") (internal quotation marks omitted.)

Further down the scale, the range of reasonable hourly rates for competent attorneys with less than ten years of experience is $175–$300 per hour. *See e.g., S.A. Minor ex. Rel. His parents v. Tulare County Office of Educ.*, No. 1: 08-cv-1215-LJO-GSA, 2009 WL 4048656 at *4-5 (E.D. Cal., Nov. 20, 2009) ($250 for an attorney with eight years of experience); *C.B. v. Sonora School Dist.*, 1: 09-cv-00285-OWW-SMS, 2011 WL 4590775 at *3-4 (E.D. Cal. Sept. 30, 2011) ($300 for lead trial counsel with five years of experience); *Frank v. Wilbur–Ellis Co. Salaried Employees Ltd. Plan*, No. 1: 08-cv-284-LJO-GSA, 2009 WL 2579100 at *5-6 (E.D. Cal. Aug. 19, 2009) (awarding an hourly rate of $300 per hour to a fourth year associate who

has been involved in six trials); *White v. Rite of Passage Adolescent Treatment Centers and Schools,* No. 1:13–cv-1871–LJO–BAM, 2014 WL 641083, at *5 (E.D. Cal. Feb.18, 2014) (awarding $300.00 per hour for counsel with six years of experience in representative action under the California Private Attorney General Act of 2004); *Miller v. Schmitz,* No. 1:12-cv-00137-LJO-SAB, 2014 WL 642729 at *3-4 (E.D. Cal., Feb. 18, 2014) (two attorneys who were licensed to practice law for less than a year were awarded $175 per hour).

With these parameters in mind, the Court considers the reasonable hourly rate to be awarded to Plaintiffs' attorneys.

### i. Walter H. Walker

Mr. Walker served as co-lead counsel in this matter, and was one of two primary attorneys who tried this case. Mr. Walker is a named partner in the law firm of Walker, Hamilton & Koenig LLP. Mr. Walker is a 1974 graduate of the University of California, Hastings College of the Law, and a 1971 graduate of the University of Pennsylvania. Doc. 299, Attach. 2. Mr. Walker has been licensed to practice law in California since 1974. *Id.* Mr. Walker has tried over 50 jury cases in California, and has participated in trials and made other court appearances in several other states. *Id.* Mr. Walker has received numerous accolades, awards and other recognitions throughout his career. *Id.*

The Court finds that Mr. Walker has demonstrated the highest level of skill, experience and reputation relative to the Fresno community.  Accordingly, the Court sets Mr. Walker's hourly rate at $380.00 per hour.

### ii. Peter J. Koenig

Mr. Koenig served as co-lead counsel in this matter, and was one of two primary attorneys who tried this case. Mr. Koenig is a named partner in the law firm of Walker, Hamilton & Koenig LLP. Mr. Koenig graduated with a bachelor's degree from University of California, Berkeley in 1983. Doc. 299, Attach. 6. Mr. Koenig received his J.D. from University of San Francisco School of Law in 1987 and was admitted to practice in California that same year. Mr. Koenig has been practicing law for almost twenty-seven years.

The Court finds that Mr. Koenig has demonstrated the highest level of skill, experience

and reputation relative to the Fresno community.   Accordingly, the Court sets Mr. Koenig's hourly rate at $380.00 per hour.

### iii.    Ellen Lake

Ms. Lake is a solo practitioner who served as appellate counsel for Plaintiffs in this matter.   After summary judgment was granted in Defendants' favor, Ms. Lake prepared the opening and reply briefs, as well as the related excerpts of record, for the appeal before the Ninth Circuit. Doc. 299, Attach. 7. Ms. Lake also prepared the instant fee motion. Ms. Lake graduated from Harvard University in 1966 and graduated from Case Western Reserve Law School in 1970. *Id.* Ms. Lake was admitted to the California Bar in 1971. *Id.* Ms. Lake's experience is both diverse and lengthy.  Before opening her own practice in 1985, Ms. Lake has served as a staff attorney for a California Supreme Court justice, and also served as Chief of Litigation for the California Agricultural Relations Board. *Id.* Since 1985, Ms. Lake's practice has focused on law and motion practice and civil appeals in a variety of substantive areas. *Id.*

The Court finds that Ms. Lake has demonstrated the highest level of skill, experience and reputation relative to the Fresno community. Accordingly, the Court sets Ms. Lake's hourly rate at $380.00 per hour.

### iv.    Richard Berman

Mr. Berman is a solo practitioner who assisted Plaintiffs in a variety of aspects in this case, from early investigation to trial. Mr. Berman is a graduate of UCLA and attended law school at the University of California, Hastings College of Law. Mr. Berman has been practicing law in California since 1973. Mr. Berman requests an hourly rate of $350.00 per hour.

The Court finds Mr. Berman's requested rate is in line with similarly experienced attorneys in the Fresno community, and is the rate at which he usually bills his time. (Doc. 299.) Accordingly, the Court sets Mr. Berman's hourly rate at $350.00 per hour.

### v.    Eric Schweitzer

Mr. Schweitzer, a partner in the law firm of Schweitzer and Davidian, P.C., assisted Plaintiffs throughout various stages of this case. Mr. Schweitzer graduated from San Joaquin

College of Law in 1995, and became licensed to practice law that same year.

A reasonable hourly rate comparable to other attorneys of similar skill, experience and reputation in the Fresno community is $300.00 per hour. The Court sets Mr. Schweitzer's hourly rate at $300.00 per hour.

### vi.    Clarissa E. Kerns

Ms. Kerns is an associate with the law firm of Walker, Hamilton & Koenig LLP. Ms. Kerns participated in various aspects of this case, from assisting on appeal to preparation for trial.  Doc. 299, Attach. 8.  Ms. Kern graduated from Wellesley College in 2000, and Golden Gate University School of Law in 2006.  Ms. Kern was admitted to practice in California in December of 2006.

A reasonable hourly rate comparable to other attorneys of similar skill, experience and reputation in the Fresno community is $250.00 per hour. The Court sets Ms. Kerns' hourly rate at $250.00.

### vii.    Rana Ansari-Jaberi

Ms. Ansari-Jaberi is currently an attorney at the law firm of Reed Smith LLP, where she has been employed since 2012. Prior to that, from 2009 to 2012, she was an associate at the law firm of Walker, Hamilton & Koenig LLP.  Ms. Ansari-Jaberi worked on various aspects of Plaintiffs' case, including pleadings, discovery and law and motion practice. Ms. Ansari-Jaberi graduated from the University of California, Davis, in 2004, and received her J.D. from the University of California, Hastings College of the Law, in 2008. Ms. Ansari-Jaberi was admitted to practice in California in January 2009.

A reasonable hourly rate comparable to other attorneys of similar skill, experience and reputation in the Fresno community is $250.00 per hour.  Accordingly, the Court sets Ms. Ansari-Jaberi's hourly rate at $250.00 per hour.

### viii.    Beau R. Burbidge

Mr. Burbidge is an associate at the law firm of Walker, Hamilton & Koenig LLP. Mr. Burbidge assisted in various aspects of Plaintiffs' case, primarily the trial. Mr. Burbidge graduated from Georgetown University in 2004, and from the University of California, Hastings

College of Law, in 2009.  Mr. Burbidge was admitted to practice in California in 2009.

A reasonable hourly rate comparable to other attorneys of similar skill, experience and reputation in the Fresno community is $250.00 per hour.  Accordingly, the Court sets Mr. Burbidge's hourly rate at $250.00 per hour.

