# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIS WILLIS, MARY WILLIS, INDIVIDUALLY AND SUCCESSORS IN INTEREST TO STEPHEN WILLIS, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF FRESNO, OFFICER GREG CATTON, and OFFICER DANIEL ASTACIO, <br><br> Defendants. | Case No. 1:09-CV-01766-BAM <br><br> **FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

## I. INTRODUCTION

This matter is currently before the Court following a stipulated bench trial and oral argument by counsel on November 6, 2017. Having carefully reviewed the trial transcripts, the parties' briefs, as well as the Court's entire file, and after hearing the arguments of counsel, the Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52.

## II. BACKGROUND

### A. Procedural History

#### 1. **The Jury's Verdict**

On March 28, 2009, Stephen Willis was fatally shot by Defendants Greg Catton and Daniel Astacio, who were Officers with the Fresno Police Department at the relevant time. Stephen Willis's parents, Chris and Mary Willis ("Plaintiffs"), allege that Stephen Willis's

Fourth Amendment rights were violated as a result of the shooting. Plaintiffs further allege that Officer Catton and Officer Astacio were negligent in causing the death of Stephen Willis.

Following over four years of extensive litigation and a ten-day jury trial in December 2013, the jury returned a verdict finding that Officer Catton used excessive force in violation of Stephen's Fourth Amendment rights, and Officer Catton was negligent in causing Stephen's death. The jury found Officer Astacio was not liable on Plaintiffs' Fourth Amendment and negligence claims. On Plaintiffs' Fourth Amendment claim, the jury awarded $1 in nominal damages, and Plaintiffs' were not awarded any compensation for Stephen's pre-death pain and suffering.[1] On Plaintiffs' wrongful death claim, the jury awarded funeral and burial expenses in the amount of $10,224.00, and further awarded Plaintiffs $1,500,000.00 in compensatory damages. The jury also made a finding of comparative negligence, and determined that Stephen was eighty percent responsible for his injuries. On January 31, 2014, the Court entered judgment in favor of the Plaintiffs, and awarded Plaintiffs $1 on Plaintiffs' Fourth Amendment claim, and $302,044.80 (20% of $1,510.224.00) on Plaintiffs' wrongful death claim. (Doc. 251.)

### 2. **Intervening Decision of *Chaudhry***

After the jury trial in this case, the Ninth Circuit decided *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105 (9th Cir. 2014). *Chaudhry* held that "the prohibition against pre-death pain and suffering damages limits recovery too severely to be consistent with 28 U.S.C. section 1983's deterrence policy" in matters where the decedent's death was caused by the violation of federal law. In *Chaudhry*, the decedent, an autistic man, was shot and killed by a Los Angeles Police Officer. The jury awarded the victim's family $700,000 for the wrongful death claim and $1,000,000 for pre-death pain and suffering. Judgment was entered for $1,700,000, but the trial court struck the award for pre-death pain and suffering as barred in a wrongful death action. The Ninth Circuit reversed the district court on the pain and suffering award because the state laws preclusion of pre-death pain and suffering was: (1) inconsistent

---

[1] Prior to trial, this Court granted Defendants' motion in limine and precluded any evidence of Stephen's pre-death pain and suffering as inconsistent with this District's limitation on such damages. (Doc. 176, Defendant's Motion; Doc. 189 Court's Tentative Ruling; Doc. 197, Order on Motions in Limine.)

with the deterrent goal of §1983; (2) it incentivized death over severe injury, and (3) was particularly unfair to typical §1983 Plaintiffs like prisoners and targets of police brutality and profiling.