### ix.    Paralegal Time

A reasonable hourly rate for paralegals in the Fresno community is $75.00 - $150.00 per hour.  *See, J&J Sports Productions, Inc. v. Corona,* No. 1:12-cv-01844-LJO-JLT, 2014 WL 1513426 at *3 (E.D. Cal., Apr. 16, 2014) ($75.00); *Gutierrez v. Onanion,* No. 11-cv-00579-SMS, 2012 WL 1868441 at *2 (E.D. Cal., May 22, 2012) ($115.00);  *Spence v. Wells Fargo Bank, N.A.,* No. 1:10-cv-2057-AWI-GSA, 2012 WL 844713 at *5 (E.D. Cal., Mar. 12, 2012) (approving "paralegal or other support rates" of $125.00, $145.00 and $155.00);

Plaintiffs request $100.00 per hour for paralegal Jess Ibutuan.  That amount is in line with fees generally awarded in this district, and the Court sets Jess Ibutuan's hourly rate at $100.00 per hour.

Plaintiffs request $150 per hour for paralegal Jocelyn Alvarez.  This amount is at the very top of fees awarded to paralegals in this district.  Plaintiffs, however, have not offered any reason why Ms. Alvarez's fee should be set at the highest fee level in this district, or why Ms. Alvarez should be billed at a higher rate than Ms. Ibutuan.  Accordingly, Ms. Alvarez's hourly rate should be set at a rate more typical of this district.  The Court sets Ms. Alvarez's rate at $100.00 per hour.

### 3.    Reasonable Number of Hours

A district court, using the lodestar method to determine the amount of attorney's fees to award, must determine a reasonable number of hours for which the prevailing party should be compensated. *See Fischer v. SJB–P.D. Inc.,* 214 F.3d 1115, 1119 (9th Cir. 2000). Ultimately, a "reasonable" number of hours equals "[t]he number of hours ... [which] could reasonably have been billed to a private client." *Moreno*, 534 F.3d at 1111. The prevailing party has the burden of submitting billing records to establish that the number of hours it has requested are reasonable. *See In re Wash. Pub. Power Supply Sys. Sec. Litig.,* 19 F.3d 1291, 1305 (9th Cir.

1994).

"By and large, the [district] court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Moreno v. City of Sacramento,* 534 F.3d at 1106, 1112 (9th Cir. 2008). Plaintiffs are entitled to recover fees for "every item of service which, at the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest." *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982).  "It must be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. It would therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning." *Moreno*, 534 F.3d at 1112.

Plaintiffs submit the following hours were expended litigating this case:

| Attorney | Hours |
|---|---|
| Walter H. Walker, III | 909.74 |
| Peter J. Koenig | 691.7 |
| Ellen Lake | 247.3 |
| Richard Berman | 78.58 |
| Eric Schweitzer | 48.1 |
| Clarissa E. Kearns | 118.7 |
| Rana Ansari-Jaberi | 835.7 |
| Beau R. Burbidge | 484.3 |
| Jess Ibatuan (paralegal) | 30.8 |
| Jocelyn Alvarez (paralegal) | 63.1 |

Defendants present numerous arguments attacking these hours, three of which the Court will address in detail.[11] First, Defendants argue Plaintiffs are not entitled to recover any fees

---

[11] Defendants present numerous arguments that do not merit a detailed analysis. Defendants argue Plaintiffs improperly billed for clerical tasks that should be excluded from the lodestar computation.  However, many of the entries contested by Defendants show entries containing compensable work as well as clerical work.  For example, an entry may read as "prepared and mailed subpoena," or "researched topic X; entered time."  Defendants do not challenge the time expended on the compensable aspects of these entries.  On the contrary, Defendants mistakenly

arising from their appeal to the Ninth Circuit.  Second, Defendants argue Plaintiffs' billing lacks the required specificity and otherwise constitutes improper block billing.  Third, Defendants argue Plaintiffs may not seek fees for unrelated, unsuccessful claims. The Court addresses each argument in turn.[12]

### i.     Fees Relating to Plaintiffs' Appeal

On July 13, 2011, District Judge Lawrence J. O'Neill granted Defendants' Motion for

---

suggest these entries represent clerical work only.  The Court does not find any attorney time was clerical in nature such that their hours should be excluded. However, certain paralegal time appears clerical in nature and will be excluded.  Paralegal Ibatuan billed 3.5 hours consisting of general filing and secretarial work.  Those hours will be excluded.  Paralegal Alvarez billed 1.9 hours consisting of secretarial tasks, and those hours will be excluded. Next, Defendants argue Plaintiffs are not entitled to fees relating to expert and lay witnesses who did not testify at trial. Defendants cite no authority for this proposition.  On the contrary, Defendants argue in their reply memorandum in support of their bill of costs that "[j]ust because a witness did not testify at trial . . . does not negate the fact that the testimony was necessarily obtained for use in defending the action." Doc. 267, 6: 9-10. Plaintiffs are entitled to recover fees for "every item of service which, at the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest." *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982). Defendants offer no reason why Plaintiffs' investigation into the subject witnesses was unreasonable or imprudent.  The Court will not exclude these hours.  Next, Defendants seek to exclude the attorneys' fees relating to Plaintiffs' Counsels' work with a private investigator.  Defendants acknowledge fees and costs associated with private investigators are recoverable, however, speculate that because this investigator did not further Plaintiffs' case, Plaintiffs' counsels' time spent working with this investigator should be excluded.  Again, Defendants offer no reason why Plaintiffs' efforts to retain a private investigator was somehow unreasonable or imprudent at the time these fees were incurred.  The Court will not exclude these hours.  Next, Defendants argue Plaintiffs' fees relating to the instant Motion should be excluded, because the Motion was prepared by Ms. Lake, rather than a member of Plaintiffs' lead counsel team.  The Court is not persuaded by this argument and will not exclude these fees. In addition to fees awarded for success in the litigation, a prevailing party under Section 1988 is also entitled to recover fees for work performed in preparing the motion for attorney's fees itself. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir.2008) ("In statutory fee cases, federal courts, including our own, have uniformly held that time spent in establishing the entitlement to and amount of the fee is compensable.") Even assuming it was improper to hire outside counsel to prepare a motion for fees, because Ms. Lake and Mr. Walker have the same billing rate, the distinction is without a difference. Finally, Defendants argue the Court should exclude fees relating to media coverage. Fees for media contacts are ordinarily the type of activity attorneys do at their own expense.  *Gates v. Gomez*, 60 F.3d 525, 535 (9th Cir. 1995).  The Court will exclude the following fees: Mr. Walker (2.35); Mr. Berman (3.83); Mr. Schweitzer (.75).

[12] As a preliminary matter, Defendants have objected to many of Plaintiffs' hours in a manner that makes it prohibitively difficult to evaluate Defendants' arguments.  Counsel Roy Santos has submitted a declaration which attaches hundreds of pages of spreadsheets, each of which addresses a particular attorney's billing records, and contains one of several boilerplate objections.  When articulating an objection to a category of billing in its Opposition brief, Defendants refer this Court to anywhere from twenty to one hundred of these pages, without any specificity. As the Court reviewed these spreadsheets with respect to a category of fees, the majority of the fee entries had nothing to do with the category of fees at issue.  Rather, Defendants force the Court to mine through hundreds of spreadsheets in order to locate the scattered entries that presumably apply to the category of fees at issue.  The non-moving party has the "burden of rebuttal" that requires submission of evidence challenging the accuracy and reasonableness of the hours charged. *Gates v. Deukmejian*, 987 F.2d 1392, 1397–98 (9th Cir. 1992). Defendants do not meet this burden by referring this Court to hundreds of pages of spreadsheets, most of which have little relevance to the fees at issue. Nonetheless, the Court has conducted an independent evaluation of Plaintiffs' time sheets.