### 3. The Appeal in this Case and the Proceedings Following Remand

On appeal from the jury's verdict in this case, the Ninth Circuit affirmed all aspects of the trial court proceedings, except this Court's refusal to permit pre-death pain and suffering damages. The Ninth Circuit issued an opinion vacating this Court's judgment on Plaintiffs' 28 U.S.C. §1983 claim and remanded the case so that Plaintiffs "may present evidence in support of their claim for pre-death pain and suffering damages," in light of the intervening change of controlling law established in *Chaudhry*. *See Willis v. City of Fresno*, 680 Fed.Appx. 589, 592 (March 1, 2017). The Ninth Circuit further specified that on remand "plaintiffs will be limited to recovering only those pre-death pain and suffering damages caused by Officer Catton's final shot or shots." *Id.*

On remand, the parties stipulated to a bench trial of the damages with briefing and based upon evidence already in the record. Plaintiffs filed their opening briefs on October 2, 2017. Defendants filed their responsive brief on October 25, 2017. Plaintiffs filed a reply on November 1, 2017. The Court heard oral argument on November 6, 2017. Plaintiffs appeared by Counsel Walter Walker, in person and by Peter Koenig, by telephone. Defendants appeared by Counsel Mildred O'Linn and Lynn Carpenter, both in person.

### B. The Parties' Arguments Regarding Pre-Death Pain and Suffering

In support of their claim for pre-death pain and suffering, Plaintiffs argue that a substantial amount of damages should be awarded for the purpose of deterrence. Plaintiffs argue that §1983's policy of deterrence cannot be fostered with a minimal award for pre-death pain and suffering damages. Plaintiffs argue that Section 1983's critical concerns are compensation of the victims of unconstitutional action and deterrence of like misconduct in the future. Plaintiffs seek a pre-death award of $1,000,000 for Stephen's pain and suffering, just as was awarded in *Chaudhry*. Plaintiffs cite evidence that Stephen survived for 30 to 60 seconds after Officer Catton's last shots. (Doc. 278, Catton Transcript, p. 901-902.) Plaintiffs argue

that Defendants destroyed the evidence of Stephen's pain and suffering with his death, and cannot be rewarded for evidence destruction. Plaintiffs argue Stephen was a young man wounded and defenseless as he felt his life ebbing away. Stephen, age 23, would be experiencing not just the physical pain of his gunshot wounds, but the fear, anxiety, and mental anguish that anyone suffers when aware that his life is ending under such physically exacting circumstances.

Defendants argue that a minimal award, if any award, is warranted for the few seconds of time Stephen may have survived. Defendants argue that Plaintiffs must establish Stephen was conscious for an "appreciable amount of time" and that he cannot be awarded pain and suffering "substantially contemporaneous with death." Defendants cite numerous cases which hold that a person must survive for an appreciable amount of time to be awarded any pain and suffering. Defendants argue that Plaintiffs cannot prove Stephen was conscious for any appreciable period after the final shot, and it is purely guess work to divide damages between the justified gun shots and the unjustified gunshots. It is speculative to separate the pain and suffering among the various bullet wounds and even Dr. DiMaio was unable to determine which bullet wounds were the last. Defendants also argue that Stephen was intoxicated, with a blood alcohol of .29, such that he had an increased tolerance to pain or was too intoxicated to feel pain.

### III.  FINDINGS OF FACT

The fatal encounter between Stephen Willis and Officers Astacio and Catton and the facts leading up to the "last shot(s)" by Officer Catton are well known to the parties. These facts were the subject of the jury trial and the appeal to the Ninth Circuit, and are memorialized in numerous decisions of this Court and the Ninth Circuit. Therefore, the Court will not recount those facts here. Rather, and as required by the Ninth Circuit's remand, the Court now decides the pertinent facts as to Stephen's pain and suffering, starting from the final shot(s).

///

///

///

1. Stephen Willis was alive when Officer Catton fired his final shot(s). The jury found excessive force with Officer Catton's last shot(s).[2]

2. The Ninth Circuit affirmed the jury's verdict of excessive force by Officer Catton.

3. Stephen's final position was lying on his left side in an exaggerated fetal position. (Doc. 277, Jacobo Transcript, p. 574-75, 588-89, 594.)

4. Officer Catton cannot recall if he fired one final shot or 2 shots when Stephen Willis was lying on his left side. (Doc. 278, Catton Transcript, p. 851.)