---

Summary Judgment as to all claims.  (Doc. 141.)  Plaintiffs timely appealed. (Doc. 149.) On appeal, the Ninth Circuit affirmed in part and reversed in part. (Doc. 155.) Specifically, the Ninth Circuit reversed the District Court's judgment as to Plaintiffs' Fourth and Fourteenth Amendment claims, as well as Plaintiffs' state law wrongful death claim. *Id.*  The Ninth Circuit upheld the District Court's judgment as to Plaintiffs' supervisory liability and *Monell* claims. *Id.* As for the claims which were reversed, the Ninth Circuit held there were "genuine disputes of material fact," but did not direct the District Court to enter judgment in Plaintiffs' favor on any claim. *Id.*

The parties dispute whether Plaintiffs are entitled to an award of fees for their efforts on appeal. Defendants, relying on Ninth Circuit Rules 39–1.6(a) and 39–1.8, as well as the Ninth Circuit's decision in *Cummings v. Cornell*, argue that Plaintiffs should have filed for fees incurred on appeal in the Ninth Circuit, not this Court.[13] Plaintiffs respond that because they were not "prevailing parties" within the meaning of Section 1988, there was no purpose in seeking fees at that time. Now that they have prevailed on the merits of their claims, Plaintiffs argue they are entitled to seek their fees relating to the appeal from this Court.

Ninth Circuit Rule 39–1.6(a) provides that "[a]bsent a statutory provision to the contrary, a request for attorneys' fees shall be filed no later than 14 days after the expiration of the period within which a petition for rehearing may be filed, unless a timely petition for rehearing is filed. If a timely petition for rehearing is filed, the request for attorneys fees shall be filed no later than 14 days after the Court's disposition of the petition." Ninth Circuit Rule 39-1.6(b) further requires that "[a] request for an award of attorneys fees must be supported by a memorandum showing that the party seeking fees is legally entitled to them . . . ." Lastly, Circuit Rule 39-1.8(a) provides that "[a]ny party who is or may be eligible for attorneys fees on appeal to this Court may, within the time permitted in Circuit Rule 39-1.6, file a motion to transfer consideration of attorneys fees on appeal to the district court or administrative agency

---

[13] Defendants cite numerous other cases holding that, under *Cummings*, fee requests under Section 1988 must be made before the Ninth Circuit. *See, e.g., Taylor v. Chiang*, 2007 WL 3238677, *2 fn.3 (E.D. Cal. 2007) (overruled on other grounds); *Yamada v. Weaver*, 2012 WL 6019121, *5-6 (D. Hawai'I 2012); *Nader v. Brewer*, 2009 WL 811450, *1 (D. Ariz. 2009); *Marshall v. Kirby*, 2010 WL 4923486, *7 (D. Nev. 2010); and *Noel v. Hall*, 2013 WL 3146863, *7 (D. Or. 2013).

from which the appeal was taken."

In *Cummings,* nonunion state employees brought a Section 1983 action against a public sector union and certain public officials, claiming that the union provided insufficient notice regarding "fair share" fees deducted from their paychecks to cover their share of collective bargaining process between state and union. *Cummings,* 402 F.3d at 940-41. The United States District Court for the Eastern District of California certified the class, entered summary judgment against union, directed refund of all fair share fees, and awarded fees and costs.  *Id.* On appeal, the Ninth Circuit affirmed the district court's certification of the class and affirmed the court's ruling that the union's notice was defective.  *Id.* However, the Ninth Circuit reversed the award of restitution. *Id.*

On remand, the district court made two rulings that were appealed.  The first one concerned the award of nominal damages. The second one concerned attorney's fees. Relevant to the instant Motion, the attorney's fee award included fees and expenses incurred on the first appeal. In the subsequent appeal, *Cummings* held that pursuant to Ninth Circuit Rule 39-1.6, Plaintiffs' application for attorneys' fees and expenses incurred on their first appeal should have been filed with the Clerk of the Ninth Circuit. *Id.* at 947. The rule requiring a plaintiff to seek their appellate fees before the Ninth Circuit in a Section 1988 case was reaffirmed in *Natural Resources Defense Council, Inc. v. Winter,* 543 F.3d 1152, 1164 (9th Cir. 2008) ("[i]n *Cummings*, we held that appellate fees requested pursuant to 42 U.S.C. § 1988 must be filed with the Clerk of the Ninth Circuit in the first instance, not with the district court.")

Plaintiffs argue *Cummings* does not control here, because Plaintiffs were not a prevailing party entitled to fees under Section 1988 following the Ninth Circuit's decision. Plaintiffs refer this Court to other Ninth Circuit decisions denying a Plaintiffs' request for fees because the appeal did not result in the plaintiff prevailing on the merits; rather, the result of the appeal "simply allow[ed plaintiffs] a trial on the merits." *Tribble v. Gardner,* 860 F.2d 321, 328 (9th Cir. 1988); *See also, Proctor v. Consolidated Freightways Corp. of Delaware*, 795 F.2d 1472, 1479 (9th Cir. 1986) (plaintiff who overturned summary judgment on appeal was not entitled to attorneys' fees because she had not yet prevailed on the merits of her claim; court held that she could bring fee request before the district court if she succeeded at trial); *Tribble,*

860 F.2d at 328 (plaintiff who was successful in affirming denial of summary judgment had not yet succeeded on merits of his claim and thus was not entitled to attorneys' fees from court of appeals); *Hanrahan v. Hampton*, 446 U.S. 754, 758-59 (1980) (The Supreme Court held that the plaintiffs were not entitled to attorneys' fees under Section 1988 following appeal, because they had not yet "prevailed on the merits of any of their claims. . . . As a practical matter they are in a position no different from that they would have occupied if they had simply defeated the defendants' motion for a directed verdict in the trial court.") Plaintiffs argue that because they did not prevail on the merits of their claims, *Cummings'* requirement that Plaintiffs seek fees from the Ninth Circuit "in the first instance" does not apply.

Plaintiffs were not required to seek their attorneys' fees before the Ninth Circuit. Plaintiffs were not a "prevailing party" under Section 1988 following the appeal.  Rather, the result of the appeal "simply allow[ed Plaintiffs] a trial on the merits." *Tribble,* 860 F.2d at 328. Indeed, *Cummings* recognized the well-established principle that "[p]ursuant to the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, a district court has the authority to award reasonable attorney's fees to the *prevailing party* in a § 1983 case." *Cummings,* 402 F.3d at 946. (Emphasis added.) "A party need not prevail on all issues litigated, but must succeed on at least some of the merits." *Id.*  However, because Plaintiffs did not prevail on the merits of their case, an application for attorneys' fees would have been futile.

Defendants do not cite any Ninth Circuit authority requiring a plaintiff to seek fees when they did not "prevail on the merits" within the meaning of Section 1988, and the Court has found none. This Court does not interpret *Cummings* to require a plaintiff who was successful on appeal, but did not prevail on any aspect of the merits of their claims, to seek their attorneys' fees for that appeal before the Ninth Circuit.

Practical considerations support this interpretation of *Cummings*.  Seeking attorneys' fees pursuant to Rule 39-1.6 is not a mere procedural formality.  Circuit Rule 39-1.6(b) requires that "[a] request for an award of attorneys fees must be supported by a memorandum showing that the party seeking fees is legally entitled to them . . . ."  However, it is black letter law that a plaintiff is not entitled to fees under Section 1988 unless they prevail on some aspect of the merits of their claims. Plaintiffs did not prevail on the merits of any of their claims on appeal.