5. At the time of the final shots, Officer Jacobo saw multiple flashes from Officer Catton's gun. (Doc. 277, Jacobo Transcript, p. 575.)

6. There was a brief period of time, possibly several seconds, between when Officer Jacobo saw Officer Catton fire the last shots and to when Officer Jacobo moved towards and approached Officer Catton's position. (Doc. 277, Jacobo Transcript, p. 574, 589, 594.)

7. Once Officer Jacobo got to Officer Catton, Officer Jacobo then looked over the car and saw Stephen Willis on his left side, in an exaggerated fetal position, "rolling" or "slowly moving." (Doc. 277, Jacobo Transcript, p. 574-75, 588-89, 594.)

8. Following the final shot(s), Stephen Willis was slowly moving.

9. Officer Jacobo and Officer Catton had a brief conversation − Jacobo listening to what Officer Catton was saying about the gun and the holes in Stephen's back. (Doc. 277, Jacobo Transcript, p. 575, 594.)

10. Officer Jacobo observed Stephen's body slowly moving and watched him until he stopped moving. (Doc. 277, Jacobo Transcript, p. 574:15.)

11. More seconds elapsed until Officer Jacobo and Officer Cerda, who had already joined Officers Jacobo and Catton, approached Stephen Willis. (Doc. 277, Jacobo Transcript, p. 594-95.)

---

[2] The Court rejects Defendants' arguments that Stephen was already dead at the moment of the final shots. At trial, Defendants took the position that Stephen was alive and a threat to officer safety, necessitating Officer Catton's final shots. Despite this argument at trial, the jury found excessive force from the final shots, which means the jury implicitly found Stephen was alive at the moment of the final shots. Therefore, this Court concludes Stephen was alive at the moment of the final shots. Moreover, as a matter of law, the Court finds that excessive force cannot be inflicted upon a dead person. (See Doc. 237, Jury Instruction no. 20.)

12. Officer Catton believes it was 30 to 60 seconds from the time that he fired the last rounds and Officers Cerda and Jacobo came around to Officer Catton's position and then approached Stephen Willis and secured Stephen. (Doc. 278, Catton Transcript, p. 901-902.)

13. Officer Cerda and Officer Jacobo approached Stephen, and Officer Cerda rolled Stephen over. (Doc. 277, Jacobo Transcript, p. 597; Doc. 280, Cerda Transcript, p. 1513 ("We came to the body and we moved the body to search him for weapons and take him into custody.")).

14. Once Officers Jacobo and Cerda reached Stephen, "we moved the body over from the position that he was and rolled him on to his back." (Doc. 280, Cerda Transcript, p. 1514.)

15. Once rolled onto his back, Officer Cerda could tell Stephen was not breathing. (Doc. 280, Cerda Transcript, p. 1533-34.)

16. Officer Cerda saw that Stephen's "pupil was blown" and Officer Cerda knew that Stephen was "clearly dead." (Doc. 280, Cerda Transcript, p. 1533-34.)

17. It cannot be determined which shot or shots that struck Stephen was the final fatal shot.

18. Stephen Willis's body was compromised by all of the shots which struck his body, but most were treatable. (Doc. 279, Gopal Transcript, p. 1157.)

19. There were multiple bullet wounds, but it cannot be determined the order in which each of the bullets struck Stephen. (Doc. 279, Gopal Transcript, p. 1167.)

20. None of the wounds would have been instantly incapacitating. (Doc. 281, DiMaio Transcript, p. 1662.)

21. Bullet Wounds C and F are into the back of Stephen Willis. (Doc. 281, DiMaio Transcript, p. 1657:1-4.)

22. Bullet wounds C and F are consistent with Stephen Willis's final position, on the ground, lying on his left side. (Doc. 281, DiMaio Transcript, p. 1661-1662.)

23. Bullet wound B hit Stephen Willis from the left side and went through the stomach, diaphragm and through the spleen. (Doc. 279, Gopal Transcript, p. 1151-52.)