1   Interpreting *Cummings* in the manner suggested by Defendants would result in a requirement

2   that parties knowingly misrepresent their entitlement to fees from the Ninth Circuit.  This Court

3   does not believe that is the intended consequence of *Cummings* or the Ninth Circuit Rules.[14]

4   Accordingly, the Court will not exclude Plaintiffs' fees relating to the appeal.[15]

5                      ii.      **Billing Entries – Block Billing and the Required Specificity**

6         "The party petitioning for attorneys' fees 'bears the burden of submitting detailed time

7   records justifying the hours claimed to have been expended." *Chalmers v. City of Los Angeles*,

8   796 F.2d 1205, 1210 (9th Cir. 1986). "Plaintiff's counsel, of course, is not required to record in

9   great detail how each minute of his time was expended." *Hensley*, 461 U.S. at 437, n.12.

10  Counsel must only "identify the general subject matter of his time expenditures." *Id.* (emphasis

11  added). "[V]erified time statements of the attorneys, as officers of the court, are entitled to

12  credence in the absence of a clear indication the records are erroneous." *Kittok v. Leslie's*

13  *Poolmart, Inc.*, 687 F. Supp. 2d 953, 963 (C.D. Cal. 2009).

14        A billing practice that may preclude fee statements from providing the required level of

15  specificity is known as block billing. "Block billing is the time-keeping method by which each

16  lawyer and legal assistant enters the total daily time spent working on a case, rather than

17  itemizing the time expended on specific tasks." *Welch v. Met. Life Ins. Co.,* 480 F.3d 942, 945

18  n. 2 (9th Cir. 2007) (internal quotation marks omitted). "[B]lock billing makes it more difficult

19  to determine how much time was spent on particular activities." *Id.* at 948. Additionally, "block

[14] Indeed, Circuit Rule 39-1.8, which provides guidance on how to transfer a request for fees incurred on appeal to the district court, confirms the Court's interpretation of *Cummings*. Rule 39-1.8 provides that "[a]ny party *who is or may be eligible for attorneys fees* on appeal to this Court may, within the time permitted in Circuit Rule 39-1.6, file a motion to transfer consideration of attorneys fees on appeal to the district court or administrative agency from which the appeal was taken." (emphasis added.) Thus, Rule 39-1.8 presupposes a party subject to Rule 39-1.6 is in fact entitled to an award of fees.

[15] The cases cited by Defendants are distinguishable because they concerned circumstances where the fee requesting party prevailed on the merits in some way during the appeal. *See, e.g., Cummings v. Connel*, 402 F.3d 936 (9th Cir. 2005) (court affirmed defendants' liability on appeal, entitling plaintiffs to attorneys' fees at that time); *Yamada v. Weaver*, 2012 WL 6019121, *5-6 (D. Hawaii 2012) (plaintiffs obtained preliminary injunction, which was upheld on appeal*); Nader v. Brewer*, 2009 WL 811450, *1 (D. Ariz. 2009) (Ninth Circuit reversed and remanded an order granting summary judgment, with instructions to enter judgment in favor of plaintiffs). Two district court cases cited by Defendants determined *Cummings* foreclosed a plaintiff's ability to seek fees relating to an appeal even though those plaintiffs did not prevail on the merits of their claims.  *See, Marshall v. Kirby,* 2010 WL 4923486, *7 (D. Nev. 2010); *Lantz v. Kreider*, 2010 WL 2609080 (D. Nev. 2010). However, these Courts did not consider the distinction between *Cummings* and instances where a party does not prevail on the merits in any way.  This Court respectfully disagrees with those decisions.

billing hides accountability and may increase time by 10% to 30% by lumping together tasks." *Yeager v. Bowlin,* Civ. No. 2:08–102 WBS JFM, 2010 WL 1689225, at *1 (E.D. Cal. Apr. 26, 2010) (citing The State Bar of California Committee on Mandatory Fee Arbitration, Arbitration Advisory 03–01 (2003)) (internal quotation marks omitted). Accordingly, "the usage of block billing is fundamentally inconsistent with the lodestar method." *Id.*

The Court has reviewed Plaintiffs' billing records.  By and large, Plaintiffs' billing records identify the general subject matter of their time expenditures and are otherwise sufficiently specific. Moreover, many of the instances of block billing claimed by Defendants do not actually constitute block billing.

Mr. Burbidge's billing practices present a good example of the entries Defendants consider block billing, but the Court has no concerns with how the time was spent.  In most instances, Mr. Burbidge's entries include several tasks -- extremely specific and discrete tasks – and are presented in the aggregate. For example, Defendants challenge Mr. Burbidge's entry on December 9, 2013, in which Mr. Burbidge claims 4.3 hours on the following activities: "Revise and finalize trial briefs; review and analysis of defendants' trial brief; draft and revise response to defendants' trial brief; draft and revise arguments in response to defendants' trial brief." (Santos Decl., Doc. 309, Attach. 9, page 8.) Mr. Burbidge certainly could have broken down this 4.3 hour block into the discrete subtasks, but was under no obligation to do so. *Secalt S.A. v. Wuxi Shenxi Const. Machinery Co., Ltd.,* 668 F.3d 677 (9th Cir. 2012) (The Ninth Circuit has held that even when certain billing entries "list numerous tasks performed over multi-hour spans," it is within the district court discretion to award fees presented in this manner because attorneys are "not required to record in great detail how each minute of his time was expended."). The entry would only be a problem where it "obscure[s] the nature of some of the work claimed."  *Kittok v. Leslie's Poolmart, Inc.,* 687 F. Supp. 2d 943 (C.D. Cal. 2009).

Notwithstanding the following exception, the challenged items are sufficient to meet Plaintiffs' burden of showing reasonable time spent on the activities listed. However, the Court has noticed some entries in Ms. Ansari's time sheets obscure the nature of her work claims. Specifically, the Court finds the following billing entries constitute impermissible block billing, or otherwise lack the specificity necessary:

1      Ms. Ansari

2      7/14/09 (12.1 hours)

3      5/7/10 (16.0 hours)

4      5/17/10 - 5/21/10 (Ms. Ansari claims to have expended 46.3 hours reviewing "additional

5  documents received from ACLU/persons in solidarity.")

6      The Court will reduce these hours by 30%.[16]  *See Welch,* 480 F.3d at 948. The Court

7  finds Plaintiffs' Counsels' remaining fee statements contain the requisite level of specificity and

8  do not constitute impermissible block billing.

9        **iii.      Fees For Unsuccessful Claims**

10      Defendants argue Plaintiffs should not be permitted to receive attorneys' fees for time

11  spent on unsuccessful claims unrelated to Plaintiffs' Section 1983 claim.  Defendants argue

12  these claims include Plaintiffs' unsuccessful *Monell* and supervisory liability claims, as well as

13  former Plaintiff Jennafer Uribe's claims.  Plaintiffs respond that these three claims are related to

14  Plaintiffs' successful claims, because they all revolve around a common core of facts: the

15  shooting of Stephen Willis.