24. The injury to the spleen would cause rapid or eventual death if medical attention were not provided, but it is an injury which a person could survive with treatment. (Doc. 279, Gopal Transcript, p. 1151-52.)

25. Wound F is in the back sacral bone of the pelvis and this would cause a lot of pain, but is not a fatal wound. (Doc. 279, Gopal Transcript, p. 1156-57.)

26. Wound C is in the right back side and traveled in a straight-line line and went into the heart. (Doc. 279, Gopal Transcript, p. 1156; Doc. 281, DiMaio Transcript, p. 1662.)

27. With this type of heart wound, Wound C, a person can be conscious for 15 seconds, and probably longer, before the person bleeds out. (Doc. 281, DiMaio Transcript, p. 1662, 1681-82.)

28. Expert testimony establishes that shots C and F, and possibly shot B, were sufficiently debilitating to eventually cause death. (Testimony of Drs. Gopal and DiMaio.)

29. From the time Officer Catton fired his final shot(s) to the time Officers Jacobo and Cerda placed their hands on Willis and turned him over, approximately 15-30 seconds elapsed.[3]

30. Stephen Willis survived the last of the gunshots for a period of 15-30 seconds.

31. Stephen Willis was conscious, undiminished by alcohol in these final moments, and knew the circumstances that were upon him.[4]

///

///

---

[3] The Court discounts Officer Catton's testimony that it was 30-60 seconds before Officers Jacobo and Cerda placed their hands on Stephen. The Court finds that Officer Catton's estimate elongates the time frame based upon his involvement in a traumatic experience which the Court finds "slows things down." In short, the medical testimony is more persuasive.

[4] The evidence is disputed whether Stephen had a .29 alcohol level (such that he was sensory incapacitated) or whether the alcohol level was the result of fermentation. This Court need not decide if Stephen had this alcohol level. Evidence was presented at trial that Stephen did not appear to be intoxicated at all when the officers encountered him. Evidence was also presented that had Stephen had a .29 alcohol level, Stephen would have been falling down drunk, which he was not. For instance, Stephen was able to drive safely home. (Doc. 279, Barbour and Uribe Testimonies.) In the encounter with the officers, Stephen had the mental wherewithal to seek shelter immediately and remain hidden while nearly 40 bullets were shot at him. The Court does not find that Stephen Willis was so incapacitated by the purported .29 alcohol level that his pain sensations were eliminated or significantly reduced. The Court also makes a reasonable inference that Stephen, a man experienced with guns, after being struck by multiple bullets, knew he was in a life and death situation, which, if he was inebriated, sobered him. Therefore, the Court finds that Stephen was undiminished by alcohol in the final moments.

# IV. CONCLUSIONS OF LAW

### A. The Issue of the Separation of the Gun Shots

As a threshold matter, Plaintiffs may only be awarded pain and suffering for the excessive force used by Officer Catton. That force involves 1 or 2 final shots. Plaintiffs cannot be awarded any pain and suffering for shots fired by Officer Astacio. The jury found that Officer Astacio did not use excessive force, and therefore, any shots by Officer Astacio were not excessive force.

In addition, any shots fired by Officer Catton, **other than the final shots**, were not excessive force. As found by the jury and this Court in interpreting the jury's verdict, and as affirmed by the Ninth Circuit, the unlawful, excessive shots can be narrowed to the 1 or 2 final shots.

### B. Compensatory v. Deterrence v. Punitive Pain and Suffering

Plaintiffs argue that based on *Chaudhry*, deterrence is an essential element of damages which should be compensated separate and apart from pain and suffering. According to Plaintiffs, compensation should be based not only on the less than a minute of pain and suffering but for an amount sufficient to punish Officer Catton. Basically, Plaintiff argues that a $1 million award is comprised of the actual pain and suffering plus some punitive element.