16      In *Hensley,* the Supreme Court explained that, where a plaintiff is partially successful in

17  obtaining the relief sought, a two-part analysis must be applied to determine whether

18  unsuccessful claims may be included in a fee award: (1) "[D]id the plaintiff fail to prevail on

19  claims that were unrelated to the claims on which he prevailed?" and (2) "[D]id the plaintiff

20  achieve a level of success that makes the hours reasonably expended a satisfactory basis for

21  making a fee award?"[17] *Hensle,* 461 U.S. at 434. If the claims are unrelated, "the final fee award

22  may not include the time expended on the unsuccessful claims." *Thorne v. El Segundo,* 802

---

[16] On additional concerning billing entry the Court has noticed is Eric Schweitzer's statement that on March 30, 2009, he spent three hours developing and writing up RICO theories for this case, which he later discussed with Mr. Walker.  (Doc. 299, Attach. 12.)  The Court does not see how the Racketeer Influenced and Corrupt Organizations Act applies to this case in any way. These hours will be excluded.

[17] The Court considers the second *Hensley* prong under the lodestar adjustment analysis *infra. See Stonebrae, L.P. v. Toll Bros., Inc.,* 2011 WL 1334444 (N.D. Cal. 2011) (applying the first *Hensley* step in the initial lodestar calculation; and applying the second step in the lodestar adjustment determination); *see also, Gonzalez v. City of Maywood,* 729 F.3d 1196 (9th Cir. 2013) ("when faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of [excluding non-compensable hours] from a fee application.") (quoting *Gates v. Deukmejian,* 987 F.2d 1392, 1399 (9th Cir. 1992).)

1 F.2d 1131, 1141 (9th Cir. 1986).

2      The Court noted in *Hensley* that "there is no certain method of determining when claims

3 are related or unrelated." *Id*. at 437 n. 12; *See also Thorne*, 802 F.2d at 1141 ("The test for

4 relatedness is not precise."). Typically, the Court explained, related claims "will involve a

5 common core of facts or will be based on related legal theories." *Hensley,* 461 U.S. at 435. In

6 these cases, an attorney's time is "devoted generally to the litigation as a whole, making it

7 difficult to divide the hours expended on a claim-by-claim basis," and "[s]uch a lawsuit cannot

8 be viewed as a series of discrete claims." *Id.*

9      The Ninth Circuit has generously applied *Hensley's* test of relatedness. *See Webb v.*

10 *Sloan*, 330 F.3d 1158, 1169 (9th Cir. 2003). In assessing the issue of relatedness, a court should

11 consider "whether the relief sought on the unsuccessful claim 'is intended to remedy a course of

12 conduct entirely distinct and separate from the course of conduct that gave rise to the injury on

13 which the relief granted is premised.'" *Thorne*, 802 F.2d at 1141 (quoting *Mary Beth. v. City of*

14 *Chicago,* 723 F.2d 1263, 1279 (7th Cir. 1983)). Other factors informing the issue of relatedness

15 are "whether the unsuccessful claims were presented separately, whether testimony on the

16 successful and unsuccessful claims overlapped, and whether evidence concerning one issue was

17 material and relevant to other issues." *Id.*

18      Analyzed under the standards announced in *Hensley* and its progeny, Plaintiffs'

19 successful and unsuccessful claims are "related." Plaintiffs' *Monell* and supervisory liability

20 claims, while seeking to impose liability on separate legal grounds, nonetheless concerned a

21 common core of facts.   In essence, Plaintiffs' sought to prove that Officer Catton's and

22 Astacio's conduct toward Stephen Willis represented a pattern of misconduct by the Fresno

23 Police Department.  While Plaintiffs' failed to make such a showing, it remains that the conduct

24 of Officers Catton and Astacio was the primary conduit through which Plaintiffs sought to make

25 this showing. The relief sought on these unsuccessful claims was not intended to "remedy a

26 course of conduct entirely distinct and separate from the course of conduct that gave rise to the

27 injury on which the relief granted is premised.'" *Thorne*, 802 F.2d at 1141. There is no question

28 that "testimony on the successful and unsuccessful claims would have overlapped, and evidence

concerning one issue was material and relevant to other issues." *Id; see also, McCown v. City of*

*Fontana*, 565 F.3d 1097, 1103 (9th Cir. 2009) (not an abuse of discretion to find that plaintiff's unsuccessful wrongful arrest and *Monell* claims and successful excessive force claim were related because each claim, "though brought on the basis of different legal theories against different defendants, arose from a common core of facts, namely [plaintiff's] arrest").

Similarly, former Plaintiff Uribe's claims are related under *Hensley*. Plaintiffs' successful claims and Uribe's unsuccessful claims all revolve around a singular course of conduct: Officer Catton's and Officer Astacio's decision to use deadly force against Stephen Willis, and the manner in which they executed that decision. For example, a key component of Uribe's claims was that Defendant Officers were firing in inappropriate directions. Similarly, a component of Plaintiffs' successful claims was that the Defendants Officers were firing at each other and shooting in the direction of various apartments. Another other key component of Ms. Uribe's claims was that she was traumatized by her proximity to her boyfriend's (Stephen's) death. This second claim necessarily shares a common core of facts with Plaintiffs' successful claims, which sought to hold Defendants liable for causing Stephan's death. In sum, Ms. Uribe's claims were not intended to remedy a course of conduct distinct and separate from the course of conduct that gave rise to Plaintiffs' successful claims. *Thorne*, 802 F.2d at 1141.

Further, the testimony for Ms. Uribe's claims and Plaintiffs' successful claims overlapped, and evidence concerning Uribe's claims was material and relevant Plaintiffs' claims. The testimony offered by Officers Catton and Astacio would have been equally applicable to Ms. Uribe's claims. Indeed, Defendants even called Ms. Uribe to testify in order to establish that Stephen was drinking and there was yelling before shots were fired, just to name a couple relevant overlaps of testimony.

Based on the forgoing, Plaintiffs' successful and unsuccessful claims are related under *Hensley* and should be included in the initial lodestar calculation.[18]

---

[18] To be sure, the fact that significant hours were spent on claims that did not produce any results remains relevant under *Hensley*. As noted above, even where a claim is related, the Court, under the second prong of *Hensley*, must determine whether the relief obtained justified the expenditure of attorney time. *Hensley*, 461 U.S. at 435 n. 11. If the plaintiff received only partial or limited success overall, the lodestar may be subject to a reduction based on "the degree of success obtained." *Id*. at 436. Whether such an overall reduction (as opposed to deducting specific hours for time spent on a particular claim) is warranted discussed *infra*. No specific deduction, however, shall be taken for time spent on the unsuccessful claims.

### 4.      Plaintiffs' Lodestar

Based on the hourly rates and hours stated above, the lodestar in this case is calculated as follows:

| Attorney | Requested Hours | Hours Deducted | Adjusted Hours | Reasonable Rate | Unadjusted Lodestar |
|---|---|---|---|---|---|
| Walter H. Walker | 909.74 | 2.35 | 907.39 | $380.00 | $344, 808.20 |
| Peter J. Koenig | 691.7 | 0.00 | 691.7 | $380.00 | $262,846.00 |
| Ellen Lake | 247.3 | 0.00 | 247.3 | $380.00 | $93,974.00 |
| Richard Berman | 78.58 | 3.83 | 74.75 | $350.00 | $26,162.50 |
| Eric Schweitzer | 48.1 | 3.75 | 44.35 | $300.00 | $13,305.00 |
| Clarissa Kerns | 118.7 | 0.00 | 118.7 | $250.00 | $29,675.00 |
| Rana Ansari-Jaberi | 835.7 | 22.32 (74.4 x .3) | 813.48 | $250.00 | $203,370.00 |
| Beau R. Burbidge | 484.3 | 0.00 | 484.3 | $250.00 | $121,075.00 |
| Jess Ibatuan | 30.8 | 3.5 | 27.3 | $100.00 | $2,730.00 |
| Jocelyn Alvarez | 63.1 | 1.9 | 61.2 | $100.00 | $6,120.00 |

**Total Unadjusted Lodestar:**          **$1,104,065.70**

### 5.      Adjustment to Lodestar

The lodestar figure is presumptively reasonable. *See Dague,* 505 U.S. at 562 ("We have established a 'strong presumption' that the lodestar represents the 'reasonable' fee[.]"); *Gonzalez,* 729 F.3d at 1202 ("The product of this computation—the "lodestar figure"—is a "presumptively reasonable" fee under 42 U.S.C. § 1988."). However, "in rare cases, a district court may make upward or downward adjustments to the presumptively reasonable lodestar on the basis of those factors set out in *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 69–70 (9th Cir. 1975), that have not been subsumed in the lodestar calculation."[19] *Camacho,* 523 F.3d at

---

[19] Those factors to be considered in making any adjustment to the presumptively reasonable lodestar include: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the

31

1   982. Generally, the burden of justifying a deviation rests on the party proposing it. *See Blum,*

2   465 U.S. at 898 (stating that "[t]he burden of proving that [an upward] adjustment is necessary

3   to the determination of a reasonable fee is on the fee applicant").