An important principle of damages in §1983 actions is that compensatory damages may be awarded only for the actual injuries suffered as a result of the violation of constitutional rights. Compensatory damages awarded under §1983 must be based on the actual injuries caused by the deprivation of the constitutional right. *Carey v. Piphus*, 435 U.S. 247, 256, 264, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) (§ 1983 actions are a "species of tort liability" intended to "compensate persons for injuries that are caused by the deprivation of constitutional rights."); *see also Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986) ("Deterrence is also an important purpose of this system, but it operates through the mechanism of damages that are compensatory—damages grounded in determinations of plaintiffs' actual losses."); *Robertson v. Wegmann*, 436 U.S. 584, 590-91, 98 S. Ct. 1991, 1995, 56 L. Ed. 2d 554 (1978) (The policies underlying §1983 include compensation of persons injured by deprivation of federal rights and

prevention of abuses of power by those acting under color of state law.)

Pain and suffering damages, like any other damages, must be proved. Compensation for damages must be proved, even in a §1983 action. *Carey*, 435 U.S. at 264, 98 S.Ct., at 1052 (no compensatory damages could be awarded for violation of that right absent proof of actual injury.) Whatever the injury, "damages must always be designed to compensate injuries caused by the [constitutional] violation." *Carey*, 435 U.S. at 265.

Deterrence is fostered by an award of damages. An award of pre-death pain and suffering fosters the §1983 policy of deterrence of wrongdoing. Indeed, the Supreme Court has recognized that Congress intended the "award of compensatory damages" achieves §1983's goal of deterrence. In *Robertson*, the Supreme Court elaborated that compensatory damages deter potential wrongdoers because "[a] state official contemplating illegal activity must always be prepared to face the prospect of a 1983 action being filed against him." 436 U.S. at 592. *See also Chaudhry*, 751 F.3d at 1105 ("[I]f Section 1983 did not allow recovery for loss of life notwithstanding inhospitable state law, deterrence would be further subverted since it would be more advantageous to the unlawful actor to kill rather than injure.") "Section 1983 presupposes that damages that compensate for actual harm ordinarily suffice to deter constitutional violations. *Stachura,* 477 U.S. at 310, citing *Carey,* 435 U.S. at 256-57. The Supreme Court also has characterized compensatory damages in Section 1983 actions as "mandatory" when a violation is found. *See Smith v. Wade,* 461 U.S. 30, 52 (1983) ("Compensatory damages, by contrast, are mandatory; once liability is found, the jury is required to award compensatory damages in an amount appropriate to compensate the plaintiff for his loss.").

Based on the above Supreme Court authority, this Court cannot accept Plaintiffs' argument of enhancing the award to further "deterrence." In their reply brief, Plaintiffs argue that $1 million pain and suffering should be awarded because: "Catton bragged to his fellow officers, "You see that bullet hole there?"; Stephen Willis cannot tell us what he was feeling because defendant "ended his ability to speak for himself;" that Defendants maddeningly took contradictory positions at trial (Stephen was going for his gun at the time of the final shots) to the polar opposite position in their damages argument (Stephen Willis was already dead at the

final shot) and other entirely inconsistent positions as those taken at trial. (Doc. 367, Plaintiffs' Reply Brief.) These arguments, based upon a punitive element rather than actual proof of pain and suffering, are as much the result of frustration from the eight and one half year saga that has been this case, more than proof of what Stephen Willis suffered during his final moments. Plaintiffs' argument is more akin to imposing a punitive element into the damages calculation, as opposed to damages designed to compensate. Rather than compensating for injury, "[t]he purpose of punitive damages is to punish the defendant for his willful or malicious conduct and to deter others from similar behavior." *Stachura*, 477 U.S. at 306 n. 9, 106 S.Ct. 2537. Therefore, this Court rejects Plaintiffs' argument that a $1 million dollar award for pre-death pain and suffering is justified for the purposes of deterrence, as inconsistent with controlling case authorities.