4       Plaintiffs argue there should be an upward adjustment to the lodestar, while Defendants

5   argue there should be a downward adjustment to the lodestar. The Court addresses each

6   argument in turn.

### i.  An Upward Adjustment Is Not Warranted

8       Plaintiffs argue an upward adjustment to the lodestar is warranted in this case, because

9   this case "was a highly undesirable one due to the expense and difficulty of proving a

10  constitutional violation against the defendant officers." Pls.' Mot., Doc. 299, Attach. 1, 29: 14-

11  16. Plaintiffs also note the substantial out-of-pocket expenses required by this case, the

12  significant amount of time required by this case which precluded Plaintiffs' counsel from other

13  work, and the high risk that they would never be compensated for either their time or costs. *Id.*

14  at 24: 16-24. Defendants, without making any specific argument under *Kerr* or *Hensley,*

15  generally argue an enhancement is not warranted.

16      No fee enhancement is warranted here. By and large, the skill of counsel, the difficulty

17  and novelty of the underlying legal issues, and the contingent nature of the fee award are

18  already baked into the unadorned lodestar. Counsel's skill is evidenced by its sizeable hourly

19  rates. The difficulty and novelty of the underlying legal issues are reflected in the significant

20  number of hours logged over the course of this litigation, and in the skill (and thus the rate) of

21  the attorneys working on Plaintiff's behalf. The lodestar also accounts for the contingent nature

22  of this case by, among other things, the high number of hours logged by Plaintiff's counsel.

23  Consideration of the relevant *Kerr* factors was subsumed in the lodestar calculation, and there is

24  no need to re-evaluate them here. *See Secalt S.A. v. Wuxi Shenxi Const. Mach. Co., Ltd.,* 668

25  F.3d 677, 689 (9th Cir.2012) (where appropriate, district court may adjust the lodestar based on

26  case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or
27  the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of
     the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with
28  the client, and (12) awards in similar cases. *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 69–70 (9th Cir. 1975).
     The Court has considered each of these factors, to the extent they have not already been considered in the initial
     lodestar computation, in making the following adjustment to Plaintiffs' lodestar.

the *Kerr* factors "that have not been subsumed in the lodestar calculation.")

### ii.    A Downward Adjustment Is Warranted

"[W]hen faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of [excluding non-compensable hours] from a fee application." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1203 (9th Cir. 2013) (quoting, *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir.1992).[20]   For example, when confronted with a massive fee application, courts may make across-the-board adjustments for fees that are "excessive, redundant, or otherwise unnecessary." *Gonzalez*, 729 F.3d at 1203.

However, when a district court decides that a percentage cut (to either the lodestar or the number of hours) is warranted, it must "set forth a concise but clear explanation of its reasons for choosing a given percentage reduction." *Gates*, 987 F.2d at 1400 (internal quotation marks omitted). The Ninth Circuit recognizes one exception to this rule: "[T]he district court can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation." *Moreno*, 534 F.3d at 1112. In all other cases, however, the district court must explain why it chose to cut the number of hours or the lodestar by the specific percentage it did. *See, e.g., Schwarz v. Sec'y of Health and Human Servs.*, 73 F.3d 895, 899–900, 906 (9th Cir. 1995) (affirming 75% cut to the number of hours billed where plaintiff succeeded on only 25% of his claims); *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) (affirming 20% cut to hours where fee applicant block billed, because court relied on third-party report that block billing increased number of hours by 10–30%).

In *Hensley*, the Supreme Court acknowledged that mixed results may warrant a downward adjustment to the lodestar. *Hensley* emphasized that the plaintiff's degree of success (i.e., the "results obtained") is a central consideration as to whether the lodestar should be adjusted. *Hensley*, 461 U.S. at 434. If the plaintiff succeeded on some claims but not others, and the unsuccessful and successful claims are related, then the court should look at "the

---

[20] "Due to the associative property of multiplication [(A * B) * C = A * (B * C)] it makes no difference in terms of the final amount to be awarded whether the district court applies the percentage cut to the number of hours claimed, or to the lodestar figure." *Gonzalez*, 729 F.3d at 1203, n. 2.

significance of the overall relief obtained by the plaintiff." *Id.* at 435. If the plaintiff obtained excellent results, then it should be awarded a fully compensatory attorney's fee. *See Id.* If the plaintiff had only partial or limited success, then a fully compensatory fee may be excessive. *See Id.* at 436. For example, a reduced fee award would be appropriate if, even though the plaintiff achieved significant relief, it was still "limited in comparison to the scope of the litigation as a whole." *Id.* at 440. If the plaintiff achieved only partial or limited success, then the court may "reduce the award to account for the limited success." *Id.* at 436–37.

   *Hensley* cautioned, however, that "it is not necessarily significant that a prevailing plaintiff did not receive all the relief requested. For example, a plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time." *Hensley,* 461 U.S. at 435 n. 11. The Ninth Circuit has likewise held that "courts should not reduce lodestars based on relief obtained simply because the amount of damages recovered on a claim was less than the amount requested.... Failure to obtain all relief requested for a claim on which the plaintiff prevailed should not deprive plaintiff's attorney of a reasonable hourly fee for hours needed to obtain the relief." *Quesada v. Thomason,* 850 F .2d 537, 539–40 (9th Cir. 1988); *See also, Dang*, 422 F.3d at 813 ("a plaintiff does not need to receive all the relief requested in order to show excellent results warranting the fully compensatory fee."); *Sorensen v. Mink,* 239 F.3d 1140, 1147 (9th Cir. 2001) (accord).

   Based on the above standards, a downward adjustment of thirty-five percent (35%) is warranted.  At the outset, the Court notes it has postponed consideration of some of the *Kerr* factors ordinarily baked into the initial lodestar computation due to the massive size of the fee petition. *Gonzalez,* 729 F.3d at 1203. For example, three of the relevant *Kerr* factors that justify a modest downward adjustment concern the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly. *Kerr,* 526 F.2d 69–70.

   By and large, this Court has no problem with the substantial number of hours logged in this case.  This case was vigorously defended from the outset, including multiple motions to dismiss, various discovery motions, a motion for summary judgment, an appeal to the Ninth

Circuit and subsequent remand, motions for reconsideration, a ten-day jury trial and approximately ten trial-related motions. (Doc. 10, 19, 41, 44, 73, 78, 85, 160, 173, 176, 178, 224, 244, 245, 257, 265, 299.) Defendants are well within their rights to mount such a powerful defense. But if Plaintiffs prevail, it should come as no surprise that Plaintiffs' attorneys' fees will be considerable.