**C. "Appreciable Amount of Time" and "Substantially Contemporaneous with Death"**

Defendants cite to a series of non-civil rights cases which hold that to recover pre-death pain and suffering damages, a plaintiff must establish that the decedent was conscious for "an appreciable length" of time prior to his death and that the pain and suffering was not "substantially contemporaneous with death." *St. Louis IM &S.Ry. Co. v. Craft*, 237 U.S. 648, 655 (1915) (pain and suffering is not compensable if substantially contemporaneous with death); *Great N. Ry. Co. v. Capital Trust Co.*, 242 U.S. 144, 146 (1916) (compensable only if conscious for an "appreciable length of time."); *Ghotra v. Bandila Shipping Inc.*, 113 F.3d 1050, 1061 (9th Cir. 1997) (10 seconds of insensible consciousness is not an "appreciable time"). In *Ghotra v. Bandila Shipping Inc.*, 113 F.3d 1050, 1061 (9th Cir. 1997), the Ninth Circuit held that Plaintiff must establish that decedent was conscious for some appreciable amount of time to be eligible for pre-death pain and suffering. Decedent was aboard a ship when he fell from a crane to the bottom of a vessel ultimately causing his death. Plaintiff presented evidence that the decedent may have been conscious for at least ten seconds after his fatal injuries. The Ninth Circuit noted that federal courts have not generally allowed recovery for pre-death pain and suffering in cases where death resulted from a sudden and severe

accident or impact. The Ninth Circuit upheld summary judgment in favor of the defendants where the decedent had been conscious for, at most, 10 seconds after his injury and before his death. *See also Cook v. Ross Island Sand & Gravel.*, 626 F.2d 746, 750 752 (9th Cir. 1980) (wrongful death action where employee of Ross Island drowned, the court upheld an award of $35,000 for 2.5 minutes of suffering).

This Court distinguishes these cases cited by Defendants as not persuasive in a civil rights context. First, each of these cases dealt with either state common law or other statutory regimes not comparable to policies fostered in §1983. Each of the cases was brought in some form of a negligence action. Both *St. Louis IM & S.Ry. Co. v. Craft*, and *Great N. Ry. Co. v. Capital Trust Co.*, involved the Employers' Liability Act for accidental deaths during the course of employment. *Cook v. Ross Island Sand & Gravel* also involved the accidental death of an employee. None of these cases assessed compensatory damages after the intentional wrongful conduct of a state actor, resulting in a violation of Constitutional rights.

Second, it would be inconsistent with *Chaudhry* to limit recovery only to instances where Plaintiff can show an "appreciable time" prior to death. In *Chaudhry*, the Ninth Circuit held that the California's survival statute limits recovery too severely to be consistent with §1983's deterrence policy because California did not allow damages for pre-death pain and suffering. *Chaudhry,* 751 F.3d at 1103, 1105. That conclusion advanced "[o]ne of Congress's primary goals in enacting §1983"—"provid[ing] a remedy for killings unconstitutionally caused or acquiesced in by state governments," *id.* at 1103—by avoiding the "perverse effect of making it more economically advantageous for a defendant to kill rather than injure his victim." *Id.* at 1104.

Section 1983's twin policies of compensation and deterrence would be undermined should defendants benefit from a plaintiff dying quickly following a defendant's intentional Constitutional violation. If a plaintiff were denied recovery for pre-death pain and suffering for "mere moments" of suffering, the perverse effect cautioned in *Chaudhry* would result—there would be an economic incentive to "kill them fast," thereby cutting off claims for pain and suffering. Thus, the policies of compensation and deterrence are furthered by awarding

damages for **every second** a decedent survived following a Constitutional violation. "The policies underlying [Section] 1983 include compensation of persons injured by deprivation of federal rights and prevention of abuses of power by those acting under color of state law." *Dennis v. Higgins*, 498 U.S. 439, 444 (1991).

**D.     Assessment of Monetary Damages**

The Court has found from the evidence presented at trial that Stephen Willis survived for 15-30 seconds following the final shots. The Court must now assess pain and suffering damages.

The Supreme Court in *Carey* and *Stachura* held firm to its view that "whatever the constitutional basis for § 1983 liability, [compensatory] damages must always be designed 'to compensate injuries caused by the [constitutional] deprivation.'" As stated above, this Court does not find the cases cited by Defendants persuasive for eliminating damages where a decedent fails to suffer for "an appreciable time," but those same cases are instructional for computing compensatory damages for pre-death pain and suffering.