The Court's concerns, however, are basic notions of efficiency, duplicative work, unsuccessful claims, and whether all the hours presented in the fee petition could have reasonably been billed to a paying client. The Court's review of Plaintiffs' billing records reveals multiple attorneys often working on the same assignment, which necessarily results in inefficiency and duplicative fees. The Court is mindful that "necessary duplication—based on the vicissitudes of the litigation process—cannot be a legitimate basis for a fee reduction." *Moreno*, 534 F.3d at 1113. To the extent such duplication was not necessary, however, it is properly included as part of the thirty-five percent overall reduction to Plaintiffs' lodestar.

Similarly, the Court frequently noticed instances where the amount of time spent on particular project appears excessive and could not have reasonably been billed to a paying client.   For example, Plaintiffs' attorneys, on many occasions, billed over four hours "researching" a relatively ordinary legal standard.  The Court recognizes that, "[b]y and large, the [district] court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Moreno,* 534 F.3d at 1112. This Court, however, sees a great deal of Section 1983 litigation, and is familiar with the amount of time reasonably competent counsel should expend on certain matters. To the extent Plaintiffs' attorneys' bills are excessive, this consideration is properly included in the thirty-five percent overall reduction to Plaintiffs' lodestar.

The greatest consideration, however, is Plaintiffs' overall success in this case. The core of Plaintiffs' suit has always been their contention that Defendants acted improperly in killing their son. The jury agreed with them, holding under Section 1983 that Defendants used unconstitutionally excessive force, and that under California law, Defendants wrongfully caused Stephen's death. Plaintiffs received a net judgment in excess of three-hundred thousand dollars. The overall relief obtain by Plaintiffs can be considered significant.

1    Nonetheless, Plaintiffs' limited success cannot be overlooked.  Plaintiffs initially sought
2   to hold Defendants liable under *Monell* and supervisory liability theories. These theories failed.
3   Plaintiffs also sought to assert claims on behalf of Stephen's former girlfriend, Ms. Uribe.
4   Those claims failed.   Plaintiffs argued to the jury that the entire incident, from the initial
5   encounter to the final shot(s), violated Plaintiffs' constitutional rights.   The jury rejected this
6   argument, and found only Officer Catton's final shots created liability.  Indeed, Officer Astacio
7   was not held liable for any of Plaintiffs' injuries.  Most importantly, Stephen Willis was found
8   to be eighty percent responsible for his own death.  Thus, despite the varying conduits through
9   which Plaintiffs sought to challenge Defendants' actions, the lone manner in which Plaintiffs
10   succeeded is marred by a verdict that found Stephen was four times more at fault for his injuries
11   than Defendants.[21]   Accordingly, the Court finds that Plaintiffs' success was very "limited in
12   comparison to the scope of the litigation as a whole." *Hensley,* 461 U.S. at 440.[22]

13    At the same time, Plaintiffs' limited success must be viewed in light of the benefit they
14   obtained for the public. *McCown v. City of Fontana,* 565 F.3d 1097, 1105 (9th Cir. 2009). ("In
15   setting a reasonable fee award ... [a] district court should consider whether, and to what extent,
16   [the plaintiff's] suit benefitted the public.")   The Ninth Circuit has consistently held that
17   successful excessive force lawsuits "act as a deterrent to law enforcement and serve the public
18   purpose of helping to protect the plaintiff and persons like him from being subjected to similar
19   unlawful treatment in the future." *Morales,* 96 F.3d at 365; *See also, Guy,* 608 F.3d at 590;
20   *Mahach-Watkins v. Dupree,* 593 F.3d at 1061-62. Even considering these achievements,
21   however, the results were not sufficient to warrant full payment according to the lodestar.

22    For the most part, it is not possible to parse out the specific time spent on Plaintiffs'
23   unsuccessful allegations. Most of this litigation focused generally on whether Defendants

---

[21] The Court notes that Plaintiffs voluntarily abandoned their Fourteenth Amendment claims just before the case
went to the jury.  These claims remained viable; however, Plaintiffs abandoned them to avoid confusion to the jury
in the verdict form.  The Court does not hold Plaintiffs' failure to succeed on the Fourteenth Amendment claim
against them, but nonetheless notes that Plaintiffs' Fourteenth Amendment claim was one of many claims that did
not contribute to the success Plaintiffs ultimately obtained.

[22] This Court does not suggest a reduction is warranted merely because "plaintiff[s] did not receive all the relief
requested." *Hensley,* 461 U.S. at 435 n. 11. The disparity between Plaintiffs request for fifteen million dollars and
the judgment in Plaintiffs' favor of a little over three hundred thousand dollars is at most a negligible consideration.

should be held liable for Stephen's death, and Plaintiffs prevailed in that regard. But because of the many ways in which Plaintiffs' claims failed, a significant amount of time spent on this case was not reasonably necessary to obtain the relief that was ultimately obtained. While a plaintiff need not obtain all requested relief in order to achieve excellent results, *see Dang v. Cross*, 422 F.3d 800, 813 (9th Cir.2005), there is too great a mismatch between the results obtained and the relief sought to warrant a full award here.

Having considered the relevant *Kerr* factors not already considered in the initial lodestar computation, and in light of the limits on plaintiff's success, a thirty-five percent lodestar reduction is warranted. This adjustment reflects that while the enormous time spent on this litigation was in some respects out of proportion to the results ultimately obtained, counsel nonetheless achieved meaningful success for their client and the public. If a district court has discretion to impose an across-the-board ten percent fee "haircut" with little to no explanation, *Moreno v. City of Sacramento*, 534 F.3d at 1112, even where the plaintiff achieves "excellent" results, *id.* at 1114, it is reasonable here to reduce plaintiff's overall fees by thirty-five percent, for the reasons described above. *See Harris v. Marhoefer,* 24 F.3d 16, 18-19 (9th Cir.1994) (affirming district court's 50% reduction of attorneys' fees in civil rights case based on plaintiff's partial success); *Mahach-Watkins,* 593 F.3d at 1063 (affirming district court's decision to reduce fees by 80% due to limited success).

Accordingly, Plaintiffs' adjusted lodestar figure is as follows:

$1,104,065.70 − $386,422.96 ($1,104,065.70 * .35) = **$ 717,642.74**

## C.    Plaintiffs' Costs

"Under § 1988, the prevailing party may recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Dang,* 422 F.3d at 814 (citations and internal quotation marks omitted). "Such out-of-pocket expenses are recoverable when reasonable." *Id.*

Plaintiffs seek $197,490.57 in costs. Defendants present numerous arguments attacking Plaintiffs' costs.  Several of these arguments do not merit a detailed analysis.[23] Two arguments

---

[23] Defendants argue the Court should exclude $11,503.27 in costs relating to witnesses that did not testify at trial. This argument is rejected for the same reasons discussed above, *supra* fn. 10. Defendants argue the Court should

1   that merit a more in-depth discussion concern Plaintiffs' costs incurred on appeal and Plaintiffs'

2   costs with respect to expert witnesses.

3       **1.       Costs Plaintiffs Incurred on Appeal**

4       Plaintiffs seek costs relating to their appeal to the Ninth Circuit.[24] Defendants argue

5   Plaintiffs cannot recover costs incurred on appeal, and seek to exclude $37,861.44 – the costs

6   Plaintiffs' incurred on appeal. Defendants base this argument, in part, on an interpretation of

7   Ninth Circuit Rules and *Cummings,* which the Court has already rejected *supra.*  Plaintiffs do

8   not advance any other argument in support of their ability to obtain costs that differ from their

9   arguments in support of fees.

10      Defendants, however, raise an argument that distinguishes the fee analysis from the cost

11  analysis.  In the Ninth Circuit's Order remanding Plaintiffs' claims, the Ninth Circuit stated that

12  "[e]ach party shall bear its own costs." (Doc. 155, p. 6.) Presumably, Ninth Circuit was

13  referring to the costs the parties incurred on appeal.  This Court will not reconsider the Ninth

14  Circuit's Order. Accordingly, Plaintiffs' costs on appeal in the amount of $37,861.44 are

15  excluded.

16      **2.       Expert Costs**

17      Defendants contend that plaintiff may not recover expenses under Section 1988 for

18  expert witness fees. By Defendants' estimation, Plaintiffs seek $53,776.93 in costs relating to

19  expert witness fees. Plaintiffs do not offer any argument concerning their entitlement to expert

20  fees as costs.

21      Subsection 1988(c) permits a prevailing plaintiff in an action under Section 1981 or

22  ─────────────────────────────

exclude $9,538.71 in costs relating to Plaintiffs' use of a private investigator.  This argument is rejected for the
23  same reasons discussed above, *supra* fn. 10.  Defendants present numerous conclusory arguments concerning costs
associated with legal research, lodging, shipping, parking, gas, mileage. These arguments are unsupported and
24  otherwise meritless. *See Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1216 n. 7 (9th Cir.1986 (noting that "out-
of-pocket expenses incurred by an attorney which would normally be charged to a fee paying client are recoverable
25  as attorney's fees" (emphasis added)); *Dang,* 422 F.3d at 814 (same). The Court will not exclude these costs.

26  [24] In its Reply Brief, Plaintiffs acknowledge they improperly sought double recovery for Ms. Lake's fees.
Specifically, Plaintiffs note they sought to recover Ms. Lake's reasonable attorneys' fees, while also seeking to
recover the retainer Plaintiffs paid to Ms. Lake as costs.  Plaintiffs agreed to withdraw their request for $25,000 in
27  costs, which was supposed to represent the amounts paid to Ms. Lake previously sought as costs.  However, the
Court's review of Plaintiffs costs indicates they are seeking fees paid to Ms. Lake as costs in the amount of
28  $30,000.  It matters not, because as the Court will grant Defendants' request to exclude all costs associated with
Plaintiffs' appeal in the amount of $37,861.44.

1   1981(a) to recover expert fees. "However, a prevailing plaintiff may not recover expert fees in

2   an action under Section 1983." *Deocampo v. Potts,* 2: 06-cv-1283-WBS-CMK, 2014 WL

3   788429 at *14 (E.D. Cal. Feb. 25, 2014), (citing *W. Va. Univ. Hosps. v. Casey,* 499 U.S. 83, 102

4   (1991), *overruled on other grounds* by the 1991 Civil Rights Act); *See also, Ruff v. County of*

5   *Kings,* 700 F.Supp.2d 1225, 1243 (E.D. Cal. 2010) (noting that "cases are uniform that Section

6   1988(c) does not apply to a Section 1983 action").

7         In *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 439, 107 S.Ct. 2494, 96

8   L.Ed.2d 385 (1987), the Supreme Court held that expert witness fees are only recoverable

9   pursuant to a contract or explicit statutory authority. *In West Virginia University Hospitals v.*

10  *Casey*, the Supreme Court addressed whether expert fees in civil rights litigation may be shifted

11  to the losing party pursuant to Section 1988. The Supreme Court found that where Congress had

12  intended to provide for the recovery of expert fees, it specifically provided for such recovery

13  and ruled that Section 1988's provision for a "reasonable attorney's fee" did not allow for the

14  recovery of expert witness fees. *W. Va. Hosps.,* 299 U.S. at 115-6. Following that decision, 42

15  U.S.C. § 1988(c) was enacted in 1991 to expressly provide: "In awarding an attorney's fee under

16  subsection (b) of this section in any action or proceeding to enforce a provision of section 1981

17  or 1981a, the court, in its discretion, may include expert fees as part of the attorney's fee."

18        Here, Plaintiff's action was based on Section 1983, not Section 1981 or Section 1981a.

19  Plaintiff cites no authority that has permitted an award of expert witness fees in a Section 1983

20  action pursuant to Section 1988(c), and existing authority this Court has located is to the

21  contrary. The Court will therefore exclude the $52,776.93 for expert witness fees.

22        Having reviewed the remainder of the billing entries submitted by plaintiffs, the court

23  determines that the expenses listed are reasonable and of the sort that would ordinarily be

24  charged to a fee-paying client. *See Dang,* 422 F.3d at 814. Accordingly, the Court will permit

25  plaintiffs to recover **$106,852.20** in expenses.[25]

26  **D.    Defendants' Bill of Costs**

27        Both Federal Rule of Civil Procedure 54(d)(1) and Local Rule 292(f) permit a prevailing

28  ---

[25] The majority of Plaintiffs' remaining costs relate to trial exhibits and technology. Defendants have not objected to these costs, thus, the Court will not address whether they are properly included in an award of costs.

party to tax costs to the losing side. Rule 54(d)(1) "creates a presumption in favor of awarding costs to a prevailing party, but vests in the district court discretion to refuse to award costs." *Ass'n of Mex.-Am. Educators v. California*, 231 F.3d 572, 591 (9th Cir. 2000) (en banc). Both the Ninth Circuit and numerous judges in this district have held that the court may require a party to bear its own costs "[i]n the event of a mixed judgment." *Amarel v. Connell,* 102 F.3d 1494, 1523 (9th Cir.1996); *see also, e.g., Tubbs v. Sacramento Cnty. Jail,* 258 F.R.D. 657, 659 (E.D. Cal. 2009); *Endurance Am. Specialty Ins. Co. v. Lance–Kashian & Co*., Civ. No. 1:10–1284 LJO DLB, 2011 WL 6012213, at *2 (E.D. Cal. Dec. 1, 2011) ("Given the mixed judgment and good faith dispute over difficult issues, an award of costs is unwarranted and each side is to bear its respective costs.").

Here, the jury found that two of the three defendants who went to trial were liable under Section 1983. And while defendants were successful in defending against some claims and defenses, Plaintiffs prevailed on the core theory of their claims, i.e., Defendants use of excessive force wrongfully caused Stephen's death. Defendants' partial success does not mandate an award of costs. *See Tubbs,* 258 F.R.D. at 661 (denying costs to the defendants in a civil rights action when the plaintiff only prevailed on some claims but not others); *Cole v. Munoz,* Civ. No. 1:09–00476 SAB, 2013 WL 3892955, at *2 (E.D. Cal. July 26, 2013) (declining to award costs when plaintiff prevailed on excessive force claims against two of the three defendants); *Deocampo v. Potts,* 2014 WL 788429 (E.D. Cal. 2014) (awarding Plaintiffs' costs, and declining Defendants' costs, where "two of the three defendants who went to trial were liable under Section 1983.") Accordingly, the court will require defendants to bear their own costs in this action.

*/./././*

1

**CONCLUSION**

2

For the reasons discussed herein, the Court ORDERS as follows:

3

  1.   Plaintiffs' Motion for Attorney's fees and costs is GRANTED IN PART. The

4

       Court Awards Plaintiffs  **$ 717,642.74** in reasonable attorneys' fees, and

5

       **$106,852.20** in costs and expenses;

6

  2.   Defendants shall bear their own costs.

7

8

IT IS SO ORDERED.

9

Dated:   **July 17, 2014**              /s/ *Barbara A. McAuliffe*

10

                                        UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

41