In *Cook v. Ross Island Sand & Gravel Co.*, 626 F.2d 746, 750 752 (9th Cir. 1980), a decedent's estate was awarded $35,000 for 2.5 minutes of suffering while he drowned. Plaintiff's medical expert testified that Plaintiff was likely conscious when he entered the water (no evidence of a skull fracture), and that he likely remained conscious for 2.5 minutes before he drowned. Thus, the court upheld $35,000.[5] In *Guyton v. Phillips*, 532 F. Supp. 1154, 1167 (N.D. Cal. 1981), *disapproved of on other grounds by Peraza v. Delameter*, 722 F.2d 1455 (9th Cir. 1984), a civil rights case, decedent was shot first in the buttocks by an officer, he began to buckle and proceed into a staggered run, got to the sidewalk and finally fell down. A second shot was then fired by another officer hitting the victim slightly below the neck; the two shots collectively killed the victim. Decedent was awarded $15,000 for 15 minutes of suffering. In *Hambrook v. Smith*, No. 14-00132 ACK-KJM, 2016 WL 4408991, at *36 (D. Haw. Aug. 17, 2016), decedent died during a tourism scuba diving lesson when he got swept away and was

---

[5] In *Cook*, the court also said: "This Court will not adopt a 'stop watch' approach to the question of whether a decedent remained conscious for a legally substantial period of time after he sustained the injuries that eventually resulted in his death. Rather, this Court will approach the question of a decedent's consciousness only after a careful examination of the facts of each individual case." *Cook v. Ross Island Sand & Gravel Co.*, 626 F.2d at 751.

yelling for help. The Court found that a total time of approximately one to two-and-a-half-minutes elapsed while decedent was conscious of his impending death. The Court found that "while the decedent's pre-death pain and suffering may have been relatively short, it was agonizing and frightful." His estate was awarded $50,000. In *Randall v. Chevron U.S.A., Inc.*, a seamen fell into the water when attempting to evacuate a vessel during high seas. *Randall v. Chevron*, 13 F.3d 888, 901 (5th Cir. 1994) (overruled on other grounds *Bienvenu v. Texaco, Inc.*, 164 F.3d 901 (5th Cir. 1999)). He managed to swim to the leg of a platform and clung as best he could in rough water for twenty-five minutes. Efforts to save him were unsuccessful and he eventually drowned. When his body was recovered his legs were lacerated from being thrown against the barnacle encrusted leg of the platform by the rough waves. On appeal, the Fifth Circuit reduced a jury award for pre-death pain and suffering from $1,000,000 to $500,000 for the twenty-five minutes of pain and suffering.

The above cases provide the Court with some guidance. The Court acknowledges that pain and suffering damages cannot be supported entirely by rational analysis, but is inherently subjective, involving experience and emotions, as well as calculation. See *Dixon v. International Harvester Co.*, 754 F.2d 573, 590 (5th Cir.1985). Based on the evidence, the Court concludes that Stephen Willis suffered pain and suffering damages after the last shot(s) by Officer Catton in the amount of $25,000.

## V. CONCLUSION AND ORDER

For the reasons discussed herein, following the conclusion of a bench trial in this matter, and in accordance with these Findings of Fact and Conclusions of Law, IT IS HEREBY ORDERED, that judgment shall be AMENDED to include, in favor of Plaintiffs and against Defendant Officer Catton, an award of $25,000 for Stephen Willis's pre-death pain and suffering. (Doc. 251.)

///
///
///
///

The Judgment shall be AMENDED to reflect as follows:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that judgment is entered in accordance with the Special Verdict and the Findings of Fact and Conclusions of Law in favor of plaintiffs Chris Willis and Mary Willis, as Successors in Interest to Stephen Willis, and against defendant Greg Catton in the amount of **$25,001.00.**

IT IS SO ORDERED.

Dated: **November 28, 2017**   /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE